# United States District Court
# Central District of California
# Western Division

DIECE-LISA INDUSTRIES, INC.,

Plaintiff,

v.

DISNEY ENTERPRISES, INC., *et al.*,

Defendants.

CV 20-09147 TJH (JCx)

# Order

[382]

Upon remand from the United States Supreme Court and from the Ninth Circuit Court of Appeals, the Court has considered the motion for summary judgment or, in the alternative, for partial summary judgment filed by Defendants Disney Enterprises, Inc. ["Disney Enterprises"]; Buena Vista Home Entertainment, Inc.; Buena Vista Theatrical Group, Ltd.; Disney Consumer Products, Inc. ["Disney Consumer Products"]; Disney Destinations, LLC; Disney Interactive Studios, Inc.; Disney Licensed Publishing – Disney Book Group, LLC; Disney Shopping, Inc. ["Disney Shopping"]; Disney Store USA, LLC ["Disney Store"]; Magical Cruise Co., Ltd.; Magic Kingdom, Inc.; Walt Disney Parks & Resorts U.S., Inc.; Walt Disney Records;

and Walt Disney Studios Motion Pictures [collectively, "the Disney Defendants"] [dkt. # 382], together with the moving and opposing papers.

**Brief Procedural History**

Because this case has a complicated procedural history, and because that history is relevant to the Disney Defendants' argument that Plaintiff Diece-Lisa Industries, Inc.'s ["Diece-Lisa"] claims against Disney Consumer Products and Disney Enterprises are time barred, a summary of that history is appropriate.

This case was originally filed in the Eastern District of Texas as *Diece-Lisa Industries, Inc. v. Disney Store USA, et al.*, CV 12-00400 RWS ["the First Texas Case"]. Thereafter, a related case was filed in the Eastern District of Texas, entitled *Diece-Lisa Industries, Inc. v. Disney Enterprises, Inc.*, *et al.* CV 14-00070 RWS ["the Second Texas Case"]. The First Texas Case and the Second Texas Case were, then, consolidated

After the two remaining defendants in the Second Texas Case – Disney Consumer Products and Disney Enterprises – were dismissed for lack of personal jurisdiction, the two cases were do-consolidated. Thereafter, Diece-Lisa appealed the dismissal in the Second Texas Case, and, also, appealed the orders in the First Texas Case denying leave to file a Third Amended Consolidated Complaint and striking the Fourth Amended Consolidated Complaint. The Fifth Circuit Court of Appeals affirmed the dismissal of Disney Consumer Products and Disney Enterprises from the Second Texas Case and, then, remanded the First Texas Case back to the Eastern District of Texas to determine whether it had personal jurisdiction over the remaining Disney Defendants. Thereafter, the Eastern District of Texas granted the Disney Defendants' motion to transfer venue to the Central District of California. Shortly after the case was transferred, the parties stipulated to a Fifth Amended Complaint, which added Disney Consumer Products and Disney Enterprises back into the case.

This Court, then, granted summary judgment in favor of the Disney Defendants, which was, then, affirmed by the Ninth Circuit Court of Appeals. The United States

Supreme Court, then, granted *certiorari* to review the grant of summary judgment. Then, rather than rule directly on this case, the Supreme Court issued an opinion in *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 161 (2023), vacated this Court's summary judgment, and, then, remanded this case back to the Ninth Circuit for further consideration in light of its decision in *Jack Daniel's*.  In turn, the Ninth Circuit remanded this case back to this Court for further proceedings in light of *Jack Daniel's*. Thereafter, the Disney Defendants filed the instant motion for summary judgment or, in the alternative, for partial summary judgment.

**Background**

In 1994, Diece-Lisa conceived of a wearable stuffed animal with sleeve-like openings, into which a person could place their arms, thereby allowing that person to hug someone else in a way that simulates a hug from the stuffed animal.  On August 12, 2008, the United States Patent and Trademark Office ["USPTO"] issued Diece-Lisa a utility patent for its "hugging technology."  In February, 1995, Diece-Lisa licensed the right to manufacture and sell stuffed animals with its hugging technology to Happiness Express, a toy company.  Happiness Express named the product "Lots of Hugs," and registered that name as a trademark with the USPTO.

In 1996, Diece-Lisa acquired Happiness Express's intellectual property after Happiness Express filed for bankruptcy.  In 2004, the USPTO cancelled the trademark registration for "Lots of Hugs."  In 2007, Diece-Lisa registered the "Lots of Hugs" trademark ["the Mark"], which the USPTO approved on January 1, 2008.

In 1992, Pixar Animation Studios ["Pixar"] began developing ideas for its first feature-length motion picture – Toy Story – including an inwardly angry but outwardly cuddly stuffed bear character named "Lots-o'-Lovin' Bear" and nicknamed "Lotso."  Lotso, ultimately, did not appear in Toy Story.

In 2006, during the development of Toy Story 3, Pixar revived the idea of Lotso as a principal antagonist.  Pixar changed Lotso's full name to "Lots-o'-Huggin' Bear," and, also, changed other aspects of Lotso's appearance and character.

In January, 2006, The Walt Disney Company agreed to purchase Pixar for $7.4 billion. The acquisition was completed around May, 2006.

In 2010, Pixar released Toy Story 3 theatrically and on home video. Lotso, also, appeared in, *inter alia*, books and videos games, and was sold as a toy.

On July 10, 2012, Diece-Lisa filed the First Texas Case against Disney Shopping and Disney Store. The Second Amended Complaint in the First Texas Case alleged federal trademark infringement and unfair competition based on the Defendants' sales of toy bears and other merchandise with the Lotso name.

