Robert N. Klieger, State Bar No. 192962
rklieger@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone:  (213) 788-4340
Facsimile:   (888) 775-0898

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIECE-LISA INDUSTRIES, INC., | Case No. 2:20-CV-09147-TJH-JCx |
| Plaintiff, | **DEFENDANTS WALT DISNEY STUDIOS MOTION PICTURES AND BUENA VISTA HOME ENTERTAINMENT, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| DISNEY ENTERPRISES, INC., et al., | |
| Defendants. | |
| | *[Statement of Uncontroverted Facts and Declarations of Jennifer A. Lourie and Matthew J. Kalavsky filed concurrently herewith]* |
| | Judge:        Hon. Terry J. Hatter Jr. |
| | Courtroom: 9C |
| | Date:         October 28, 2024 |
| | Time:         UNDER SUBMISSION |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 28, 2024 in Courtroom 9C of the above-entitled Court, or as soon thereafter as the matter may be heard, Defendants Walt Disney Studios Motion Pictures ("WDSMP") and Buena Vista Home Entertainment, Inc. ("BVHE") will and hereby do move this Court for summary judgment on each claim for relief asserted against them in the Fifth Amended Complaint of Plaintiff Diece-Lisa Industries, Inc. ("Plaintiff").

This Motion is brought pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56-1 on the grounds that WDSMP and BVHE's use of the allegedly infringing "Lots-o'-Huggin' Bear" name in connection with their distribution of the *Toy Story 3* motion picture was purely expressive, and Plaintiff must therefore satisfy the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). Because this Court has already correctly determined that Plaintiff cannot satisfy the *Rogers* test (Dkt. No. 357), the Court should enter summary judgment in favor of WDSMP and BVHE.

This Motion is based on this notice, the attached Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and Declarations of Jennifer A. Lourie and Matthew J. Kalavsky submitted concurrently herewith, and all other papers on file in this action.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on August 7, 2024.

Dated: August 30, 2024            HUESTON HENNIGAN LLP


By: _____
    Robert N. Klieger
    Attorneys for Defendants

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................1

II. FACTUAL BACKGROUND .................................................................2

III. PROCEDURAL BACKGROUND .........................................................3

IV. ARGUMENT ..........................................................................................5

   A. *Rogers* Jurisprudence ................................................................5

      1. The *Rogers* Test ...............................................................5

      2. Ninth Circuit Application of *Rogers* to Expressive Works ........................................................................5

      3. Application of *Rogers* to Consumer Products Based on Expressive Works ......................................7

      4. Application of *Rogers* to Consumer Products with an Expressive Message ................................................8

      5. Rollback of *Rogers* to Expressive Works ...................8

   B. Because WDSMP and BVHE Used "Lots-o'-Huggin' Bear" Only As Expressive Content, Plaintiff's Claims Against Them Fail Under Rogers ...........................9

   C. WDSMP and BVHE Cannot Be Liable for Alleged Infringements by the Other Defendants ...........................12

V. CONCLUSION .....................................................................................14

# TABLE OF CONTENTS

Page(s)

## Cases

*Brown v. Electronic Arts, Inc.*,
 724 F.3d 1235 (9th Cir. 2013) ..................................................................8

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*,
 886 F.2d 490 (2d Cir. 1989) ....................................................................9

*Diece-Lisa Indus., Inc. v. Disney Store USA, LLC*,
 2022 WL 2072727 (9th Cir. June 9, 2022)..............................................5

*Down to Earth Organics, LLC v. Efron*,
 2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024).........................................13

*Dr. Suess Enters., L.P. v. ComicMix LLC*,
 983 F.3d 443 (9th Cir. 2020) ....................................................................8

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
 547 F.3d 1095 (9th Cir. 2008) ..................................................................8

*Gordon v. Drape Creative, Inc.*,
 909 F.3d 257 (9th Cir. 2018) ....................................................................9

*Hara v. Netflix, Inc.*,
 2023 WL 6812769 (C.D. Cal. Aug. 23, 2023) .......................................12

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*,
 955 F.2d 1143 (7th Cir. 1992) ................................................................15

*Jack Daniel's Properties, Inc. v. VIP Products LLC*,
 599 U.S. 140 (2023) ........................................................................*passim*

*JTH Tax LLC v. AMC Networks Inc.*,
 2023 WL 6215299 (S.D.N.Y. Sept. 25, 2023) ..................................12, 13

