REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
Megan O'Neill (SBN 220147)
  moneill@dtolaw.com
DTO LAW
915 Wilshire Boulevard, Suite 1950
Los Angeles, California 90017
Telephone: (213) 335-6999
Facsimile: (213) 335-7802

Richard L. Schwartz (*pro hac vice*)
  rschwartz@whitakerchalk.com
WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0524
Facsimile: (817) 878-0501

Attorneys for Plaintiff
DIECE-LISA INDUSTRIES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIECE-LISA INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DISNEY ENTERPRISES, INC., et al.,<br><br>Defendants. | 2:20-CV-09147-TJH-JCx<br>Hon. Terry J. Hatter, Jr.<br><br>**PLAINTIFF DIECE-LISA INDUSTRIES, INC.'S OPPOSITION TO DEFENDANTS WALT DISNEY STUDIOS MOTION PICTURES AND BUENA VISTA HOME ENTERTAINMENT, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND, ALTERNATIVELY, RULE 56(d) REQUEST**<br><br>Courtroom: 9C<br>Date: Oct. 28, 2024<br>Time: UNDER SUBMISSION |

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 5

II. STATEMENT OF FACTS .............................................................................. 7

    A. Relevant Background Facts ................................................................... 7

    B. Relevant Procedural History .................................................................. 8

III. ARGUMENT .................................................................................................. 9

    A. *Rogers* Does Not Apply Because Whether WDSMP and BVHE Use the Mark as Source-Identifying Is a Question of Fact. ........................................................................................................ 9

        1. Defendants themselves have declared Disney film characters are source identifiers. ............................................. 10

        2. Defendants treat other Disney film characters as source identifiers. ............................................................................. 11

        3. WDSMP and BVHE distribute advertising for infringing merchandise. ........................................................ 12

        4. WDSMP and BVHE's cases are distinguishable. ................. 14

    B. Alternatively, this Court Should Defer Ruling on Summary Judgment to Allow DLI to Conduct Additional Discovery Under Rule 56(d). ............................................................................... 15

        1. DLI seeks deposition testimony from two declarants on whom WDSMP and BVHE rely but never disclosed. .......... 15

        2. DLI seeks discovery on the symbiotic relationship between Disney merchandise and films. .............................. 17

    C. In any Event, *Rogers* Does Not Apply to This Case of Reverse Confusion. ............................................................................................ 18

IV. CONCLUSION ............................................................................................. 19

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abitron Austria GmbH v. Hetronic Intl., Inc.*,
   600 U.S. 412 (2023) .................................................................................................. 12

*Cent. States Indus. Supply, Inc. v. McCullough*,
   279 F. Supp. 2d 1005 (N.D. Iowa 2003) ............................................................. 16

*Down to Earth Organics, LLC v. Efron*,
   2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) ..................................................... 14

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
   983 F.3d 443 (9th Cir. 2020) ................................................................................ 18

*In re GO & Assocs.*,
   90 F.4th 1354 (Fed. Cir. 2024) ............................................................................. 10

*Hara v. Netflix, Inc.*,
   2023 WL 6812769 (C.D. Cal. Aug. 28, 2023) ............................................. 14, 15

*HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*,
   2023 WL 6880341 (D. Del. Oct. 18, 2023) ......................................................... 10

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
   599 U.S. 140 (2023) ..........................................................................................*passim*

*JTH Tax LLC v. AMC Networks Inc.*,
   694 F. Supp. 3d 315 (S.D.N.Y. 2023) ........................................................... 14, 15

*Marketquest Grp., Inc. v. BIC Corp.*,
   862 F.3d 927 (9th Cir. 2017) ................................................................................ 18

*McGillvary v. Netflix, Inc.*,
   2024 WL 3588043 (C.D. Cal. July 30, 2024) ..................................................... 14

*Punchbowl, Inc. v. AJ Press LLC*,
   2024 WL 4005220 (C.D. Cal. Aug. 22, 2024) .................................................... 17

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ............................................................................*passim*

