William A. Delgado (SBN 222666)
  wdelgado@dtolaw.com
Megan O'Neill (SBN 220147)
  moneill@dtolaw.com
DTO LAW
915 Wilshire Boulevard, Suite 1950
Los Angeles, California 90017
Telephone: (213) 335-6999
Facsimile: (213) 335-7802

Richard L. Schwartz (*pro hac vice*)
  rschwartz@whitakerchalk.com
WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0524
Facsimile: (817) 878-0501

Attorneys for Plaintiff
DIECE-LISA INDUSTRIES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIECE-LISA INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DISNEY ENTERPRISES, INC., et al.,<br><br>Defendants. | 2:20-CV-09147-TJH-JCx<br>Hon. Terry J. Hatter, Jr.<br><br>**PLAINTIFF DIECE-LISA INDUSTRIES, INC.'S SEPARATE STATEMENT OF GENUINE DISPUTES AND ADDITIONAL FACTS**<br><br>Courtroom: 9C<br>Date: Oct. 28, 2024<br>Time: UNDER SUBMISSION |

| Undisputed Fact | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. *Toy Story 3* was released theatrically in June 2010 and on home video later that same year.<br><br>*Evidence:* Dkt. No. 332-6 (Deposition of Andrew Stanton) at 12:25-13:3; Dkt. No. 332-23 (*Toy Story 3* DVD). | 1. Undisputed. |
| 2. The principal antagonist in *Toy Story 3* is a pink bear named "Lots-o'-Huggin' Bear," or "Lotso" for short.<br><br>*Evidence:* Dkt. No. 332-23 (*Toy Story 3* DVD). | 2. Undisputed. |
| 3. Lotso's full name is spoken just once, around the 22-minute mark, in the movie's entire 103-minute run time.<br><br>*Evidence:* Dkt. No. 332-23 (*Toy Story 3* DVD). | 3. Undisputed. |
| 4. Walt Disney Studios Motion Pictures ("WDSMP") is a division of non-party ABC, Inc.<br><br>*Evidence:* Declaration of Matthew J. Kalavsky ("Kalavsky Decl.") ¶ 2. | 4. Undisputed. |
| 5. WDSMP engaged in the theatrical distribution of *Toy Story 3*.<br><br>*Evidence:* Kalavsky Decl. ¶ 2. | 5. Undisputed. |

| | |
|---|---|
| 6. WDSMP did not engage in any exploitation of "Lots-o'-Huggin' Bear" apart from its theatrical distribution of *Toy Story 3*.<br><br>*Evidence:* Kalavsky Decl. ¶ 2. | 6. Disputed.<br><br>WDSMP created the trailers for *Toy Story 3*, at least one of which features Lots-o'-Huggin' Bear.<br><br>*Evidence:*<br>• Ex. F[1] (T. Wilson Dep. Tr.), at 42:2 ("We create the trailers.");<br>• Delgado Decl. ¶ 12 (link to trailer with Lots-o'-Huggin' Bear).<br><br>*See also* Pl.'s Evid. Objs.; Pl.'s Opp'n Section III.B ("Rule 56(d) Request"). |

---

[1] Unless otherwise specified, Exhibit references are to the Declaration of William A. Delgado, filed herewith.

| | |
|---|---|
| 7. WDSMP did not sell or have any involvement whatsoever with the conception, design, development, licensing, distribution, or marketing for sale of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Kalavsky Decl. ¶ 3. | 7. Disputed.<br><br>WDSMP licensed the rights to distribute *Toy Story 3* from Disney Enterprises, Inc. ("DEI"). The *Toy Story 3* animated movie is a consumer product and a marketing vehicle for other products incorporating Lots-o'-Huggin' Bear. WDSMP entered into agreements with third parties to sell that product to consumers.<br><br>*Evidence:*<br>• SUF No. 5;<br>• ECF No. 334-6 (B. Wilson Dep. Tr.), at 32:5–8, 32:20–24 (confirming "DEI is . . . the source where all those rights, that have been acquired from PIXAR, become licensed downstream," and agreeing "to the extent that there's other Disney entities that are licensed to use 'Toy Story 3' rights, all of those rights would flow from DEI to that entity");<br>• Ex. C (Gilliam Dep. Tr.), at 40:1–6 (underscoring importance of releasing film and toy products simultaneously);<br>• Ex. E (B. Wilson Dep. Tr.) at 84:17–85:6 (agreeing animated film could increase sales of toys involving related characters);<br>• Ex. F (T. Wilson Dep. Tr.), at 20:3–9 (outlining financial terms of agreements between WDSMP and theatrical exhibitors);<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office and $10 billion in retail sales);<br>• ECF No. 334-52 ("How Disney Milks Its Hits for Profits Ever After"). |