On February 10, 2014, Diece-Lisa filed the Second Texas Case against Disney Consumer Products, Disney Enterprises, and The Walt Disney Company. Thereafter, The Walt Disney Company was dismissed from the Second Texas Case by stipulation. The Amended Complaint in the Second Texas Case alleged trademark infringement based on the Defendants' granting of licenses to third parties to manufacture and sell Lotso merchandise.

On June 5, 2014, in the Second Texas Case, Disney Consumer Products and Disney Enterprises moved to dismiss for lack of personal jurisdiction.

On July 18, 2014, a Magistrate Judge consolidated the First Texas Case and the Second Texas Case. Then, on December 12, 2014, the Magistrate Judge granted Diece-Lisa leave to file a Third Amended Consolidated Complaint.

On March 18, 2015, the Disney Defendants moved to transfer venue to the Central District of California.

On December 9, 2015, the Magistrate Judge, *sua sponte,* vacated the order granting Diece-Lisa leave to file a Third Amended Consolidated Complaint. Diece-Lisa, then, filed objections to the Magistrate Judge's order and sought reconsideration by the District Court Judge. On July 10, 2017, the District Court Judge in the Eastern District of Texas adopted the Magistrate Judge's vacatur of the order granting Diece-Lisa leave to filed a Third Amended Consolidated Complaint.

On December 19, 2017, the Eastern District of Texas granted the motion to

dismiss Disney Consumer Products and Disney Enterprises for lack of personal jurisdiction that was filed in the Second Texas Case before the two cases were consolidated. Thereafter, the two cases were deconsolidated because Disney Consumer Products and Disney Enterprises were the only remaining defendants in the Second Texas Case.

On December 20, 2017, Diece-Lisa filed a notice of appeal as to: (1) The order dismissing Disney Consumer Products and Disney Enterprises for lack of personal jurisdiction; (2) The District Judge's adoption of the Magistrate Judge's vacatur of the order granting Diece-Lisa leave to file a Third Amended Consolidated Complaint; and (3) The Magistrate Judge's order striking the Fourth Amended Consolidated Complaint.

On January 3, 2018, the Magistrate Judge stayed the First Texas Case.

On December 11, 2019, the Fifth Circuit affirmed the order dismissing Disney Enterprises and Disney Consumer Products for lack of personal jurisdiction, vacated the order affirming the Magistrate Judge's vacatur of the order granting Diece-Lisa leave to file a Third Amended Consolidated Complaint, affirmed the order striking the Fourth Amended Consolidated Complaint, and remanded the case for a determination as to whether there was personal jurisdiction over the remaining Disney Defendants.

On March 23, 2020, the Eastern District of Texas granted the Disney Defendants' motion to transfer venue. On October 6, 2020, the First Texas Case was received by the Central District of California and assigned case number CV 20-09147.

On February 5, 2021, the parties filed a stipulation for leave to file a Fifth Amended Complaint, which the Court approved.

On February 12, 2021, Diece-Lisa filed its Fifth Amended Complaint, which joined Disney Enterprises and Disney Consumer Products and alleged claims for: (1) Unfair competition, in violation of 15 U.S.C. § 1125(a); (2) Trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.* ["the Lanham Act"]; and (3) Unfair competition, in violation of California's common law and Cal. Bus. and Prof. § 17200, *et seq.* ["California UCL Claim"].

This case is based on a reverse confusion theory of trademark infringement. Reverse confusion occurs when consumers of goods bearing the senior – or first – user's mark mistakenly believe that the source of those goods is the junior – or subsequent – user of a similar mark. *See Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998). Here, the senior user is Diece-Lisa, and the junior users are the Disney Defendants. Under the reverse confusion theory, here, Diece-Lisa asserted that its consumers are likely to mistakenly believe that its Lots of Hugs products are Disney products because Toy Story 3 and the Disney Defendants' advertising and promotion of their Lots-o'-Huggin' Bear overtook Diece-Lisa's reputation in the market.

On March 19, 2021, the Disney Defendants filed a motion for summary judgment or, in the alternative, partial summary judgment. In that motion, the Disney Defendants relied on *Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989), to argue that the First Amendment barred this action because their use of the Mark in an expressive work – Toy Story 3 – was a permissive use.

The Ninth Circuit adopted the test set forth in *Rogers* in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002). Under *Rogers*, when a defendant makes a threshold showing that its use of a mark was part of an expressive work protected by the First Amendment, the burden shifts to the plaintiff to establish that it has a valid, protectable trademark and that the mark is either: (1) Not artistically relevant to the underlying work; or (2) Explicitly misleading as to the source or content of the work. *See Mattel, Inc.*, 296 F.3d at 902. If the plaintiff meets its burden, then the First Amendment does not bar the plaintiff's trademark infringement claim. *See Mattel, Inc.*

On July 7, 2021, the Court held that the Disney Defendants established that their alleged infringement was part of an expressive work, thereby shifting the burden to Diece-Lisa. The Disney Defendants did not meaningfully dispute that Diece-Lisa had a valid, protectable trademark, and Diece-Lisa did not meaningfully dispute that the alleged infringement was artistically relevant to an expressive work. Accordingly,

whether the First Amendment barred Diece-Lisa's claim, pursuant to *Rogers*, turned on whether the Disney Defendants acted in a way that misled consumers into thinking that Diece-Lisa endorsed or sponsored the Disney Defendants' use of the Mark. Because Diece-Lisa failed to set forth any admissible evidence that the Disney Defendants explicitly misled consumers, the Court held that the First Amendment barred Diece-Lisa's trademark infringement claim.   Further, because Diece-Lisa's unfair competition claims were predicated on its trademark infringement claim, the unfair competition claims, also, failed.   Consequently, the Court granted summary judgment in favor of the Disney Defendants.