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
 194 F.3d 980 (9th Cir. 1999) ..................................................................15

MOTION FOR PARTIAL SUMMARY JUDGMENT

*Lombardo v. Dr. Seuss Enters., L.P.*,
   729 Fed. Appx. 131 (2nd Cir. 2018)..................................................................9

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012) ...........................................................14

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) .....................................................................9, 10

*McGillvary v. Netflix, Inc.*,
   2024 WL 3588043 (C.D. Cal. July 30, 2024).........................................13, 14

*MGFB Props., Inc. v. Viacom Inc.*,
   54 F.4th 670 (11th Cir. 2022) .......................................................................9

*Parks v. LaFace Records*,
   329 F.3d 437 (6th Cir. 2003) .......................................................................9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) .....................................................................15

*Punchbowl, Inc. v. AJ Press, LLC*,
   90 F.4th 1022 (9th Cir. 2024) ...............................................................10, 11

*Radiance Found., Inc. v. N.A.A.C.P.*,
   786 F.3d 316 (4th Cir. 2015) .......................................................................9

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ...............................................................*passim*

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) .....................................................................14

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
   875 F.3d 1192 (9th Cir. 2017) ...............................................................9, 10

*Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*,
   683 F.3d 1266 (11th Cir. 2012) ...................................................................9

*VIP Products LLC v. Jack Daniel's Properties, Inc.*,
   2021 WL 5710730 (D. Ariz. Oct. 8, 2021)................................................6

MOTION FOR PARTIAL SUMMARY JUDGMENT

*Westchester Media v. PRL USA Holdings, Inc.*,
  214 F.3d 658 (5th Cir. 2000) ......................................................................9

MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.  **INTRODUCTION**

Plaintiff Diece-Lisa Industries, Inc. ("Plaintiff") claims that the name of the principal antagonist in *Toy Story 3*, a pink bear named "Lots-o'-Huggin' Bear," infringes Plaintiff's "Lots of Hugs" trademark.  Plaintiff filed suit against two groups of defendants.  The first group, comprised of moving parties Walt Disney Studios Motion Pictures ("WDSMP") and Buena Vista Home Entertainment, Inc. ("BVHE"), distributed *Toy Story 3* theatrically and on home video, respectively.  The second group, comprised of the twelve remaining defendants, licensed or sold books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear. Plaintiff asserts trademark infringement and substantially identical unfair competition claims against both groups of defendants.

In 2021, this Court granted the motion of all defendants for summary judgment based on *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), which requires that a plaintiff claiming infringement in connection with an expressive work prove that the defendant's use of the allegedly infringing mark is either not artistically relevant to the underlying work or explicitly misleading as to the source or content of the work.  Dkt. No. 357.  The Ninth Circuit affirmed, but the Supreme Court vacated the judgment and remanded the case for further consideration in light of its ruling in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023).

*Jack Daniel's* held that the *Rogers* test does not apply where a defendant uses the allegedly infringing mark to identify *the source* of products or services—in that case, to identify the source of a dog toy mimicking a bottle of Jack Daniel's whiskey. However, as this Court has recognized, and the Ninth Circuit recently confirmed, the ruling in *Jack Daniel's* was a narrow one, and the *Rogers* test continues to apply where a defendant is alleged only to have included a mark in expressive content, and not for any source-identifying function.

That is precisely the situation with respect to both WDSMP and BVHE. WDSMP and BVHE's role was to distribute *Toy Story 3*, a quintessential expressive

1  work, in which "Lots-o'-Huggin' Bear" is spoken just once, as the antagonist's full

2  name, in the movie's entire 103-minute run time.  They did not sell or have any

3  involvement whatsoever with the conception, design, development, licensing,

4  distribution, or marketing for sale of any books, video games, toys, or other

5  consumer products incorporating the name "Lots-o'-Huggin' Bear" or otherwise

6  based on *Toy Story 3*, nor did they derive any revenues from sales of any such

7  products.  Because WDSMP and BVHE's nexus to the claims involving Lots-o'-

8  Huggin' Bear was solely their distribution of an expressive motion picture, Plaintiff's

9  claims against them must be analyzed under *Rogers*.