*Smith v. OSF HealthCare Sys.*,
  933 F.3d 859 (7th Cir. 2019) ................................................................................. 16

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ......................................................................... 14, 15

**Statutes**

15 U.S.C. § 1125 ............................................................................................. 13, 14

Fed. R. Civ. P. 26 ......................................................................................... 6, 15, 16

Fed. R. Civ. P. 30 ................................................................................................. 16

Fed. R. Civ. P. 37 ................................................................................................. 16

Fed. R. Civ. P. 56 ................................................................................. 7, 15, 16, 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

For the third time since *Jack Daniel's* was decided, Defendants Walt Disney Studios Motion Pictures ("WDSMP") and Buena Vista Home Entertainment, Inc. ("BVHE")[1] ask this Court to apply the *Rogers* test to bar Plaintiff Diece-Lisa Industries, Inc.'s ("DLI") trademark infringement claims. But this Court previously held *Rogers* does not apply to any of Defendants' claims, and nothing in WDSMP and BVHE's latest motion compels a different result.

As this Court has explained, Defendants used a "slightly modified" version of DLI's LOTS OF HUGS mark (the "Mark") as the name of a stuffed bear character, Lots-o'-Huggin' Bear, in the film *Toy Story 3*. 5/1/24 Order 11:18, ECF No. 386. Defendants used that mark in part to designate the source of Lots-o'-Huggin' Bear and sell Lots-o'-Huggin' Bear merchandise. *See id.* at 11:23–27. Thus, consistent with *Jack Daniel's*, this Court concluded *Rogers* does not apply. *See id.* at 11:28–12:2; *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 156 (2023) (holding when "use is at least in part for source identification . . . *Rogers* has no proper role") (cleaned up). This Court also found triable facts as to whether Defendants' use of the slightly modified Mark likely confuses consumers as to source. *See* 5/1/24 Order 19:5–7.

WDSMP and BVHE now argue *Rogers* should apply to them, if not the other Defendants. They maintain they simply distributed *Toy Story 3* to theaters and home-video retailers without selling Lots-o'-Huggin' Bear merchandise. Accordingly, they assume they did not use the Mark in any source-identifying manner, and *Rogers* applies. But WDSMP and BVHE distort both the record and the law.

---

[1] All 14 Defendants in this case are subsidiaries of The Walt Disney Company.

As a threshold matter, whether an alleged infringer uses a mark as a source identifier is a question of fact. Here, a reasonable jury could easily conclude *Toy Story 3* uses Lots-o'-Huggin' Bear in part as a source identifier.

**First**, Defendants themselves admit Disney film characters serve source-identifying functions. Indeed, when the shoe is on the other foot and Disney seeks to protect its ***own*** intellectual property rights, it emphasizes the "inherently distinctive" nature of Disney film characters, which "serve to identify" Disney entities "as the source" of products.

**Second**, Disney entities routinely treat character names as trademarks. For example, they ████████████████████████████████████████ ████████████ in *Toy Story 3*. And they routinely trademark their home-grown character names, like Buzz Lightyear, another *Toy Story* character. The Supreme Court has explained such conduct towards similar marks strongly suggests an infringer treats the mark at issue as source identifying.

**Third**, whether WDSMP and BVHE themselves sold Lots-o'-Huggin' Bear merchandise is immaterial. The Lanham Act prohibits "advertising" infringing goods, and a reasonable jury could conclude *Toy Story 3* operates in part as an advertisement for infringing toys and other goods featuring Lots-o'-Huggin' Bear, among other characters. As this Court itself previously acknowledged, "toys and movies are complementary." 5/1/24 Order 16:7.

Alternatively, if this Court finds the current record does not create any triable fact, it should defer summary judgment to allow DLI to obtain further discovery. WDSMP and BVHE's Motion turns entirely on declarations from two individuals whom Defendants never previously disclosed, in violation of Rule 26(a)(1). DLI believes deposing those individuals and others with knowledge will reveal that WDSMP and BVHE did more than simply distribute the film and, in fact, profited from Lots-o'-Huggin' merchandise sales.