| | |
|---|---|
| | *See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |
| 8.  WDSMP did not supply any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear for sale to any person or entity.<br><br>*Evidence:* Kalavsky Decl. ¶ 3. | 8.  Disputed.<br><br>WDSMP engaged in the theatrical distribution of *Toy Story 3*, which is a consumer product incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:*<br>• SUF No. 5;<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office sales).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |
| 9.  WDSMP did not exercise ownership or control over any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Kalavsky Decl. ¶ 3. | 9.  Disputed.<br><br>WDSMP engaged in the theatrical distribution of *Toy Story 3*, which is a consumer product incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:*<br>• SUF No. 5;<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office sales).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

| | |
|---|---|
| 10. WDSMP did not have a partnership with any person or entity with respect to sales of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Kalavsky Decl. ¶ 3. | 10. Disputed<br><br>WDSMP engaged in the theatrical distribution of *Toy Story 3*, which is a consumer product incorporating Lots-o'-Huggin' Bear. WDSMP entered into agreements with third parties to sell that product to consumers.<br><br>*Evidence:*<br>• SUF No. 5;<br>• Ex. F (T. Wilson Dep. Tr.), at 20:3–9 (outlining financial terms of agreements between WDSMP and theatrical exhibitors);<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office sales).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

| | |
|---|---|
| 11. WDSMP did not have the authority to bind any person or entity in transactions with third parties involving any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Kalavsky Decl. ¶ 3. | 11. Disputed<br><br>WDSMP engaged in the theatrical distribution of *Toy Story 3*, which is a consumer product incorporating Lots-o'-Huggin' Bear. WDSMP entered into agreements with third parties to sell that product to consumers.<br><br>*Evidence:*<br>• SUF No. 5;<br>• Ex. F (T. Wilson Dep. Tr.), at 20:3–9 (outlining financial terms of agreements between WDSMP and exhibitors);<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office sales).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

| | |
|---|---|
| 12.  WDSMP did not derive any revenues from sales of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Kalavsky Decl. ¶ 4. | 12.  Disputed.<br><br>WDSMP engaged in the theatrical distribution of *Toy Story 3*, which is itself a consumer product.  Furthermore, WDSMP likely benefitted financially from sales of Lots-o'-Huggin' Bear merchandise, which boosted ticket sales.<br><br>*Evidence:*<ul><li>SUF No. 5;</li><li>ECF No. 334-55 (Online Disney Store listings for Lots-o'-Huggin' Bear identifying *Toy Story 3*);</li><li>Ex. C (Gilliam Dep. Tr.), at 40:1–6 (underscoring importance of releasing film and toy products simultaneously);</li><li>Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office sales).</li></ul>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |
| 13.  Buena Vista Home Entertainment, Inc. ("BVHE") engaged in the home video distribution of *Toy Story 3* on DVD and Blu-ray.<br><br>*Evidence:* Declaration of Jennifer A. Lourie ("Lourie Decl.") ¶ 2. | 13.  Undisputed. |