On July 28, 2021, Diece-Lisa appealed.   On appeal, Diece-Lisa did not meaningfully dispute that its claims were barred by the *Rogers* test.   Rather, it argued that the Ninth Circuit should no longer apply, or should modify, the *Rogers* test.

The Ninth Circuit agreed that, based on the *Rogers* test, the Disney Defendants' use of the Mark was protected by the First Amendment, and declined to modify the *Rogers* test.  *Diece-Lisa Industries, Inc. v. Disney Store USA, LLC*, 2022 WL 2072727 (9th Cir. 2022).   Accordingly, the Ninth Circuit affirmed the Court's grant of summary judgment.

On October 11, 2022, Diece-Lisa filed a petition for a writ of *certiorari* with the United States Supreme Court.

On November 21, 2022, the Supreme Court granted *certiorari* to *VIP Prod. LLC v. Jack Daniel's Properties, Inc.,* 953 F.3d 1170 (9th Cir. 2020).   *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 143 S. Ct. 476 (2022).   In *Jack Daniel's*, the Ninth Circuit applied the *Rogers* test to hold that a dog chew toy that resembled a trademarked Jack Daniel's whiskey bottle was a protected First Amendment expression. *Jack Daniel's,* 953 F.3d at 1176.

On June 8, 2023, the Supreme Court issued its opinion in *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 161 (2023), which affirmed the *Rogers* test, but created a carve-out for the "use of a mark as a mark." *Jack Daniel's,*

599 U.S. at 145, 163. That is, the *Rogers* test is not appropriate "when the accused infringer has used a trademark to designate the source of its own goods." *Jack Daniel's,* 599 U.S. at 145.

On June 20, 2023, the Supreme Court granted *certiorari* in this case, vacated the July 7, 2021, summary judgment, and, then, remanded this case to the Ninth Circuit for further consideration in light of its decision in *Jack Daniel's*. *Diece-Lisa Indus., Inc. v. Disney Store USA, LLC*, 143 S. Ct. 2364 (2023).

On July 25, 2023, the Ninth Circuit ordered the parties to file supplemental briefs discussing the following issues: (1) If, and how, the Supreme Court's decision in *Jack Daniel's* impacted this case; and (2) Whether to remand this case to this Court in light of *Jack Daniel's*. *Diece-Lisa Indus., Inc. v. Disney Store USA, LLC,* 2023 WL 5541556 (9th Cir. 2023).

On August 25, 2023, after the supplemental briefs were filed, the Ninth Circuit summarily remanded this case to this Court for further proceedings consistent with *Jack Daniel's*.

The Disney Defendants, now, move for summary judgment or, in the alternative, for partial summary judgment.

The Disney Defendants' grounds for summary judgment are that: (1) Diece-Lisa's claims are barred by the First Amendment; and (2) There is no likelihood of confusion as to the source of Diece-Lisa's goods. Alternatively, the Disney Defendants' seek partial summary judgment that: (1) Diece-Lisa cannot seek a disgorgement remedy based on its reverse confusion theory; and (2) Diece-Lisa's claims against Disney Enterprises and Disney Consumer Products are time-barred as to the alleged infringements that occurred before February 12, 2017, which is the four year date before the filing of the Fifth Amended Complaint.

Because the Supreme Court vacated this Court's summary judgment, that order is no longer the law of the case. Consequently, the Court will consider the pending motion anew.

**California Unfair Competition Law Claim**

Because only equitable remedies are available for Diece-Lisa's California UCL Claim, for the Court to have equitable jurisdiction over that claim, Diece-Lisa must have alleged that all available legal remedies are inadequate. *See Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020). Because Diece-Lisa failed to allege that all available legal remedies are inadequate, the Court lacks equitable jurisdiction over its California UCL Claim. *See Sonner.* Accordingly, Diece-Lisa's California UCL Claim must be dismissed, without prejudice.

Because both equitable and legal remedies are available for Diece-Lisa's unfair competition claim brought under the Lanham Act, 15 U.S.C. § 1125, that claim is not subject to dismissal under *Sonner*.

**Summary Judgment Standard**

As to Diece-Lisa's Lanham Act claims, because it has the burden of proof at trial, summary judgment should be granted in favor of the Disney Defendants if Diece-Lisa fails to produce evidence to establish a *prima facie* case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). The Disney Defendants, however, have the initial burden to show that Diece-Lisa does not have enough evidence to establish a *prima facie* case. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Because the Disney Defendants have met that initial burden, the burden shifts to Diece-Lisa to establish, with admissible evidence, a *prima facie* case for each of its claims. *See Celotex*, 477 U.S. at 322.

As to the Disney Defendants' affirmative defenses, they have the initial burden to establish, with admissible evidence, a *prima facie* case for those defenses. *See Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir. 1993). If the Disney Defendants meet their initial burden, the burden will, then, shift to Diece-Lisa to show the existence of a triable issue of material fact to avoid the granting of summary judgment. *See Celotex*, 477 U.S. at 323.

At this juncture, the Court cannot weigh evidence or make credibility

1  determinations.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Further, the

2  Court must accept the nonmoving party's facts as true and draw all reasonable

3  inferences in that party's favor.  *Liberty Lobby*, 477 U.S. at 255.