10    This Court has already determined that Plaintiff cannot satisfy the *Rogers* test.

11  Lots-o'-Huggin' Bear is artistically relevant to *Toy Story 3*, and is not explicitly

12  misleading as to the source or content of the work.  Dkt. No. 357 at 4-6.

13  Accordingly, Plaintiff's claims against WDSMP and BVHE fail as a matter of law

14  and must be dismissed.[1]

15  ## II.  **FACTUAL BACKGROUND**

16    Plaintiff owns a U.S. trademark registration for LOTS OF HUGS in

17  International Class 28, for use on "toys, namely, puppets."  USPTO Reg. No.

18  3,361,849.  In 2010, Pixar released the motion picture *Toy Story 3*.  Dkt. No. 332-6

19  (Stanton Depo.) at 12:25-13:3.  The principal antagonist in *Toy Story 3* is a pink bear

20  named "Lots-o'-Huggin' Bear," or "Lotso" for short.  Dkt. No. 332-23 (*Toy Story 3*

21  DVD).  His full name is spoken just once in the movie's entire 103-minute run time.

22  *Id.*

23    WDSMP engaged in the theatrical distribution of *Toy Story 3*.  Declaration of

24  Matthew J. Kalavsky ("Kalavsky Decl.") ¶ 2.  WDSMP was not involved in the

25  development or production of *Toy Story 3*, nor did WDSMP engage in any

26

27
28  [1] Plaintiff's claims against the remaining defendants, while beyond the scope of the
instant motion, will fail at trial under a traditional *Sleekcraft* analysis.

exploitation of "Lots-o'-Huggin' Bear" apart from its theatrical distribution of the movie.  *Id.*  WDSMP did not sell or have any involvement whatsoever with the conception, design, development, licensing, distribution, or marketing for sale of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear or otherwise based on *Toy Story 3*.  *Id.* ¶ 3.  Nor did WDSMP derive any revenues from sales of any such products.  *Id.* ¶ 4.

BVHE engaged in the home entertainment distribution of *Toy Story 3* on DVD and Blu-ray.  Declaration of Jennifer A. Lourie ("Lourie Decl.") ¶ 2.  BVHE, like WDSMP, was not involved in the development or production of *Toy Story 3*, nor did BVHE engage in any exploitation of "Lots-o'-Huggin' Bear" apart from its home video distribution of the movie.  *Id.*  BVHE, like WDSMP, did not sell or have any involvement whatsoever with the conception, design, development, licensing, distribution, or marketing for sale of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear or otherwise based on *Toy Story 3*.  *Id.* ¶ 3.  And BVHE, like WDSMP, did not derive any revenues from sales of any such products.  *Id.* ¶ 4.

## III.    <u>PROCEDURAL BACKGROUND</u>

In 2012, Plaintiff filed this action in the Eastern District of Texas.  The case was ultimately transferred to this Court in October 2020, and Plaintiff thereafter filed its Fifth Amended Complaint, alleging claims for trademark infringement and unfair competition.  Dkt. No. 325.  All defendants moved for summary judgment or, in the alternative, summary adjudication on various grounds, including that Plaintiff's claims were barred under the Ninth Circuit's *Rogers* case law.  Dkt. No. 332.  On July 7, 2021, this Court granted summary judgment under *Rogers* and therefore did not reach the alternative grounds for defendants' motion.  Dkt. No. 357.  The Ninth Circuit affirmed.  *See Diece-Lisa Indus., Inc. v. Disney Store USA, LLC*, 2022 WL 2072727 (9th Cir. June 9, 2022).

Plaintiff filed a petition for a writ of certiorari to the Supreme Court. Also pending before the Supreme Court at that time was an appeal from the Ninth Circuit's summary affirmance of the decision in *VIP Products LLC v. Jack Daniel's Properties, Inc.*, 2021 WL 5710730 (D. Ariz. Oct. 8, 2021), in which the district court had extended *Rogers* to an infringement claim in connection with an ordinary consumer product (a dog toy). On June 8, 2023, the Supreme Court reversed that ruling in a narrow decision that precludes application of the *Rogers* test where the defendant uses the allegedly infringing mark as a source identifier, rather than for a purely expressive purpose. *See Jack Daniel's*, 599 U.S. at 159-60. The Supreme Court then granted Plaintiff's cert petition and remanded the case for further consideration in light of *Jack Daniel's*.