1    Finally, this Court should reassess whether *Rogers* applies in any event to
2 this case of reverse confusion.  Justice Gorsuch admonished lower courts to apply
3 *Rogers* carefully.  Any careful application reveals *Rogers* is unworkable in cases of
4 reverse confusion.
5    This Court should deny WDSMP and BVHE's Motion for Partial Summary
6 Judgment.  Alternatively, it should defer ruling on summary judgment pursuant to
7 Rule 56(d) to allow DLI to take additional discovery.

**II.   STATEMENT OF FACTS**

   **A.   Relevant Background Facts**

   Randice-Lisa Altschul is the sole owner of DLI, a toy and game company that principally licenses innovative concepts to third parties who, in turn, manufacture and sell products to the retailers, who ultimately sell to consumers. *See* Pl.s' Sep. Stmt. of Genuine Disputes & Addt'l Facts ("Sep. Stmt.") ¶¶ 21–22. In the mid-1990s, Altschul and DLI conceived of a novel idea for a wearable stuffed animal having sleeve-like openings in which the user could place their arms.  *See id.* ¶ 23.  That idea became LOTS OF HUGS, for which DLI obtained a federally registered trademark first in 1997 and then again in 2008.  *See id.* ¶ 24.

   Defendants knew about DLI's mark.  *See* 5/1/24 Order 18:17–18. Nevertheless, they distributed the film *Toy Story 3* in 2010, which features an integral character named Lots-o'-Huggin' Bear.[2]  *See* Sep. Stmt. ¶¶ 2, 5, 13.  They also distribute various other goods featuring Lots-o'-Huggin' Bear.  *See* Sep. Stmt. ¶ 20 (citing to online listings for Lots-o'-Huggin' Bear goods).  As a result, Defendants have destroyed the value of DLI's similar LOTS OF HUGS Mark.  *See id.* ¶ 25.

---

[2]  Pixar created *Toy Story 3* and is now a subsidiary of Disney.  *See* 5/1/24 Order at 3:26–4:2.

B.     Relevant Procedural History

DLI sued Defendants under a "reverse confusion" theory for infringement of DLI's Mark. *See* ECF No. 325. Defendants filed their first Motion for Summary Judgment on March 19, 2021. *See* ECF No. 332. This Court, believing itself to be constrained by the Ninth Circuit's interpretation of *Rogers*, granted Defendants' motion.[3] *See* ECF No. 357. DLI appealed, and after the Ninth Circuit summarily affirmed, *see* ECF No. 373, DLI petitioned the Supreme Court for a writ of certiorari, *see* 2022 WL 12639245 (Oct. 11, 2022).

While DLI's petition was pending, the Supreme Court reversed the Ninth Circuit in *Jack Daniel's*. The Court held when an alleged infringer uses a mark "at least in part for source identification," *Rogers* does not apply. 599 U.S. at 156 (cleaned up). Shortly thereafter, the Supreme Court granted DLI's petition and remanded for further consideration in light of *Jack Daniel's*. *See* 143 S. Ct. 2634 (2023). After additional briefing, the Ninth Circuit remanded to this Court. *See* ECF No. 378.

On October 23, 2023, Defendants filed a Renewed Motion for Summary Judgment. *See* ECF No. 382. DLI opposed, arguing, among other things, that *Jack Daniel's* barred application of *Rogers* to Defendants' use of Lots-o'-Huggin' as a trademark. *See* ECF No. 384. On May 1, 2024, this Court agreed with DLI, holding Defendants use of a "slightly modified" version of DLI's Mark "designated, at least in part, the source of the Disney Defendants' Lots-o'-Huggin' Bear," and, as result, *Rogers* is "no longer applicable, here, to bar liability." ECF No. 386, at 11:18, 11:23–27. The Court also found DLI "met its burden of setting

---

[3]    At that time, the *Rogers* test provided that where the alleged infringement is part of an expressive work, the plaintiff must show use of the infringing mark "has no artistic relevance to the underlying work whatsoever," or if it does have some artistic relevance, that it "explicitly misleads as to the source or the content of the work." *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989).

forth a *prima facie* case that its consumers are likely to mistakenly believe that the source of its goods bearing its Mark is the Disney Defendants." *Id.* at 19:5–7.