| | |
|---|---|
| 14.  BVHE did not engage in any exploitation of "Lots-o'-Huggin' Bear" apart from its home entertainment distribution of *Toy Story 3*.<br><br>*Evidence:* Lourie Decl. ¶ 2. | 14.  Disputed.<br><br>BVHE marketed *Toy Story 3* DVDs and Blu-rays.  BVHE's corporate representative was unsure whether BVHE licenses others to use Disney characters.<br><br>*Evidence:*<br>- Ex. B (Elias Dep. Tr.), at 24:5–14 (confirming BVHE marketed Toy Story 3 DVDs and Blu-rays);<br>- Ex. D (McCollum Dep. Tr.), at 18:12–15 (Q. "Do you know whether or not Buena Vista Home Entertainment licenses others to use Disney characters and trademarks?" A. "I don't know.").<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

| | |
|---|---|
| 15. BVHE did not sell or have any involvement whatsoever with the conception, design, development, licensing, distribution, or marketing for sale of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Lourie Decl. ¶ 3. | 15. Disputed.<br><br>BVHE licensed the rights to distribute *Toy Story 3* from Disney Enterprises, Inc. ("DEI"). *Toy Story 3* DVDs and Blu-rays are consumer products and a marketing vehicle for other consumer products incorporating Lots-o'-Huggin' Bear. BVHE distributed those products to retailers to sell to consumers.<br><br>*Evidence:*<br>• SUF No. 13;<br>• Ex. B (Elias Dep. Tr.), at 65:8–14 ("Also, oftentimes these titles are used to drive traffic into the store . . . in the hopes that consumers will put more items in their market basket.");<br>• Ex. C (Gilliam Dep. Tr.), at 40:1–6 (underscoring importance of releasing film and toy products simultaneously);<br>• Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores);<br>• Ex. E (B. Wilson Dep. Tr.), at 45:3–5 (Q. "And how does Buena Vista Home Entertainment get those rights to license downstream?" A. "I believe from DEI.");<br>• *id.* at 84:17–85:6 (agreeing animated film could increase sales of toys involving related characters);<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office and $10 billion in retail sales);<br>• ECF No. 334-52 ("How Disney Milks Its Hits for Profits Ever After").<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

| | |
|---|---|
| 16.  BVHE did not supply any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear for sale to any person or entity.<br><br>*Evidence:* Lourie Decl. ¶ 3. | 16.  Disputed.<br><br>BVHE engaged in the distribution of *Toy Story 3* on DVD and Blu-ray, which are consumer products.<br><br>*Evidence:*<br>- SUF No. 13;<br>- Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |
| 17.  BVHE did not exercise ownership or control over any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Lourie Decl. ¶ 3. | 17.  Disputed.<br><br>BVHE engaged in the distribution of *Toy Story 3* on DVD and Blu-ray, which are consumer products.<br><br>*Evidence:*<br>- SUF No. 13;<br>- Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

| | |
|---|---|
| 18. BVHE did not have a partnership with any person or entity with respect to sales of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Lourie Decl. ¶ 3. | 18. Disputed.<br><br>BVHE licensed the rights to distribute *Toy Story 3* from Disney Enterprises, Inc. ("DEI"). *Toy Story 3* DVDs and Blu-rays are consumer products and a marketing vehicle for other consumer products incorporating Lots-o'-Huggin' Bear. BVHE distributed those products to retailers to sell to consumers.<br><br>*Evidence:*<br>• SUF No. 13;<br>• Ex. B (Elias Dep. Tr.), at 65:8–14 ("Also, oftentimes these titles are used to drive traffic into the store . . . in the hopes that consumers will put more items in their market basket.");<br>• *id.* at 20:1–7 (explaining online retailers account to BVHE for each download);<br>• Ex. C (Gilliam Dep. Tr.), at 40:1–6 (underscoring importance of releasing film and toy products simultaneously);<br>• Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores);<br>• Ex. E (B. Wilson Dep. Tr.), at 45:3–5 (Q. "And how does Buena Vista Home Entertainment get those rights to license downstream?" A. "I believe from DEI.");<br>• *id.* at 84:17–85:6 (agreeing animated film could increase sales of toys involving related characters);<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office and $10 billion in retail sales);<br>• ECF No. 334-52 ("How Disney Milks Its Hits for Profits Ever After"). |