4  **Basis for Diece-Lisa's Claims**

5      The underlying basis for Diece-Lisa's Lanham Act claims is that the Disney

6  Defendants infringed its Lots of Hugs trademark.  Generally, under the Lanham Act,

7  infringement turns on whether the alleged use of a mark is likely to cause consumer

8  confusion.  *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018).  Here,

9  Diece-Lisa argued that consumers are likely to be confused under a reverse confusion

10  theory – that is, the Disney Defendants' Lots-o'-Hugging Bear flooded the market and

11  "swallowed up [Diece-Lisa's Lots of Hugs] mark," thereby confusing consumers into

12  thinking that Diece-Lisa's goods came from the Disney Defendants.

13  **The *Rogers* Test**

14      The Ninth Circuit adopted the *Rogers* test to strike an appropriate balance

15  between the First Amendment's purpose of protecting artistic expression and the

16  Lanham Act's purpose of protecting trademark rights.  *See Gordon*.  Over time,

17  according to the Supreme Court, the Ninth Circuit applied the *Rogers* test to "just about

18  every[]" expressive work, including names, phrases, symbols, and designs that were

19  or contained an expressive message.  *Jack Daniel's*, 599 at 158.  Consequently, the

20  Supreme Court clarified that the *Rogers* test does not apply to expressive works where

21  an alleged infringer uses a mark to designate the source of its own goods or services.

22  *Jack Daniel's*, 599 U.S. at 155.  The main purpose of the Lanham Act is to ensure that

23  consumers can tell the source of goods, that is, where they came from.  *Jack Daniel's*,

24  599 U.S. at 163.

25      In *Jack Daniel's,* the Supreme Court explained that an alleged infringer may use

26  a mark for multiple purposes – such as, as expressive content or to designate the source

27  of goods – and, then, clarified that the *Rogers* test should be applied only where a mark

28  is used only as expressive content, and should not be applied where a mark is used, at

least in part, to designate the source of goods.  599 U.S. at 156.

As an example, the Supreme Court cited to *Louis Vuitton Malletier S. A. v. Warner Bros. Entertainment Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012), where a film maker used a Louis Vuitton suitcase to convey something about a character in the film – namely, that the character was the kind of person who did not know how to properly pronounce Louis Vuitton.  *Jack Daniel's,* 599 U.S. at 157.  Because Louis Vuitton's trademark was used in the film only as expressive content, and not to designate the source of goods, the Supreme Court explained that the *Rogers* test was properly applied to that expressive use to conclude that the First Amendment barred liability, there, under the Lanham Act.  *Jack Daniel's,* 599 U.S. at 157.

On the other hand, the Supreme Court explained that the *Rogers* test should not be applied where a luggage manufacturer used an ever-so-slightly modified Louis Vuitton logo to make inroads into the suitcase market because, in that scenario, there was a potential likelihood of confusion as to the source of the goods because the mark was used to convey information, or misinformation, as to the source of the goods.  *Jack Daniel's,* 599 U.S. at 157.

Here, the Disney Defendants did not use the Mark in Toy Story 3.  Rather, the Disney Defendants used a slightly modified version of the Mark as the name of their stuffed bear character – Lots-o'-Huggin' Bear – which, then, appeared in, *inter alia*, books and videos games, and as a toy in the retail market.  The Disney Defendants' use is analogous to the Supreme Court's example where a luggage manufacturer used an ever-so-slightly modified Louis Vuitton logo to sell suitcases.

Accordingly, based on the Supreme Court's guidance in *Jack Daniel's*, because the Disney Defendants' use of a modified version of the Mark designated, at least in part, the source of the Disney Defendants' Lots-o'-Huggin' Bear, and because that use was done, at least in part, to sell, *inter alia*, books, videos games and toys, the *Rogers* test is no longer applicable, here, to bar liability.  *See Jack Daniel's,* 599 U.S. at 157. Based on *Jack Daniel's*, the First Amendment does not bar Diece-Lisa's Lanham Act

claim, here.  *See Gordon*, 909 F.3d at 264.  Therefore, the Court must, now, consider – for the first time – the merits of Diece-Lisa's Lanham Act claim.

**Lanham Act Claim**

Liability under the Lanham Act, here, turns on whether the Disney Defendants' use of Lots-o'-Huggin' Bear likely caused consumer confusion with the Mark.  *See Gordon*, 909 F.3d at 264.  Consumer confusion is established where a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of a good bearing a mark.  *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).  Diece-Lisa, now, bears the burden to establish, with admissible evidence, a *prima facie* case as to each of its Lanham Act claims.  *See Celotex*, 477 U.S. at 322.

When evaluating whether there is a likelihood of confusion, the Court must consider the eight factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979): (1) Strength of the mark; (2) Relatedness of the goods; (3) Similarity of sight, sound, and meaning; (4) Evidence of actual confusion; (5) Marketing channels; (6) Type of goods and the degree of care likely to be exercised by the purchaser; (7) The Defendant's intent in selecting the mark; and (8) Likelihood of expansion of the product lines.

The *Sleekcraft* factors are intended to guide the Court in assessing whether there is a likelihood of confusion.  *Dreamwerks*, 142 F.3d at 1129.  The factors are not pre-assigned equal weight, and the Court is not supposed to "count beans."  *Dreamwerks*.  Rather, some of the *Sleekcraft* factors are more important than others, with each factor's relative importance determined based on the facts of each case.  *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).  Consequently, the determination of whether there is a likelihood of confusion is based on those particular *Sleekcraft* factors that are the most pertinent to each particular case.  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016).