All defendants renewed their motion for summary judgment, including on the grounds that their use of "Lots-o'-Huggin' Bear" as a character name was not source-identifying under *Jack Daniel's* and that *Rogers* therefore required dismissal of Plaintiff's claims. Dkt. No. 382-1 at 8-12. In its ruling on that motion, this Court explored the impact of the Supreme Court's ruling on existing *Rogers* jurisprudence. Dkt. No. 386 at 10-11. Specifically, this Court explained that the *Rogers* test *does* apply where a defendant uses a mark "only as expressive content," but that it *does not* apply where a defendant uses a mark, "at least in part, to designate the source of goods." *Id.* Because the defendants had used "Lots-o'-Huggin' Bear," "at least in part, to sell, *inter alia*, books, video[ ] games and toys," this Court held that *Rogers* did not apply to bar liability. *Id.* at 11.

WDSMP and BVHE filed a motion for reconsideration of that ruling, arguing that the Court had failed to consider the material fact that their only nexus to "Lots-o'-Huggin' Bear" was their distribution of the motion picture *Toy Story 3* theatrically and on home video. Dkt. No. 387. This Court denied that motion on the grounds that the summary judgment motion had not set forth a separate argument as to the use of "Lots-o'-Huggin' Bear" by WDSMP and BVHE. *Id.* at 6. However, the Court

1  stated that it would entertain a motion for partial summary judgment by WDSMP and
2  BVHE to consider whether the *Rogers* test is applicable to their use of "Lots-o'-
3  Huggin' Bear." *Id.*

4  **IV.   ARGUMENT**

5      **A.   *Rogers* Jurisprudence**

6          **1.   The *Rogers* Test**

7      *Rogers*, *supra*, involved a Federico Fellini film titled "Ginger and Fred," about
8  two fictional cabaret performers who imitated the renowned dancing duo Ginger
9  Rogers and Fred Astaire.  Rogers sued, claiming that the title of the film violated the
10  Lanham Act "by creating the false impression that the film was about her or that she
11  sponsored, endorsed, or was otherwise involved in the film." *Rogers*, 875 F.2d at
12  997.  Recognizing that consumers "do not regard titles of artistic works in the same
13  way as the names of ordinary commercial products," the Second Circuit adopted a
14  two-part designed to resolve the tension between Lanham Act restrictions and First
15  Amendment values. *Id*. at 999-1000.  Specifically, the court held that the Lanham
16  Act should be construed to apply to the title of an expressive work only where "the
17  title has no artistic relevance to the underlying work whatsoever" or, "if it has some
18  artistic relevance, [where] the title explicitly misleads as to the source or the content
19  of the work." *Id*. at 999.  The Second Circuit applied that test to affirm the district
20  court's grant of summary judgment in favor of the film's producers, finding that the
21  title had genuine relevance to the film's story and was not explicitly misleading; "on
22  the contrary, it is an integral element of the film and the filmmaker's artistic
23  expressions." *Id*. at 1001.

24          **2.   Ninth Circuit Application of *Rogers* to Expressive Works**

25      The Ninth Circuit first employed the *Rogers* test in *Mattel, Inc. v. MCA*
26  *Records, Inc.*, 296 F.3d 894 (9th Cir. 2002), which concerned the song "Barbie Girl"
27  by the Danish band Aqua.  Mattel, the manufacturer of Barbie dolls, sued the
28  producers and distributors of "Barbie Girl" for infringement under the Lanham Act,

1    and the district court granted summary judgment for the defendants. *Id.* at 899.

2    Recognizing that consumers expect song titles, like film titles, "to describe the

3    underlying work, not to identify the producer," the Ninth Circuit analyzed Mattel's

4    claim under the *Rogers* test. *Id.* at 901-902. Because the "Barbie" mark was

5    artistically relevant to the song and not explicitly misleading, the Ninth Circuit

6    affirmed summary judgment for the defendants. *Id.*

7        The Ninth Circuit extended the *Rogers* test beyond titles in *E.S.S. Ent. 2000,*

8    *Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008). The defendant in that

9    case, Rockstar Games, manufactured and distributed the video game *Grand Theft*

10   *Auto: San Andreas*, which took place in a fictionalized version of Los Angeles. *Id.* at

11   1096–97. One of the game's neighborhoods—East Los Santos—"lampooned the

12   seedy underbelly" of East Los Angeles by mimicking its businesses and architecture.