WDSMP and BVHE filed a Motion for Reconsideration. *See* ECF No. 387. They argued *Rogers* does not apply to them, in particular, because they merely distributed *Toy Story 3*, which only features the Lots-o'-Huggin' mark in an expressive manner entitled to protection under *Rogers*. *See id.* at 7:12–23. This Court denied the motion because Defendants never raised that argument in the first instance. *See* ECF No. 393. However, this Court *sua sponte* allowed WDSMP and BVHE to file the instant Motion "limited to whether the *Rogers* test is applicable to their use of Lots-o'-Huggin' Bear." *Id.* at 6:14–15. It reasoned "this is a complicated case with evolving issues, [and] it is possible that the Disney Defendants might not have foreseen th[at] issue . . . before [they] received the Court's May 1, 2024, order." *Id.* at 6:10–14.

### III. ARGUMENT

A. ***Rogers* Does Not Apply Because Whether WDSMP and BVHE Use the Mark as Source-Identifying Is a Question of Fact.**

There is no reason to depart from this Court's previous recitation of the law after *Jack Daniel's*: "[T]he *Rogers* test should be applied ***only*** where a mark is used ***only*** as expressive content, and should not be applied where a mark is used, ***at least in part***, to designate the source of goods." 5/1/24 Order 10:27–11:1 (emphasis added).[4] WDSMP and BVHE repeatedly emphasize they use the slightly modified Mark "only as expressive content," not as a source identifier.

---

[4] *Rogers* originated in cases involving ***titles of works***, an instance where "expressive content" is easier to determine. Applying *Rogers* outside that context is a tricky endeavor because the underlying basis of *Rogers* is unknown. *Cf. Jack Daniel's*, 599 U.S. at 165 (Gorsuch, J., concurring) ("[I]t is not entirely clear where the *Rogers* test comes from—is it commanded by the First Amendment, or is it merely gloss on the Lanham Act, perhaps inspired by constitutional-avoidance doctrine?").

*See, e.g.,* Mot. 9:10–10:2, ECF No. 398.  But as WDSMP and BVHE conveniently omit, whether a mark is used as a source identifier is a question of fact.  *See In re GO & Assocs.*, 90 F.4th 1354, 1357 (Fed. Cir. 2024) ("Whether or not a mark functions as a source identifier is a question of fact[.]"); *HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*, 2023 WL 6880341, at *4 (D. Del. Oct. 18, 2023) ("[T]he question of whether the use of a mark is source-identifying likely contains underlying questions of fact."), *report and recommendation adopted*, 2023 WL 8826729 (D. Del. Dec. 21, 2023).  And here, a reasonable jury could conclude WDSMP and BVHE's use of the "slightly" modified Mark in *Toy Story 3* is not *solely* expressive, but rather serves some source-identifying function.

        1.    *Defendants themselves have declared Disney film characters are source identifiers.*

In a 2012 lawsuit filed by Defendant Disney Enterprises, Inc. ("DEI"), DEI explained:

> A significant aspect of Disney's business is the merchandising and licensing of *distinctive elements associated with DEI's motion picture[s]* . . . . The distinctive elements licensed and/or merchandised include, but are not limited to, the world-famous *characters featured in numerous . . . feature length motion pictures . . .*, including, but not limited to . . . various characters from the motion picture *Toy Story* . . . . The appearance and *other features* of the [those] Characters are *inherently distinctive* and *serve to identify* DEI *and its licensees as the source* of products bearing [the] Characters."

Req. for Judicial Notice ("RJN"), Ex. I at 3:7–19; see also Sep. Stmt. ¶ 26. WDSMP and BVHE are DEI's licensees.  *See* Sep. Stmt. ¶¶ 7, 15.  Thus, features of *Toy Story 3* characters—including, undoubtedly, those characters' names— "serve to identify" WDSMP and BVHE.[5]  This alone is fatal to WDSMP and BVHE's Motion.