| | |
|---|---|
| | *See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |
| 19. BVHE did not have the authority to bind any person or entity in transactions with third parties involving any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Lourie Decl. ¶ 3. | 19. Disputed.<br><br>BVHE engaged in the distribution of *Toy Story 3* on DVD and Blu-ray, which are consumer products. BVHE contracted with a third party to physically create those products. BVHE distributed those products to retailers to sell to consumers.<br><br>*Evidence:*<br>• SUF No. 13;<br>• Ex. B (Elias Dep. Tr.), at 20:1–7 (explaining online retailers account to BVHE for each download);<br>• *id.* at 20:14-25 (explaining contractor replicates DVDs and Blu-rays for BVHE);<br>• Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

| | |
|---|---|
| 20. BVHE did not derive any revenues from sales of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Lourie Decl. ¶ 4. | 20. Disputed.<br><br>BVHE engaged in the home video distribution of *Toy Story 3* on DVD and Blu-ray, which are consumer products. BVHE likely benefitted financially from sales of Lots-o'-Huggin' Bear merchandise, which boosted ticket sales.<br><br>*Evidence:*<br>• SUF No. 13;<br>• ECF No. 334-55 (Online Disney Store listings for Lots-o'-Huggin' Bear identifying *Toy Story 3*);<br>• Ex. C (Gilliam Dep. Tr.), at 40:1–6 (underscoring importance of releasing film and toy products simultaneously);<br>• Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

### PLAINTIFF'S ADDITIONAL FACTS

| Fact | Evidence |
|---|---|
| 21. Diece-Lisa Industries, Inc. ("DLI") is a corporation solely owned by Randice-Lisa Altschul. | Ex. A (Altschul Dep. Tr.), at 13:14–14:3; ECF No. 334-9 (DLI Certificate of Incorporation). |
| 22. DLI is a toy and game company that principally licenses unique and innovative concepts to third parties who, in turn, manufacture and sell licensed products to the ultimate consumer. | ECF No. 333-2 (Altschul Decl.) ¶ 2. |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5 | 23. In the early-to-mid 1990's, DLI conceived of a novel idea for a wearable stuffed animal having sleeve-like openings in which the user could place their arms. | Ex. A (Altschul Dep. Tr.), at 227:18–228:10; ECF No. 334-35 (SNUGGLER'S concept). |
| 6<br>7<br>8 | 24. DLI obtained a federally registered trademark for LOTS OF HUGS first in 1997 and then again in 2008. | ECF No. 325-3 (Trademark Principal Register, 1997); ECF No. 325-2 (2008) |
| 9<br>10<br>11<br>12<br>13 | 25. Disney's character and character-related products have cost DLI opportunities to license its LOTS OF HUGS mark because of fear of consumer confusion. | Ex. A (Altschul Dep. Tr.), at 126:20-127:1, 270:6–272:5; ECF No. 334-8 (Sutton Dep. Tr.), at 24:17–25:16. |
| 14<br>15<br>16<br>17<br>18 | 26. The characters in Toy Story 3 are "inherently distinctive and serve to identify DEI and its licensees as the source of products bearing [those] Characters." | Request for Judicial Notice ("RJN"), Ex. I (*DEI v. Lancaster* Compl.) ¶ 5(d); RJN, Ex. J (Reed Decl.) ¶ 2. |
| 19<br>20<br>21<br>22<br>23 | 27. Pixar Talking Pictures ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in *Toy Story 3*. | Ex. G. |
| 24<br>25<br>26 | 28. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Ex. G, at PIX 154, PIX 157. |

| | |
|---|---|
| 29. Disney entities have obtained trademarks for other characters, including Tinker Bell, Miss Piggy, and Lighting McQueen. | RJN, Ex. K. |

Dated: September 27, 2024

DTO LAW

By: */s/ William A. Delgado*
    William A. Delgado

Attorneys for Plaintiff
DIECE-LISA INDUSTRIES, INC.