Under the reverse confusion theory, here, the question is whether Diece-Lisa's

consumers are likely to mistakenly believe that the source of its goods bearing its Mark is the Disney Defendants. *See Dreamwerks*, 142 F.3d at 1129.

In *Dreamwerks*, the Ninth Circuit considered a reverse confusion case where consumers attending a Dreamwerks-sponsored convention might have attended because they were confused into believing that the convention was sponsored by DreamWorks. *Dreamwerks*, 142 F.3d at 1130. The Ninth Circuit noted that if that case was a typical trademark infringement case, rather than a reverse infringement case – that is, if DreamWorks had been there first and, then, Dreamwerks later opened up a business running entertainment-related conventions – there would be little doubt that DreamWorks would have established a *prima facie* case of infringement. *Dreamwerks*. Consequently, the Ninth Circuit concluded that the result should not be different under a reverse confusion theory. *Dreamwerks*.

Here, the Court will consider only seven of the *Sleekcraft* factors: (1) Strength of the mark; (2) Relatedness of the goods; (3) Similarity of sight, sound, and meaning; (4) Evidence of actual confusion; (5) Type of goods and the degree of care likely to be exercised by the purchaser; (6) The Defendant's intent in selecting the mark; and (7) Likelihood of expansion of the product lines. *Sleekcraft Boats*, 599 F.2d at 348–49.

The Court will not consider the marketing channels factor, here. In *Sleekcraft*, the goods were sold in niche marketplaces, such as boat shows, specialty retail outlets, and trade magazines. *Sleekcraft Boats*, 599 F.2d at 353. The marketing channels factor "merits little weight" if the marketing channels are not obscure. *Network Automation, Inc., v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011). Here, the shared use of ubiquitous marketing channels – including the internet – to sell stuffed animals does not shed any light on the likelihood of confusion. *See Network Automation, Inc.*

**Strength of the Mark**

The strength of a trademark refers to the distinctiveness of the mark or, more precisely, to the mark's tendency to identify the source of goods sold under that mark.

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 959 (7th Cir. 1992). The focus, here, is whether Diece-Lisa's consumers were actually confused, or are likely to confuse, a Diece-Lisa product as a Disney product.  The greater the strength of the Disney Defendants' Lots-o'-Huggin' Bear mark, the more likely it could confuse Diece-Lisa's consumers.  *See Dreamwerks*.

A mark's strength is evaluated based on its conceptual strength and/or its commercial strength.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).  Commercial strength is based on a mark's actual marketplace recognition, while conceptual strength is based on the obviousness of a mark's connection to the goods to which it refers.  *JL Beverage Co., LLC,* 828 F.3d at 1107.

Conceptual strength is measured along the following spectrum that ranges from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic.  *JL Beverage Co., LLC.*  Arbitrary and fanciful marks are the two strongest marks and trigger the highest degree of trademark protection; they employ words and phrases with no commonly understood connection to the product.  *JL Beverage Co., LLC.*  Suggestive marks are in the middle of the spectrum; they suggest a product's features and require consumers to exercise some imagination to associate the suggestive mark with the product. *JL Beverage Co., LLC.*  Descriptive and generic marks are the two weakest categories.  *JL Beverage Co., LLC.*  Descriptive marks define a particular characteristic of the product in a way that does not require any imagination, while generic marks describe the product in its entirety and are not entitled to trademark protection. *JL Beverage Co., LLC.*

In the more typical forward confusion cases, the conceptual strength and commercial strength of each mark are compared.  *JL Beverage Co., LLC.*  In reverse confusion cases, however, only the conceptual strength of the junior user's mark is compared to the commercial strength of the senior user's mark.  *JL Beverage Co., LLC.*  Here, the junior user is the Disney Defendants, and the senior user is Diece-Lisa. Thus, the conceptual strength of the Mark will be compared to the commercial strength

1  of the Disney Defendants' Lots-o'-Huggin' Bear because the concern is that Diece-
2  Lisa's consumers will mistakenly believe that the source of goods bearing its Mark is
3  the Disney Defendants.

4       While Diece-Lisa did not provide any arguments, or evidence, as to the
5  conceptual strength of its Mark, it argued that Disney's Lots-o'-Huggin' Bear had a
6  strong commercial strength. Accordingly, Diece-Lisa failed to establish a *prima facie*
7  case that its Mark has a sufficiently strong conceptual strength to warrant trademark
8  protection. *See Celotex*, 477 U.S. at 322; *JL Beverage Co., LLC,* 828 F.3d at 1107.

9       Consequently, the strength of the mark factor weighs in favor of the Disney
10 Defendants. *See Sleekcraft Boats*, 599 F.2d at 348–49. Regardless, Diece-Lisa may,
11 still, be able to establish a *prima facie* case of likelihood of confusion if the goods are
12 related and the two marks, here, are sufficiently similar. *See Sleekcraft Boats*, 599
13 F.2d at 350.

14 **Relatedness of the Goods**

15      Related goods, as compared to unrelated goods, are more likely to confuse
16 consumers as to their source. *Brookfield*, 174 F.3d at 1055. The concern is that
17 consumers will mistakenly assume that there is an association between the producers
18 of related goods. *Sleekcraft Boats*, 599 F.2d at 350.

19      The more likely consumers are to mistakenly assume that there is an association
20 between the producers of the goods, the less similarity in the marks is required to
21 conclude that there is a likelihood of confusion. *Sleekcraft Boats*. Accordingly, less
22 similarity between the marks is required where the competing goods are
23 complementary, sold to the same class of consumers, or are similar in use and function.
24 *Sleekcraft Boats*.