13   *Id.* at 1097. The fictional East Los Santos included a virtual strip club called the "Pig

14   Pen." *Id.* The plaintiff, which operated the "Play Pen" strip club in the real East Los

15   Angeles, claimed that Rockstar's depiction of the Pig Pen infringed its trademark and

16   trade dress. *Id*. While recognizing that the *Rogers* test had been developed and

17   initially applied in cases involving titles, the Ninth Circuit could find "no principled

18   reason why it ought not also apply to the use of a trademark in the body of the work."

19   *Id.* at 1099. The Ninth Circuit therefore "expand[ed] the *Rogers* test from the use of

20   a trademark in a *title* to the *body* of the expressive work." *Dr. Suess Enters., L.P. v.*

21   *ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020) (emphasis in original). Because

22   the "Pig Pen" was artistically relevant to the video game and was not explicitly

23   misleading, the Ninth Circuit affirmed summary judgment for the defendant. *E.S.S.*,

24   547 F.3d at 1101.

25       Following its decision in *E.S.S.*, the Ninth Circuit consistently employed the

26   *Rogers* test in Lanham Act cases involving artistic works, including "where the

27   trademark or other identifying material in question was used in the body of a work

28   rather than in the title." *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir.

2013) (*Madden NFL* video game series); *see Gordon v. Drape Creative, Inc.*, 909
F.3d 257, 268 (9th Cir. 2018) (greeting cards).[2]

### 3. Application of *Rogers* to Consumer Products Based on Expressive Works

In *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192
(9th Cir. 2017), the Ninth Circuit further extended—and, in view of *Jack Daniel's*,
overextended—the *Rogers* test to apply not only to the use of a mark in the title or
body of expressive works, but also to consumer products that are based upon and
promote such works. The plaintiff in *Empire*, Empire Distribution, was a well-
known record label that records and releases albums in the urban music genre. *Id.* at
1195. Defendant Fox produced and distributed a television show titled *Empire* that
portrayed a fictional hip hop music label named "Empire Enterprises." *Id.* Under a
straightforward application of the *Rogers* test, the Ninth Circuit easily rejected the
plaintiff's claims that Fox's use of "Empire" in the title and body of the television
show constituted trademark infringement. *Id.* at 1196. That aspect of *Empire*
remains good law.

The Ninth Circuit, however, also held that Fox's use of the "Empire" name
outside of the show, including in connection with the sale and licensing of shirts,
champagne glasses, and other consumer products, was governed by *Rogers*,
explaining that "[a]lthough it is true that these promotional efforts technically fall
outside the title or body of an expressive work, it requires only a minor logical

---

[2] Every other circuit to consider the application of the *Rogers* test to motion pictures,
songs, and other expressive works has reached the same conclusion. *See, e.g.*,
*MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670, 679–80 (11th Cir. 2022) (television
series); *Lombardo v. Dr. Seuss Enters., L.P.*, 729 Fed. Appx. 131, 133 (2nd Cir.
2018) (plays); *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 329 (4th Cir.
2015) (articles); *Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d
1266, 1278–79 (11th Cir. 2012) (paintings); *Parks v. LaFace Records*, 329 F.3d 437,
451–52 (6th Cir. 2003) (songs); *Westchester Media v. PRL USA Holdings, Inc.*, 214
F.3d 658, 664–65 (5th Cir. 2000) (magazines); *Cliffs Notes, Inc. v. Bantam
Doubleday Dell Publ'g Group, Inc.*, 886 F.2d 490, 494–95 (2d Cir. 1989) (books).

1  extension of the reasoning of *Rogers* to hold that works protected under its test may
2  be advertised and marketed by name, and we so hold." *Id.* at 1196-97. That portion
3  of the *Empire* decision did not survive *Jack Daniel's*.

4          **4.    Application of *Rogers* to Consumer Products with an**
5                 **Expressive Message**

6          The defendant in *Jack Daniel's*, VIP Products ("VIP"), sold a "squeaky,
7  chewable dog toy designed to look like a bottle of Jack Daniel's whiskey." *Jack*
8  *Daniel's*, 599 U.S. at 144. In place of the "Jack Daniel's" trademark, VIP used its
9  own "Bad Spaniels" trademark; and in place of Jack Daniel's "Old No. 7 Brand
10 Tennessee Sour Mash Whiskey" slogan, VIP used "The Old No. 2 On Your
11 Tennessee Carpet." *Id.* VIP argued, and the Ninth Circuit agreed, that because VIP
12 used those marks to "parody" or "make fun" of Jack Daniel's, the dog toy was
13 imbued with an expressive message that warranted application of *Rogers*. *Id.* at 153.