---

[5]   WDSMP and BVHE maintain they do not sell any "consumer products."  Sep. Stmt. ¶¶ 6–12, 14–20.  But this defies common sense.  *Toy Story 3* is a

2. *Defendants treat other Disney film characters as source identifiers.*

While WDSMP and BVHE insist they do not use the Mark as a source identifier, they remarkably do not engage with authority regarding how to determine whether a use is source identifying. And although the Supreme Court has not articulated any specific test, it has identified certain hallmarks of source-identifying use.

In determining whether the defendant in *Jack Daniel's* used the mark as a source identifier, the Court looked to how the defendant treated similar products. *See* 599 U.S. at 160. For example, the fact that the defendant had registered marks for similar products suggested the defendant used the mark at issue as a source identifier. *See id.*

Likewise, Disney entities' conduct towards other characters in *Toy Story 3* suggests they believe those characters serve some source-identifying function. Specifically, Pixar ███████████████████████████████████████████████████████████. *See* Sep. Stmt. ¶ 27. Apparently, Pixar did not believe third-party characters were purely protected forms of expression. Relatedly, Defendants routinely trademark the names of their own characters, including Tinker Bell (U.S. Registration No. 6880330), Miss Piggy (3788701) and Lightning McQueen (3170195). *See* Sep. Stmt. ¶ 29. Plainly, therefore, Defendants do not consider character names as purely expressive. As in *Jack Daniel's*, this fact demonstrates the character name in question here is not purely expressive.

---

consumer product. How else would it have garnered over $1 billion in box office receipts? *See, e.g., id.* ¶ 7. How else do consumers obtain DVD or Blu-Ray copies of the film other than by purchasing them alongside other goods on a shelf or website? *See, e.g., id.* ¶ 15.

In *Abitron Austria GmbH v. Hetronic International, Inc.*, Justice Jackson explained using a mark "in the sense Congress prohibited"—*i.e.*, as a source identifier—simply means using the mark "in a way likely to commit the 'cardinal sin' of 'confus[ing] consumers about source.'" 600 U.S. 412, 430 (2023) (Jackson, J., concurring) (quoting *Jack Daniel's*, 599 U.S. at 157).

Here, this Court has already found triable issues of fact as to whether Defendants' use of the "slightly modified" Mark confuses consumers about source. *See* 5/1/24 Order 19:1–9 (weighing factors from *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)). The result is the same even when the analysis is limited to only WDSMP and BVHE and the *Toy Story 3* film: the marks are similar, *see id.* at 16:23–24; consumers would exercise ordinary care, *see id.* at 17:25; the goods are related because "toys and movies are complementary," *id.* at 16:7; and all "Defendants" (*i.e.*, including WDSMP and BVHE) had prior knowledge of DLI's Mark, *id.* at 18:17–18 (emphasis added). Because WDSMP and BVHE use the slightly modified Mark in a way likely to "confus[e] consumers about source," they necessarily use it "in the sense Congress prohibited." *Abitron*, 600 U.S. at 430.

### 3. WDSMP and BVHE distribute advertising for infringing merchandise.

WDSMP and BVHE insist they never marketed consumer products incorporating Lots-o'-Huggin' Bear. *See* Sep. Stmt. ¶¶ 7, 15. But Disney's business model tells a different story.

Pixar refers to the characters in *Toy Story 3* as ▉▉▉▉▉▉▉▉. *Id.* ¶ 28. In conjunction with watching those ▉▉▉▉▉ on screen, consumers can purchase physical versions of those toys, including Lots-o'-Huggin' Bear. Unsurprisingly, therefore, Defendant Disney Stores USA, LLC's corporate representative emphasized the importance of releasing films and merchandise contemporaneously. *See* Sep. Stmt. ¶¶ 7, 15. And Defendant DEI's corporate

representative agreed that Disney films can boost sales of related merchandise.[6] *See id.* ¶¶ 12, 20. As this Court has acknowledged, "toys and movies are complementary." 5/1/24 Order 16:7 (citing *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998)).