25      Diece-Lisa did not provide any arguments, or evidence, as to whether the goods,
26 here – Disney Defendants' Lots-o'-Huggin Bear toys, and Diece-Lisa's stuffed animals
27 – are complementary, sold to the same class of consumers, or are similar in use and
28 function. Rather, it merely stated that the goods, here, are related because they are

both "toy products."

Drawing all reasonable inferences in favor of Diece-Lisa, as the non-moving party, which the Court must do, the Court finds that Diece-Lisa established a *prima facie* case that the goods are related. *See Liberty Lobby*, 477 U.S. at 255; *Sleekcraft Boats*, 599 F.2d at 350. For purposes of this motion only, it is a reasonable inference to conclude that the goods, here, would be purchased by the same class of consumers. Further, toys and movies are complementary. *See Dreamwerks*, 142 F.3d at 1131.

Consequently, the relatedness of the goods factor weighs in favor of Diece-Lisa. *See Sleekcraft Boats*, 599 F.2d at 348–49.

**Similarity of Sight, Sound, and Meaning**

The two marks, here, must be considered for their similarity of sight, sound, and meaning. *Fortune Dynamic*, 618 F.3d at 1032. Meaning, alone, may be sufficient to establish that two marks are similar. *Sleekcraft Boats*, 599 F.2d at 352. Sight and sound must be evaluated from the perspective of how consumers would encounter the marks in the marketplace. *Sleekcraft Boats*, 599 F.2d at 351–52. Marks may appear dissimilar when viewed in conjunction with a logo, or may sound dissimilar when spoken out loud. *Sleekcraft Boats*.

Standing alone, Lots of Hugs and Lots-o'-Hugging Bear are similar as to sight and sound. However, Diece-Lisa did not provide any arguments, or evidence, as to how the marks are encountered in the marketplace. *See Sleekcraft Boats*.

As to meaning, because Lots of Hugs and Lots-o'-Hugging Bear are virtually synonyms, like in *Sleekcraft,* the two marks have similar meaning. That similarity of meaning is sufficient to establish a *prima facie* case, here, that the two marks are similar.

Consequently, the similarity of sight, sound, and meaning factor weighs in favor of Diece-Lisa. *See Sleekcraft Boats*, 599 F.2d at 348–49.

**Evidence of Actual Confusion**

While evidence of actual past confusion is not required, it is persuasive proof

that there would be a likelihood of confusion in the future. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir. 2004). The Court may consider both evidence of actual consumer confusion and survey evidence regarding the potential for confusion by non-purchasing members of the public. *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625 (9th Cir. 2005).

Diece-Lisa did not provide any evidence of consumer confusion. Rather, Diece-Lisa relied only on the deposition testimony of one if its licensees, Alan Sutton. While Sutton stated that he did not want "any confusion in the marketplace with respect to anything related to Disney," he did not testify as to any actual consumer confusion or survey results.

Consequently, the evidence of actual confusion factor weighs in favor of the Disney Defendants. *See Sleekcraft Boats*, 599 F.2d at 348–49.

**Type of Goods and Degree of Care**

When evaluating whether there is a likelihood of confusion, the Court must consider the degree of care that a consumer would exercise in buying the specific goods at issue. *Sleekcraft Boats*, 599 F.2d at 353. Usually, a consumer exercises ordinary care, or caution, when purchasing ordinary goods, and exercises greater care when purchasing more expensive goods. *Sleekcraft Boats*. The lower the level of consumer care, the greater the likelihood of confusion. *Playboy*, 354 F.3d at 1028. Also, consumers with expertise in a field will exercise greater care than a typical consumer. *Sleekcraft Boats*, 599 F.2d at 353.

Here, Diece-Lisa did not provide any arguments, or evidence, as to the exact nature of the goods, here, or the typical consumer of those goods. However, drawing all reasonable inferences in favor of Diece-Lisa, which the Court must do, here, the typical consumer of the goods, here, would typically exercise only ordinary care. *See Liberty Lobby*, 477 U.S. at 255; *Sleekcraft Boats*, 599 F.2d at 353.

Consequently, the type of goods and degree of care factor weighs in favor of Diece-Lisa. *See Sleekcraft Boats*, 599 F.2d at 348–49.

**Disney Defendants' Intent**

The defendant's intent factor considers its intent when it adopted its own mark. *Marketquest Group, Inc. v. BIC Corp.*, 862 F.3d 927, 934–35 (9th Cir. 2017). Generally, courts are concerned where there was a deliberate intent to push the plaintiff out of the market by flooding the market with advertising to create reverse confusion, and where there is evidence that the defendant knew of the mark, should have known of the mark, intended to copy a senior user's mark, failed to conduct a reasonably adequate trademark search, or otherwise disregarded the risks of reverse confusion. *Marketquest Group, Inc.*

Here, Diece-Lisa provided the deposition testimony of Marc Greenberg, a Pixar employee. Greenberg testified that Pixar commissioned a trademark search in 2007 that found Diece-Lisa's pending application to register the Mark with the USPTO. Greenberg, further, testified that there was correspondence between Pixar's attorneys and Disney Enterprises' attorneys about clearing Lots-o'-Huggin' Bear for use in Toy Story 3 following the trademark search.

Viewing the evidence in the light most favorable to Diece-Lisa, which the Court must do, here, Diece-Lisa established a *prima facie* case that the Disney Defendants knew of the Mark before it started to use Lots-o'-Huggin' Bear. *See Liberty Lobby*, 477 U.S. at 255; *Marketquest Group, Inc.*, 862 F.3d at 934–35.