14         **5.    Rollback of *Rogers* to Expressive Works**

15         The Supreme Court reversed the Ninth Circuit's decision in *Jack Daniel's*,
16 holding that the Ninth Circuit had gone too far in applying *Rogers* to any product
17 imbued with an expressive message. Most important to the Supreme Court's
18 analysis, VIP had used the allegedly infringing marks *as trademarks*. By VIP's own
19 admission, the "Bad Spaniels" mark and distinctive trade dress of the dog toy were
20 "used to '[i]dentify and distinguish [VIP's] goods' and to 'indicate [their] source.'"
21 *Id.* at 160. In other words, VIP was "using the Bad Spaniels (née Jack Daniel's)
22 trademarks as trademarks, *to identify product source*." *Id.* (emphasis added). The
23 fact that the marks also parodied Jack Daniel's famous marks did not alter their
24 source-identifying function. *Id.* Because VIP was using the marks "as source
25 identifiers," the Supreme Court held that the *Rogers* test did not apply. *Id.* at 162.
26         Importantly, as the Ninth Circuit explained earlier this year in *Punchbowl, Inc.*
27 *v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024), "the Supreme Court's decision in
28 *Jack Daniel's* was confined to a 'narrow' point of law, that *Rogers* does not apply

when a mark is used as a mark." *Id.* at 1031 (citation omitted). "[P]reexisting Ninth
Circuit precedent adopting and applying *Rogers* otherwise remains intact and binding
[in this Circuit]." *Id.* Therefore, as this Court has already recognized, where a
defendant uses a mark only as expressive content, and not to designate the source of
consumer products, the *Rogers* test continues to apply and to bar liability. Dkt. No.
386 at 10-11.**³**

**B.    Because WDSMP and BVHE Used "Lots-o'-Huggin' Bear" Only As
Expressive Content, Plaintiff's Claims Against Them Fail Under
*Rogers***

That rule is dispositive of Plaintiff's claims against WDSMP and BVHE.
Unlike various of the other defendants, WDSMP and BVHE used "Lots-o'-Huggin'
Bear" only as expressive content. Specifically, WDSMP and BVHE distributed a
motion picture in which "Lots-o'-Huggin' Bear" is spoken once, as the full name of
the primary antagonist. Kalavsky Decl. ¶ 2; Lourie Decl. ¶ 2. Neither WDSMP nor
BVHE engaged in any use or exploitation of "Lots-o'-Huggin' Bear" apart from their
theatrical and home video distribution of *Toy Story 3*. *Id.* They did not sell and had
no involvement whatsoever with the conception, design, development, licensing,
distribution, or marketing for sale of any books, video games, toys, or other
consumer products incorporating Lots-o'-Huggin' Bear or otherwise based on *Toy
Story 3*. Kalavsky Decl. ¶ 3; Lourie Decl. ¶ 3. Nor did they derive any revenues
from sales of any such products. *Id.* They simply distributed a movie—a
quintessential expressive work—in which "Lots-o'-Huggin' Bear" is spoken (a

---

**³** Recognizing that its claims cannot survive the *Rogers* test, Plaintiff previously
invited this Court to modify the *Rogers* test in reverse confusion cases to, among
other things, require a defendant to explicitly *disclaim* any association with the senior
user, effectively compelling speech as part of an expressive work in violation of the
First Amendment. Dkt. No. 333 at 15-16. This Court appropriately rejected that
invitation, finding no precedent that would support a deviation from *Rogers*. Dkt.
No. 357 at 5.

1 single time) as a character's name.  There is nothing more to Plaintiff's claims

2 against them.

3        The Supreme Court in *Jack Daniel's* recognized that referencing or depicting a

4 trademark in a movie is protected under *Rogers*.  Specifically, the Supreme Court

5 cited with approval a district court's application of *Rogers* to bar a Lanham Act

6 claim brought by Louis Vuitton challenging the depiction of its mark in the movie

7 *The Hangover: Part II.  See Jack Daniel's*, 599 U.S. at 154 (citing *Louis Vuitton*

8 *Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012)).