Accordingly, a reasonable jury could conclude that apart from whatever expressive value and function it may or may not have, *Toy Story 3* serves as an advertisement for character-related merchandise. Indeed, why would the ███████████████████████████████████████████████ if they did not perceive significant advertising benefit for their toys from the movie itself? This is fatal to WDSMP and BVHE's Motion. There is no question that Lots-o'-Huggin' Bear merchandise is not protected by *Rogers*. And the Lanham Act imposes liability for "*advertising*"—not only selling—infringing goods. 15 U.S.C. § 1125(a)(1) (emphasis added). Thus, WDSMP and BVHE's dichotomy between the film and other consumer products is immaterial for the purposes of liability.

The Supreme Court's discussion about the movie *The Hangover: Part II* in *Jack Daniel's* is instructive. *The Hangover* filmmakers used a modified LOUIS VUITTON mark ("Lewis Vuitton") solely as commentary about a character in the film. *See* 599 U.S. at 157. That use was protected by *Rogers*. *See id*. But the Court reasoned the analysis would differ if one used that same modified mark "to make inroads in the suitcase market." *Id*. That would be "paradigmatic infringement." *Id*.

Here, WDSMP and BVHE distributed a film that uses a "slightly modified" Mark to make inroads in the toy market. And because the Lanham Act imposes

---

[6] This has paid off handsomely for Disney entities; while the film itself grossed $1 billion in box office receipts, it generated almost ***$10 billion*** in retail sales. *See* Sep. Stmt. ¶ 12.

liability for *advertising* infringing products, *see* 15 U.S.C. § 1125(a)(1), WDSMP and BVHE cannot escape liability simply because they do not sell the products.[7]

### 4. WDSMP and BVHE's cases are distinguishable.

Notwithstanding the above, Defendants assume a character's name is always expressive and always entitled to protection under *Rogers*. *See* Mot. 9:21–10:4. But they have not identified a single case holding as much.

In the cases cited by WDSMP and BVHE, the courts conducted little to no analyses as to whether the defendants used marks as source identifiers. *See JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 332 (S.D.N.Y. 2023) ("Plaintiff does not dispute that Defendants' alleged use of Plaintiff's marks does not amount to use 'as a mark' or for source designation[.]"); *McGillvary v. Netflix, Inc.*, 2024 WL 3588043, at *13 (C.D. Cal. July 30, 2024) (containing a single sentence of analysis that defendant did not use mark as source-identifier); *Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532, at *4 (S.D.N.Y. Mar. 31, 2024) (same); *Hara v. Netflix, Inc.*, 2023 WL 6812769, at *2 n.1 (C.D. Cal. Aug. 28, 2023) (same). And, critically, none of those cases involved merchandise featuring the same marks at issue. *See, e.g.*, *JTH Tax LLC*, 694 F. Supp. 3d at 333 ("Defendants are not alleged to have used the [mark] for any product they sell.") (cleaned up).[8] So, unlike here, there was no question as to whether the defendants used the marks in their films or shows to advertise related merchandise.

Additionally, *Hara* and *JTH Tax LLC* rely on bad law. Both cases cite favorably to *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875

---

[7] Relatedly, WDSMP's insistence that it did not create content featuring Lots-o'-Huggin' Bear is wrong. WDSMP created trailers (*i.e.*, advertisements) for *Toy Story 3*, and at least one of those trailers features Lots-o'-Huggin' Bear. *See* Sep. Stmt. ¶ 6.

[8] *Down to Earth Organics, LLC* references the defendant's promotion of a snack bar, but plaintiffs did not bring any cause of action related to the snack bars. 2024 WL 1376532, at *2 n.2.

F.3d 1192 (9th Cir. 2017), for the proposition that advertisements can qualify for protection under *Rogers*. *See Hara*, 2023 WL 6812769, at *3; *JTH Tax LLC*, 694 F. Supp. 3d 315, 330 n.2. But as even WDSMP and BVHE acknowledge, *Empire*'s "'extension of the reasoning of *Rogers* to hold that works protected under its test may be advertised and marketed by name' . . . *did not survive Jack Daniel's*." Mot. 8:1–3 (quoting *Empire*, 875 F.3d at 1196–97) (emphasis added).