Consequently, the defendant's intent factor weighs in favor of Diece-Lisa. *See Sleekcraft Boats*, 599 F.2d at 348–49.

**Likelihood of Expansion**

The likelihood of expansion factor focuses on whether the Disney Defendants' use of Lots-o'-Huggin' Bear is hindering Diece-Lisa's expansion plans for its Mark. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1152 (9th Cir.2002). Diece-Lisa provided no arguments, or evidence, here, as to its expansion plans. Consequently, the likelihood of expansion factor weighs in favor of the Disney Defendants. *See Sleekcraft Boats*, 599 F.2d at 348–49.

**Weighing the Sleekcraft Factors**

The Court has considered and weighed each of the *Sleekcraft* factors, based on the facts specific to this case, to assess whether Diece-Lisa has established a *prima facie* case regarding the likelihood of consumer confusion.  *See Dreamwerks*, 142 F.3d at 1129.  Using the *Sleekcraft* factors as a guide, Diece-Lisa has met its burden of setting forth a *prima facie* case that its consumers are likely to mistakenly believe that the source of its goods bearing its Mark is the Disney Defendants.  *See Celotex*, 477 U.S. at 322; *Dreamwerks Prod. Group, Inc.*, 142 F.3d at 1129.

Consequently, the Disney Defendants are not entitled to summary judgment.

**Statute of Limitations**

The Disney Defendants seek partial summary judgment as to Diece-Lisa's claims against Disney Consumer Products and Disney Enterprises on the ground that they are time barred as to the alleged infringements that occurred before February 12, 2017 – four years before those two defendants were rejoined into this case by the Fifth Amended Complaint in 2021.

The Disney Defendants have the initial burden to establish, with admissible evidence, a *prima facie* case for their statute of limitations affirmative defense.  *See Tovar*, 3 F.3d at 1284.

The Lanham Act does not contain a statute of limitations.  *See e.g.*, *Official Airline Guides, Inc. v. Churchfield Publ'ns, Inc.*, 6 F.3d 1385, 1395 (9th Cir.1993). Therefore, Lanham Act claims are subject to the analogous state statute of limitations. *See Au-Tomotive Gold Inc. v. Volkswagen of America, Inc.*, 603 F.3d 1133 (9th Cir. 2010).  The California statute of limitations for trademark infringement and unfair competition is four years.  Cal. Code Civ. Proc. §§ 337 and 343.

Disney Consumer Products and Disney Enterprises were dismissed for lack of personal jurisdiction from the Second Texas Case on December 19, 2017.  They were first added to this case – which was the First Texas Case before it was transferred to this District – via the Fifth Amended Complaint that was filed, here, in February, 2021.

Because Disney Consumer Products and Disney Enterprises were first added to this case in February, 2021, the four year statute of limitations prohibits Diece-Lisa from recovering from those two defendants for any Lanham Act violation that occurred more than four years before the filing of the Fifth Amended Complaint.

Accordingly, the Disney Defendants met their initial burden, here, as to their statute of limitations affirmative defense. *See Tovar*, 3 F.3d at 1284. The burden, now, shifts to Diece-Lisa to show the existence of a triable issue of material fact to avoid the granting of summary judgment. *See Celotex*, 477 U.S. at 323.

Diece-Lisa argued that it is entitled to equitable tolling of the statute of limitations. Diece Lisa argued that the statute of limitations for its claims against Disney Consumer Products and Disney Enterprises should be tolled from December 19, 2017 – the date those two defendants were dismissed from the Second Texas Case – until those Defendants were joined, here, in February, 2021.

Because there is no federal law regarding equitable tolling, the Court must apply the forum state's rules regarding equitable tolling. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993).

California courts "have liberally applied tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute." *Elkins v. Derby*, 12 Cal. 3d 410, 418 (1974). Generally, under equitable tolling principals, a claim should not be time barred "unless the defendant would be unfairly prejudiced if the plaintiff were allowed to proceed." *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 923 (1983).

Under California law, a plaintiff's pursuit of a remedy in another forum will toll the statute of limitations to permit the filing of a later case in California against the same defendants if: (1) The defendants had timely notice of the filing of the first case in the other forum; (2) The defendants were not prejudiced in gathering evidence; and (3) The plaintiff exhibited good faith and reasonable conduct in filing the subsequent case. *Cervantes*, 5 F.3d at 1275. The doctrine of equitable tolling focuses on the effect

of the prior case in warning the defendants of the need to prepare a defense. *Cervantes*, 5 F.3d at 1275.   Generally, equitable tolling extends the statute of limitations based on principals of fairness. *Addison v. California*, 21 Cal. 3d 313, 316 (1978).

The first factor for equitable tolling is satisfied if the first case alerted the defendants in the second case of the need to begin investigating the facts which form the basis for the second case. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 (2008).   Generally, this factor is satisfied if the defendants are the same in both cases, as they are here. *See Antelope Valley Cmty. Coll. Dist.*

The second factor is satisfied if the facts of the two cases are identical or, at least, so similar that the defendants' investigation of the first case puts them in a position to fairly defend the second case. *See Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1141 (9th Cir. 2001).   Because the facts of this case are similar to the facts of the Second Texas Case, the second factor is satisfied.

As to the third factor, the California Supreme Court has stressed that the timing of the filing of the second case is important to the determination of whether the plaintiff exhibited good faith and reasonable conduct. *See Addison*, 21 Cal. 3d at 316.   The Ninth Circuit has barred the application of California's equitable tolling doctrine where the plaintiff unreasonably delayed filing the second case. *See, e.g., Easley v. County of El Dorado Prob. Dept.*, 478 F. App'x 447 (9th Cir. 2012).