9 The Supreme Court went on to explain:

10        Suppose a filmmaker uses a Louis Vuitton suitcase to convey
         something about a character (he is the kind of person who wants to be
11       seen with the product but doesn't know how to pronounce its name).
         Now think about a different scenario: A luggage manufacturer uses an
12       ever-so-slightly modified LV logo to make inroads in the suitcase
         market.  The greater likelihood of confusion inheres in the latter use,
13       because it is the one conveying information (or misinformation) about
         who is responsible for a product.
14

15 *Id.* at 157 (citation omitted).  In other words, depicting a Louis Vuitton logo in a

16 movie is subject to dismissal under *Rogers*, whereas using a modified Louis Vuitton

17 mark to sell suitcases is not.

18        Since *Jack Daniel's* was decided, lower courts have had no trouble

19 recognizing that the depiction of a mark within the body of an expressive work is *not*

20 the use of a trademark as a source identifier and is therefore subject to dismissal

21 under *Rogers*.  In *Hara v. Netflix, Inc.*, 2023 WL 6812769 (C.D. Cal. Aug. 23, 2023),

22 a well-known drag queen sued Netflix for allegedly misappropriating her name and

23 likeness in the animated television series *Q-Force.  Id.* at *1.  The district court held

24 that because the plaintiff's claims targeted the use of her name and likeness in a

25 television show, which is a quintessential expressive work, the *Rogers* test applied

26 and required dismissal of her claims.  *Id.* at *3-4.

27        In *JTH Tax LLC v. AMC Networks Inc.*, 2023 WL 6215299 (S.D.N.Y. Sept.

28 25, 2023), a tax preparation service operating under the name "Liberty Tax Service"

MOTION FOR PARTIAL SUMMARY JUDGMENT

1    sued the producers of the television show *Better Call Saul* over an episode that

2    depicted a fictional tax preparation service called "Sweet Liberty Tax Services." *Id.*

3    at *1.  The plaintiff claimed trademark and trade dress infringement. *Id.* Because

4    the defendants used the allegedly infringing name only as expressive content in

5    furtherance of the show's plot, the district court applied *Rogers* and dismissed the

6    plaintiff's claims. *Id.* at *15.

7        In *Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532 (S.D.N.Y. Mar.

8    31, 2024), the defendants produced and distributed *Down to Earth with Zac Efron*, an

9    eight-episode online series focused on wellness and travel. *Id.* at *2.  The plaintiff,

10   which held a trademark for "Down to Earth" in connection with a variety of health

11   and wellness products and services, filed suit for trademark infringement and

12   dilution. *Id.*  The district court held that the defendants' use of "Down to Earth" in

13   the title and body of the series was purely expressive, and therefore protected under

14   *Rogers*, and dismissed the claims. *Id.* at *4-9.

15       The most recent decision confirming the continued application of *Rogers* to

16   expressive works was Judge Staton's ruling in *McGillvary v. Netflix, Inc.*, 2024 WL

17   3588043 (C.D. Cal. July 30, 2024).  The plaintiff in that case claimed that Netflix's

18   show entitled *The Hatchet Wielding Hitchhiker* infringed on his alleged ownership of

19   several marks, including "The Hatchet Wielding Hitchhiker." *Id.* at *13.  Judge

20   Staton dismissed the plaintiff's claim without leave to amend based on *Rogers*,

21   explaining that, even after *Jack Daniel's*, the *Rogers* test continues to apply to the

22   allegedly infringing use of a mark not to identify source but instead as "part of an

23   expressive work protected by the First Amendment." *Id.*  Because the Netflix

24   documentary was "obviously an expressive work," and its title identified the subject

25   matter of the documentary rather than its source, "[t]he *Rogers* test applies and

26   precludes [plaintiff's] trademark claim." *Id.*

27       This Court should apply the same analysis with respect to Plaintiff's claims

28   against WDSMP and BVHE, which arise solely from their distribution of *Toy Story*

*3.*  There has been no allegation, much less evidence, that the name "Lots-o'-Huggin'
Bear," spoken only once in the movie's 103-minute run time, was used to identify
the source of the movie.  Rather, its use in the movie as a character's name was
purely expressive.  Because neither WDSMP nor BVHE sold or derived any
revenues from sales of consumer products utilizing "Lots-o'-Huggin' Bear," nor
otherwise used Plaintiff's mark as a source identifier, Plaintiff's claims against them
are properly analyzed, and dismissed, under *Rogers*.  *See* Dkt. No. 357 at 4-6.