> **B.     Alternatively, this Court Should Defer Ruling on Summary Judgment to Allow DLI to Conduct Additional Discovery Under Rule 56(d).**

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). If this Court is inclined to grant partial summary judgment, it should first allow DLI to obtain additional discovery on two new fronts.[9]

> *1.     DLI seeks deposition testimony from two declarants on whom WDSMP and BVHE rely but never disclosed.*

WDSMP and BVHE's Motion relies entirely on declarations from two individuals: Matthew J. Kalavsky and Jennifer A. Lourie. But Defendants did not previously disclose either individual, in violation of Rule 26(a). *See* Delgado Decl. ¶ 18. Accordingly, DLI had no opportunity to test Kalavsky and Lourie's assertions through depositions. *See id.* ¶ 19. Had DLI been able to do so, it would likely have elicited testimony undermining Kalavsky and Lourie's statements. *See id.* Indeed, even the existing record reveals inconsistencies. For example:

- Kalavsky states WDSMP did not "engage in any exploitation of the Picture or of Lots-o'-Huggin' Bear apart from its theatrical distribution

---

[9]   To be clear, DLI firmly believes the Motion ***already*** fails for the reasons identified herein.

of [*Toy Story 3*]." Kalavsky Decl. ¶ 2, ECF No. 398-2. However, WDSMP's Rule 30(b)(6) witness testified WDSMP created the trailers for *Toy Story 3*, at least one of which features Lots-o'-Huggin' Bear. *See* Sep. Stmt. ¶ 6.

- Lourie states BVHE did not sell "consumer products incorporating Lots-o'-Huggin' Bear or otherwise based on [*Toy Story 3*]." Lourie Decl. ¶ 3, ECF No. 398-3. But DVDs and Blu-rays are plainly consumer products. *See* Sep. Stmt. ¶ 15.

- Lourie states BVHE does not license characters. *See* Lourie Decl. ¶ 3. But BVHE's Rule 30(b)(6) witness was uncertain about this point. *See* Sep. Stmt. ¶ 14.

WDSMP and BVHE's Motion turns on the proposition that neither entity did anything other than distribute *Toy Story 3*. *See* Delgado Decl. ¶ 20. If DLI were to develop evidence creating triable facts that WDSMP and BVHE did more than simply distribute the film, then WDSMP and BVHE's Motion would plainly fail. *See id*. Accordingly, this Court should not grant summary judgment without first allowing DLI to depose Kalavsky and Lourie.[10] *Cf. Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 868 (7th Cir. 2019) (finding district court abused its discretion in denying Rule 56(d) request after defendants offered affidavits from witnesses "who, before the motion for summary judgment was filed, had not yet even been disclosed to plaintiff's counsel, let alone subject to depositions").

---

[10] Because DLI's inability to previously depose declarants is the result of Defendants' violation of Rule 26(a), Defendants should pay the reasonable costs and attorneys' fees for depositions. *See* Fed. R. Civ. P. 37(c)(1)(A) (providing that in addition to or in lieu of exclusionary sanctions, court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure"); *Cent. States Indus. Supply, Inc. v. McCullough*, 279 F. Supp. 2d 1005, 1025–26 (N.D. Iowa 2003).

### 2. DLI seeks discovery on the symbiotic relationship between Disney merchandise and films.

Kalavsky and Lourie also assert neither WDSMP nor BVHE derived revenue from consumer products featuring Lots-o'-Huggin' Bear. *See* Kalavsky Decl. ¶ 4, Lourie Decl. ¶ 4. But that too is suspect.

"[T]oys and movies are complementary." 5/1/24 Order 16:7 (citation omitted). Just as films can increase sales of related toys, so too can those toys increase interest and sales in related films. After spending the day playing with her Buzz Lightyear action figure or Lots-o'-Huggin' Bear toy, wouldn't a child be more likely to ask her parents to buy or stream the movie where she could see her ▇▇▇▇ on screen? Lest there be any doubt, Lots-o'-Huggin' Bear merchandise expressly identifies the *Toy Story 3* movie. *See* Sep. Stmt. ¶¶ 12, 20.