On December 19, 2017, the Eastern District of Texas dismissed Disney Consumer Products and Disney Enterprises from the Second Texas Case for lack of personal jurisdiction.   That dismissal was effective immediately, and it was, and remained, a final decision until modified or set aside on appeal. *See Stoll v. Gottlieb*, 305 U.S. 165, 170 (1938).   Consequently, Diece-Lisa could have filed its claims against Disney Consumer Products and Disney Enterprises in California immediately after they were dismissed.   But, it did not.

On December 20, 2017, Diece-Lisa filed its notice of appeal as to the dismissals.

On January 3, 2018, the Magistrate Judge stayed the First Texas Case.  However, the Eastern District of Texas did not stay the dismissal of Disney Consumer Products and Disney Enterprises from the Second Texas Case.  Consequently, Diece-Lisa could have, then, filed its claims against Disney Consumer Products and Disney Enterprises in California.  But, it did not.

On November 19, 2019, approximately two years after the Eastern District of Texas dismissed Disney Consumer Products and Disney Enterprises, the Fifth Circuit affirmed the dismissal. Diece-Lisa could have, then, filed its claims against Disney Consumer Products and Disney Enterprises in California.  But, it did not.

On March 23, 2020, the Eastern District of Texas ordered the First Texas Case to be transferred to the Central District of California.  Diece-Lisa could have, then, filed its claims against Disney Consumer Products and Disney Enterprises in California. But, it did not.

On October 6, 2020, the First Texas Case was received by the Central District of California.  Diece-Lisa could have, then, filed its claims against Disney Consumer Products and Disney Enterprises in California.  But, it did not.

On February 5, 2021, approximately four months after the First Texas case was received by the Central District of California, the parties submitted a stipulation for leave to file a Fifth Amended Complaint to, *inter alia*, add Disney Consumer Products and Disney Enterprises as defendants.  The Fifth Amended Complaint was eventually filed on February 12, 2021.

In sum, there was a gap of over three years between the time Disney Consumer Products and Disney Enterprises were dismissed from the Second Texas Case on December 19, 2017, until they were joined as additional defendants, here, on  February 12, 2021.  The Court cannot conclude that such a long delay was reasonable.  Indeed, the Court is puzzled as to why Diece-Lisa did not immediately run to California and file a new action against Disney Consumer Products and Disney Enterprises after they were dismissed in 2017 so as to preserve the statute of limitations.  The Court is, also,

1   puzzled as to why Diece-Lisa did not file a new case in California immediately after the
2   Fifth Circuit affirmed the dismissal of Disney Consumer Products and Disney
3   Enterprises on November 19, 2019.

4        Consequently, Diece-Lisa failed to establish that it is entitled to the equitable
5   tolling of the statute of limitations.

6   **Disgorgement of Profits**

7        The Disney Defendants seek partial summary judgment on the ground that
8   Diece-Lisa cannot seek a disgorgement remedy based on its reverse confusion theory.
9   Under 15 U.S.C. § 1117(a), a plaintiff may recover defendants' profits from
10  trademark infringement and unfair competition in violation of the Lanham Act.  *See* 15
11  U.S.C. § 1117(a).

12       The Disney Defendants relied on *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d
13  1400 (9th Cir. 1993) to argue that Diece-Lisa is not entitled to an award of profits,
14  here, because the Disney Defendants did not act willfully under a reverse confusion
15  theory.

16       However, in *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492 (2020), the
17  United States Supreme Court held that willfulness is not an "inflexible precondition to
18  recovery" of the defendants' profits under 15 U.S.C. § 1117(a).  140 S. Ct. at 1497.
19  That is, a plaintiff need not show that a defendant willfully infringed on the plaintiff's
20  trademark or engaged in unfair competition.  *Romag Fasteners, Inc*.  Instead, the
21  defendant's mental state is a "highly important consideration" in determining whether
22  an award of profits is appropriate.  *Romag Fasteners, Inc*.  Because *Romag* is in direct
23  contradiction to *Lindy Pen Co.*, the Supreme Court effectively overruled *Lindy Pen Co.*

24       Moreover, willfulness, usually, is difficult to establish at summary judgment
25  because it is usually inferred from a defendant's mental state.  *See Romag Fasteners,*
26  *Inc.*, 140 S. Ct. at 1497.  However, there is enough evidence, here, to establish a
27  *prima facie* case that the Disney Defendants acted wilfully.

28       Consequently, the Disney Defendants are not entitled to partial summary

judgment as to whether Diece-Lisa can seek a disgorgement remedy.

Accordingly,

**It is Ordered**, *sua sponte*, that Diece-Lisa's claim for unfair competition, in violation of California's common law and Cal. Bus. and Prof. § 17200, *et seq.*, be, and hereby is, **Dismissed**, without prejudice, for lack of equitable jurisdiction.

**It is further Ordered** that the Disney Defendants' motion for summary judgment be, and hereby is, **Denied**.

**It is further Ordered** that the Disney Defendants' alternative motion for partial summary judgment on the ground that Diece-Lisa's claims against Disney Consumer Products and Disney Enterprises are time barred as to the alleged infringements that occurred before February 12, 2017, be, and hereby is, **Granted**.

**It is further Ordered** that the Disney Defendants' alternative motion for partial summary judgment on the ground that Diece-Lisa is not entitled to seek a disgorgement remedy be, and hereby is, **Denied**.

Date: May 1, 2024

_____
**Terry J. Hatter, Jr.**
**Senior United States District Judge**