In opposing WDSMP and BVHE's earlier motion for reconsideration, Plaintiff
argued that a jury could easily find that *Toy Story 3* is commercial speech,
specifically, "a commercial that happens to have a plot and runs 1 hour and 48
minutes."  Dkt. No. 390 at 4.  The notion that sales of consumer products based on an
Academy Award-winning movie could somehow transmute the movie itself into
commercial speech flies in the face of established jurisprudence and would deprive
most every movie of core First Amendment protections.  That simply is not the law,
and no jury could be empowered to hold otherwise.  *See Sarver v. Chartier*, 813 F.3d
891, 905 (9th Cir. 2016) (motion picture "is not speech proposing a commercial
transaction," and "precedents relying on the lesser protection afforded to commercial
speech are inapposite"); *McGillvary*, 2024 WL 3588043, at *13 (rejecting plaintiff's
argument that Netflix's use of his alleged mark as a title for a television program was
a "commercial use" to which *Rogers* did not apply).

**C.    WDSMP and BVHE Cannot Be Liable for Alleged Infringements
      by the Other Defendants**

Recognizing that *Rogers* is an absolute bar to Plaintiff's claims against
WDSMP and BVHE based upon *their own* use of "Lots-o'-Huggin' Bear," Plaintiff
will likely argue that WDSMP and BVHE can somehow be held liable for the acts of
*the other defendants*—namely, the other defendants' sales of books, video games,
toys, or other consumer products incorporating "Lots-o'-Huggin' Bear."  However,

1  Plaintiff has not even pleaded, much less adduced evidence to support, any theory of
2  liability other than the direct infringement claims that are foreclosed by *Rogers*.

3      The principal doctrines under which a defendant may be held liable for alleged
4  trademark infringement by another are contributory and vicarious infringement.
5  "Contributory infringement occurs when the defendant either intentionally induces a
6  third party to infringe the plaintiff's mark or supplies a product to a third party with
7  actual or constructive knowledge that the product is being used to infringe the …
8  mark." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983 (9th
9  Cir. 1999). "Vicarious liability for trademark infringement requires 'a finding that
10 the defendant and the infringer have an apparent or actual partnership, have authority
11 to bind one another in transactions with third parties or exercise joint ownership or
12 control over the infringing product.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494
13 F.3d 788, 807 (9th Cir. 2007) (quoting *Hard Rock Café Licensing Corp. v.
14 Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)).  Plaintiff's Fifth
15 Amended Complaint does not plead the elements of either contributory or vicarious
16 infringement liability.  Moreover, the undisputed evidence negates each of those
17 elements with respect to both WDSMP and BVHE.  *See* Kalavsky Decl. ¶¶ 2-3;
18 Lourie Decl. ¶¶ 2-3.

19     Nor has Plaintiff pleaded, much less adduced evidence to support, disregarding
20 WDSMP and BVHE's corporate form and treating them as mere alter egos of the
21 other defendants.  To the contrary, the Fifth Amended Complaint expressly seeks to
22 hold WDSMP and BVHE liable solely in relation to their own use of Lots-o'-
23 Huggin' Bear "in the *Toy Story 3* movie" and "in the *Toy Story 3* DVDs and Blu-
24 Rays," Dkt. No. 325 at 26, and not for the other defendants' sales of books, video
25 games, toys, or other consumer products.

26     Accordingly, Plaintiff cannot use the activities of the other defendants to make
27 an end run around *Rogers*.  Rather, WDSMP and BVHE may be held liable only if
28

their distribution of a movie in which "Lots-o'-Huggin' Bear" is spoken (just once) as a character's name constitutes actionable infringement.  Under *Rogers*, it cannot.

## V.    **CONCLUSION**

For the foregoing reasons, WDSMP and BVHE respectfully request that this Court grant their motion for partial summary judgment and dismiss Plaintiff's claims against them under *Rogers*.

Dated:  August 30, 2024                    HUESTON HENNIGAN LLP


By:  _____
        Robert N. Klieger
        Attorneys for Defendants

MOTION FOR PARTIAL SUMMARY JUDGMENT