In *sua sponte* allowing Defendants to file a second motion for partial summary judgment, this Court observed: "[T]his is a complicated case with evolving issues, [and] it is possible that the Disney Defendants might not have foreseen the issue raised in the instant motion before it received the Court's May 1, 2024, order." 8/1/24 Order 6:10–12, ECF No. 393. That same reasoning should apply to DLI. If Defendants can raise new arguments that only came into focus after *Jack Daniel's*, then, if necessary, DLI should be able to adequately respond to those arguments through additional discovery. *See Punchbowl, Inc. v. AJ Press LLC*, 2024 WL 4005220, at *1 (C.D. Cal. Aug. 22, 2024) (describing previous grant of 75 days for plaintiff to conduct discovery on six issues newly relevant after remand following *Jack Daniel's*).

DLI proposes taking limited written discovery and depositions of persons knowledgeable about WDSMP and BVHE's finances and business and marketing strategies to attest to the symbiotic relationship between toys and movies, particularly *Toy Story 3*. *See* Delgado Decl. ¶¶ 22–24. If WDSMP and BVHE

ultimately realized profits attributable to infringing merchandise, then their Motion would fail. *See id*. ¶ 25.

### C. In any Event, *Rogers* Does Not Apply to This Case of Reverse Confusion.

WDSMP and BVHE's Motion should fail for an additional, independent reason. Applying *Rogers* "with care," as Justice Gorsuch implores, reveals it makes no sense in cases of reverse trademark confusion. 599 U.S. at 165 (Gorsuch, J., concurring).

Under *Rogers*, once a defendant makes a threshold showing the infringement was part of a solely expressive work, the burden shifts to the plaintiff to show the use of the infringing mark "has no artistic relevance to the underlying work whatsoever," or if it does have some artistic relevance, that it "explicitly misleads as to the source or the content of the work." 875 F.2d at 999. The "explicitly misleading" standard is "a high bar that requires the use to be an 'explicit indication,' 'overt claim,' or 'explicit misstatement' about the source of the work." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020) (cleaned up). That standard is essentially impossible for a plaintiff to satisfy in a case of reverse confusion.

In a typical case of reverse confusion, "neither junior nor senior user wishes to siphon off the other's goodwill." *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 934 (9th Cir. 2017) (cleaned up). In other words, the junior user in a reverse confusion case is ***not*** seeking to palm off the goodwill of the senior user, so there is no intent to confuse. The junior user would never make an "explicit" misstatement about the source of the work and, thus, will ***always prevail*** under *Rogers* in a reverse-confusion case.

This outcome is antithetical to the original purpose of *Rogers*. Courts adopted the *Rogers* test to strike an appropriate balance between "the public interest in avoiding consumer confusion" and the "public interest in free

1  expression." *Rogers*, 875 F.2d at 999. But the reflexive application of *Rogers* in a
2  reverse-confusion case strikes no balance at all. Instead, it transmogrifies a
3  "balancing test" into the ultimate "gotcha," creating an exception to trademark
4  infringement that swallows the rule. The Court should reject WDSMP and
5  BVHE's attempt to apply that result here.

6  **IV.   CONCLUSION**

7      For the foregoing reasons, DLI respectfully requests the Court deny
8  Disney's motion for partial summary judgment. Alternatively, it should delay
9  ruling on summary judgment pursuant to Rule 56(d) to allow DLI to take
10 additional discovery.

Respectfully submitted,

Dated: September 27, 2024      DTO LAW

By: */s/ William A. Delgado*
    William A. Delgado

Attorneys for Plaintiff
DIECE-LISA INDUSTRIES, INC.

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Diece-Lisa Industries, Inc., certifies that this brief contains 4,478 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 27, 2024          */s/ William A. Delgado*
                                                            William A. Delgado

20
PL.'S OPP'N TO PARTIAL MSJ & ALTERNATIVE RULE 56(d) REQUEST
273091