| | |
|---|---|
| 1 | Robert N. Klieger, State Bar No. 192962 |
| 2 | rklieger@hueston.com |
| | HUESTON HENNIGAN LLP |
| 3 | 523 West 6th Street, Suite 400 |
| | Los Angeles, California 90014 |
| 4 | Telephone: (213) 788-4340 |
| | Facsimile: (888) 775-0898 |
| 5 | |
| 6 | Attorneys for Defendants |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIECE-LISA INDUSTRIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DISNEY ENTERPRISES, INC., et al., <br><br> Defendants. | Case No. 2:20-CV-09147-TJH-JCx <br><br> **DEFENDANTS WALT DISNEY STUDIOS MOTION PICTURES AND BUENA VISTA HOME ENTERTAINMENT, INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> *[Declaration of Robert N. Klieger, Response to Separate Statement of Genuine Disputes, and Response to Evidentiary Objections filed concurrently herewith]* <br><br> Judge: Hon. Terry J. Hatter Jr. <br> Courtroom: 9C <br> Date: October 28, 2024 <br> Time: UNDER SUBMISSION |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................1

II. ARGUMENT ..................................................................................................2

    A. The Character Name "Lots-O'-Huggin' Bear" Does Not Identify The Source Of The *Toy Story 3* Motion Picture ..........................2

    B. *Toy Story 3* Is Not A "Commercial" And Is Entitled To Full First Amendment Protection ................................................................6

    C. The *Rogers* Test Applies In Cases Of Both Forward And Reverse Confusion ................................................................................8

    D. No Good Cause Exists For Additional Discovery Under Rule 56(d) ..................................................................................................8

III. CONCLUSION .............................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aljamal v. Parsons Corp.*,
  2017 WL 11634507 (C.D. Cal. Aug. 4, 2017) ...................................................... 9

*Caiz v. Roberts*,
  382 F. Supp. 3d 942 (C.D. Cal. Apr. 17, 2019) .................................................... 8

*City of Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993) ............................................................................................ 6

*Del Media W., Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) ............................................................................... 7

*Haas Automation, Inc. v. Steiner*,
  2024 WL 4440914 (C.D. Cal. Sept. 25, 2024) .................................................... 3

*Harris v. Quinn*,
  573 U.S. 616 (2014) ............................................................................................ 6

*Hoffman v. Capital Cities/ABC, Inc.*,
  255 F.3d 1180 (9th Cir. 2001) ............................................................................. 7

*HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*,
  2023 WL 6880341 (D. Del. Oct. 18, 2023) ......................................................... 3

*Hormel Foods Corp. v. Jim Henson Productions, Inc.*,
  73 F.3d 497 (2d Cir. 1996) .................................................................................. 4

*In re Caserta*,
  46 U.S.P.Q.2d 1088 (T.T.A.B. 1998) .................................................................. 4

*In re Scholastic Inc.*,
  223 U.S.P.Q. 431 (T.T.A.B. 1984) ...................................................................... 4

*Jack Daniel's Props., Inc. v. VIP Products LLC*,
  599 U.S. 140 (2023) .................................................................................... *passim*

TABLE OF AUTHORITIES (cont.)

Page(s)

*Joseph Burstyn, Inc. v. Wilson*,
   343 U.S. 495 (1952) ...................................................................................... 6

*Mattel Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ..................................................................... 6, 8

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
   487 U.S. 781 (1988) ...................................................................................... 7

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ......................................................................... 1

**Rules**

Fed. R. Civ. P. 30 ............................................................................................. 9, 10

Fed. R. Civ. P. 56 ............................................................................................ *passim*

**Other**

Trademark Manual of Examining Procedure (2022) § 1202.10 ............................ 4

## I. INTRODUCTION

The fundamental inquiry on this motion is whether the character name "Lots-o'-Huggin' Bear," spoken for the first and only time more than 20 minutes into *Toy Story 3*, was used as a trademark to identify the source of the movie. The efforts by Plaintiff Diece-Lisa Industries, Inc. ("Diece-Lisa") to create a triable issue on this question are in vain. No reasonable jury could find that the character's name was used to identify the source of *Toy Story 3*, and summary judgment should therefore be granted for the movie distribution defendants under *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989).

The Supreme Court's ruling in *Jack Daniel's* was a narrow one, holding only that the *Rogers* test does not apply when a defendant uses the allegedly infringing mark *as a trademark*, to designate the source of the product at issue. *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140, 153 (2023). The only "product" at issue on this motion is *Toy Story 3*, the ACADEMY AWARD® winning motion picture distributed theatrically by Walt Disney Studios Motion Pictures ("WDSMP") and on home video by Buena Vista Home Entertainment, Inc. ("BVHE"). WDSMP and BVHE's only use of the Lots-o'-Huggin' Bear name was a single utterance of the name at the 22-minute mark of the movie, when the never-before-seen antagonist introduces himself as "Lots-o'-Huggin' Bear." As a matter of law, and logic, that was not a trademark use and therefore falls outside of *Jack Daniel's*.

Diece-Lisa attempts to avoid this result by arguing that *Toy Story 3* is commercial speech—specifically, "an advertisement for character-related merchandise" (Dkt. No. 400 at 13)—and therefore does not qualify as protected First Amendment expression for purposes of *Rogers*. That is a frivolous argument that is foreclosed by more than 75 years of Supreme Court jurisprudence, which makes clear that motion pictures, television programs, and other quintessential expressive

works are entitled to full First Amendment protection irrespective of any profit motive, and regardless of whether they may help drive sales of commercial products.

This Court should also reject Diece-Lisa's Rule 56(d) request to defer ruling on this motion to afford Diece-Lisa the opportunity to take additional written and deposition discovery. Diece-Lisa has already been afforded the opportunity to take, and has actually taken, comprehensive discovery regarding WDSMP and BVHE's exploitation of *Toy Story 3* and Lots-o'-Huggin' Bear. The only other topic on which Diece-Lisa seeks discovery, regarding "the symbiotic relationship between toys and movies" (Dkt. No. 401 at 17), is incapable of creating a triable issue as to whether WDSMP and BVHE used the Lots-o'-Huggin' Bear name as a trademark, to identify the source of *Toy Story 3*.

By disposing of Diece-Lisa's claims based on WDSMP and BVHE's purely expressive use of the Lots-o'-Huggin' Bear name within the *Toy Story 3* motion picture, which accounts for nearly two-thirds of Diece-Lisa's claimed damages, this Court will promote an early resolution of the case and, in the event a resolution cannot be achieved, will materially streamline the issues for trial.

## II.  ARGUMENT

### A.  The Character Name "Lots-O'-Huggin' Bear" Does Not Identify The Source Of The *Toy Story 3* Motion Picture

This motion turns on the answer to a single question: Could a reasonable jury find that the name Lots-o'-Huggin' Bear was used in *Toy Story 3* as a trademark to inform audiences of the movie's source? The answer is no.

In *Jack Daniel's*, there was no dispute between the parties that the defendant was using the allegedly infringing marks as trademarks, to identify the source of its dog toys, and *Rogers* therefore did not apply. *Jack Daniel's*, 599 U.S. at 160. The Supreme Court's ruling in *Jack Daniel's* did not disturb the continuing application of *Rogers* where a mark is used not to identify source, but instead for expressive

purposes. Diece-Lisa argues that there are triable questions of fact[1] as to whether WDSMP and BVHE used the Lots-o'-Huggin' Bear name to identify the source of *Toy Story 3*. Diece-Lisa is wrong. There are no material factual disputes, and the issue of source-identification is instead properly resolved as a matter of law.

It is undisputed that the *only* use of the Lots-o'-Huggin' Bear name by WDSMP and BVHE was a single utterance of the name in the *Toy Story 3* movie that they distributed. Specifically, the name is spoken once in the movie's 103-minute run time, at the 22-minute mark, when the principal antagonist first appears and introduces himself as "Lots-o'-Huggin' Bear." Dkt. No. 332-23 (*Toy Story 3* DVD).[2] Diece-Lisa has not adduced any evidence that moviegoers perceived the name of that character, who was introduced for the very first time in *Toy Story 3* and was previously unknown to audiences, as identifying the source of the movie. Rather, the source of the movie was explicitly identified in the very first minute of the film, as Walt Disney Pictures and Pixar Animation Studios. *Id.* It is wholly implausible that a viewer would perceive the name Lots-o'-Huggin' Bear, spoken for the first and only time more than 20 minutes into the movie, to identify the source of the movie, or as anything other than the name of a character—specifically, the character who introduces himself by stating, "I'm Lots-o'-Huggin' Bear." *See Haas Automation, Inc. v. Steiner*, 2024 WL 4440914, at *6 (C.D. Cal. Sept. 25, 2024) (granting motion to dismiss under *Rogers* where marks plainly were "not used to tell the consumer who published the book or the source of the book").

---

[1] Courts have not resolved whether the determination of whether a mark is used to identify source is a question of fact, a question of law, or a mixed question of fact and law. *See HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*, 2023 WL 6880341, at *4 (D. Del. Oct. 18, 2023). However, Diece-Lisa has failed to create a triable issue regardless of how that question is answered.

[2] Diece-Lisa suggests that the name was also spoken in a trailer for *Toy Story 3* that was prepared by WDSMP. It was not. *See* Dkt. No. 403-3 at ¶ 12 (link to *Toy Story 3* trailer). Although the antagonist character appears briefly in the trailer, the allegedly infringing name is not spoken. *Id.*

Diece-Lisa does not identify a single case, from any jurisdiction, in which the name of a character in a movie has been found to identify the source of the movie. To the contrary, both case law and the USPTO's own procedures for registering marks recognize that "[m]arks that merely identify a character in a creative work" do not function as trademarks. Trademark Manual of Examining Procedure (2022) § 1202.10; *see In re Caserta*, 46 U.S.P.Q.2d 1088, 1090-91 (T.T.A.B. 1998) (holding character name did not function as a mark despite appearing on the cover and every page of a children's book); *In re Scholastic Inc.*, 223 U.S.P.Q. 431, 431 (T.T.A.B. 1984) (holding that "The Littles" used in the title of children's books did not function as a mark but instead identified the main characters in the books).

The Second Circuit's decision in *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497 (2d Cir. 1996), is illustrative. The defendant in that case named a wild boar character in its *Muppet Treasure Island* movie "Spa'am," which Hormel alleged diluted its trademark in the luncheon meat SPAM. *Id.* at 500-01. In rejecting that argument, the Second Circuit recognized that "Henson is not using the name 'Spa'am' as a product brand name"; "[r]ather, Spa'am is a character in products branded with Henson's own trademark 'Muppet Treasure Island.'" *Id.* at 506. In the instant case, as in *Hormel*, Lots-o'-Huggin' Bear is used not to identify the source of *Toy Story 3*, but instead as the name of a character in the movie.

Diece-Lisa identifies several famous animated or puppet characters, including Tinker Bell and Miss Piggy, that have been registered as trademarks, and argues that character names must therefore serve as source-identifiers. Dkt. No. 400 at 11; Dkt. No. 401-3. In every instance, however, the character names identified by Diece-Lisa were registered as trademarks *for consumer products*, such as bath linens, blankets, dolls, t-shirts, and sandals. *Id.* WDSMP and BVHE do not sell consumer products. Dkt. No. 398-2 ¶ 3; Dkt. No. 398-3 ¶ 3. Diece-Lisa has not identified a single instance in which a character name has been registered as a trademark for a movie in which the character appears. Nor has Diece-Lisa identified any federal trademark

registrations for Lots-o'-Huggin' Bear for *any* goods or services; indeed, there are none.

Diece-Lisa also identifies a 2012 lawsuit in which Disney Enterprises, Inc. sued a costume manufacturer for copyright and trademark infringement based on the manufacture and sale of unauthorized costumes based on "world-famous characters" such as Mickey Mouse and Winnie the Pooh. Dt. No. 400 at 10; Dkt. No. 401-1. As with the trademark registrations, that lawsuit establishes only that character names may be used as source-identifiers for costumes and other consumer products. That is precisely why this Court is allowing Diece-Lisa's claims against the consumer products defendants to proceed to trial. That lawsuit provides no support for Diece-Lisa's contention that the Lots-o'-Huggin' Bear name was used as a trademark in *Toy Story 3* itself, to identify the source of the movie.

Finally, Diece-Lisa argues that WDSMP and BVHE's use of the Lots-o'-Huggin' Bear name to identify the source of *Toy Story 3* may be inferred from the fact that Pixar Animation Studios, which produced *Toy Story 3*, obtained authorizations from Mattel, Hasbro, and other third-party toy companies to have their toys, such a Barbie, appear as characters in the movie. Dkt. No. 400 at 11; Dkt. No. 403-4. Far from supporting Diece-Lisa's argument, this actually undercuts its contention that character names in *Toy Story 3* were used to identify the source of the movie. None of Mattel, Hasbro, or those other toy companies were the source of *Toy Story 3*, and their toys—like Lots-o'-Huggin' Bear—were instead part of the expressive fabric of the movie.

Importantly, in order to grant this motion, this Court need not hold that a character name can *never* be used to identify the source of a movie in which the character appears. Instead, this Court need only hold that no reasonable jury could find that Lots-o'-Huggin' Bear, spoken just once as the name of a character who was introduced for the very first time in *Toy Story 3*, was used by WDSMP and BVHE as a trademark to identify the source of the movie. No reasonable jury could so find,

and this Court should therefore grant summary judgment for WDSMP and BVHE under *Rogers*.

### B. *Toy Story 3* Is Not A "Commercial" And Is Entitled To Full First Amendment Protection

Recognizing that this Court has already found that Diece-Lisa's claims fail under *Rogers*, Diece-Lisa attempts to circumvent the *Rogers* test by arguing that the ACADEMY AWARD® winning *Toy Story 3* was actually a commercial—specifically, "an advertisement for character-related merchandise"—and therefore is not entitled to the full protections of the First Amendment. Dkt. No. 400 at 6, 13. This argument is foreclosed by the Supreme Court's First Amendment jurisprudence. The fact that WDSMP and BVHE distributed *Toy Story 3* for a profit, or that the movie may have contributed to sales of toys by the consumer product defendants, does not transform the movie itself into commercial speech or otherwise deprive it of full First Amendment protection.

The Supreme Court held nearly 75 years ago that motion pictures, like other quintessential expressive works, are protected expression notwithstanding the fact that they are distributed for a profit. *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952). In the decades since, the Supreme Court has repeatedly reaffirmed that motion pictures, theatrical productions, television and radio programming, live entertainment, music, books, paintings, and other works of art or commentary are protected forms of speech, regardless of any profit motive. *E.g.*, *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 420-21 (1993). Nor does the fact that a motion picture, television program, or other quintessential expressive work may help drive sales of consumer products lessen its First Amendment protection. Commercial speech is speech that *does nothing more* than propose a commercial transaction. *See Harris v. Quinn*, 573 U.S. 616, 648 (2014). "If speech is not 'purely commercial'—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection." *Mattel Inc. v. MCA Records, Inc.*,

296 F.3d 894, 906 (9th Cir. 2002). Even the inclusion of explicitly commercial material in an expressive work has no impact on its protected status. *See Del Media W., Inc. v. City of Seattle*, 696 F.3d 952, 963 (9th Cir. 2012).

The Ninth Circuit's decision in *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001), is particularly instructive. In that case, a magazine published an article featuring digitally recreated images from certain films that were modified so that the actors appeared to be wearing designers' spring fashions. *Id.* at 1183. For example, a still of Dustin Hoffman from the movie *Tootsie* was altered to make it look like he was wearing a Richard Tyler evening gown and Ralph Lauren heels. *Id.* The trial court ruled in favor of Hoffman on his Lanham Act and related claims, rejecting the magazine's defense that its use of the photograph was protected by the First Amendment. *Id.*

The Ninth Circuit reversed the trial court's decision, holding that the First Amendment barred Hoffman's claims. In so ruling, the Ninth Circuit recognized that the magazine and article contained many "commercial aspects." *Id.* at 1185. For example, the Hoffman image "was identified as wearing Ralph Lauren shoes" and a Ralph Lauren advertisement appeared elsewhere in the magazine. *Id.* The magazine also included a "Shopper's Guide," "which provided stores and prices for the shoes and gown" featured in the Hoffman image. *Id.* However, the Ninth Circuit held that even overtly commercial aspects like those did not make the work "commercial speech" for purposes of the First Amendment. *Id.* Rather, the article contained various "expressive elements," including "fashion photography, humor, and visual and verbal editorial content," that were "inextricably intertwined" with the commercial aspects and therefore rendered it "fully protected" under the First Amendment. *Id.*; *see Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988) (speech is fully protected under the First Amendment where expressive and commercial aspects "are inextricably intertwined").

*Hoffman* and its progeny foreclose Diece-Lisa's commercial speech argument here. The ACADEMY AWARD® winning *Toy Story 3* movie plainly does "more than propose a commercial transaction," and it unquestionably "includes protected expression." *MCA Records*, 296 F.3d at 906. Indeed, were Diece-Lisa's argument correct, most every motion picture and television program would lose First Amendment protection as a result of sales of posters, t-shirts, toys, and other consumer products based thereon. That is not the law, and *Toy Story 3* is "entitled to full First Amendment protection" for purposes of *Rogers*. *Id.*

### C. The *Rogers* Test Applies In Cases Of Both Forward And Reverse Confusion

Diece-Lisa next argues that the Court should decline to apply *Rogers* because Diece-Lisa alleges reverse confusion. Dkt. No. 400 at 18-19. However, as this Court has previously held, "[t]he Ninth Circuit did not condition its adoption of *Rogers* on the type of trademark action," and "other district courts, including one in the Central District of California have held that *Rogers* applies without modification in reverse confusion cases." Dkt. No. 357 at 5 (citing *Caiz v. Roberts*, 382 F. Supp. 3d 942 (C.D. Cal. Apr. 17, 2019)). Moreover, as before, "Diece-Lisa [has] failed to cite any precedent … that would allow this Court to deviate from *Rogers*." *Id.* The Supreme Court's holding in *Jack Daniel's* did nothing to limit *Rogers* to cases of forward confusion, and there is no basis to exempt this case from *Rogers*.

### D. No Good Cause Exists For Additional Discovery Under Rule 56(d)

Finally, Diece-Lisa requests that the Court defer consideration of WDSMP and BVHE's motion under Rule 56(d) and allow Diece-Lisa to take additional discovery in the form of (1) depositions of declarants who were not previously disclosed regarding WDSMP and BVHE's exploitation of *Toy Story 3*, and (2) written discovery and depositions regarding "the symbiotic relationship between Disney merchandise and films." Dkt. No. 400 at 15-18. Because Diece-Lisa has already deposed both WDSMP and BVHE with respect to their exploitation of *Toy Story 3*,

and the other requested discovery would not reasonably be expected to create a genuine issue of material fact capable of defeating summary judgment, Diece-Lisa's Rule 56(d) request should be denied. *See Aljamal v. Parsons Corp.*, 2017 WL 11634507, at *3-4 (C.D. Cal. Aug. 4, 2017) (applying former Rule 56(f)).

The crux of Diece-Lisa's argument is that it has been prejudiced by WDSMP and BVHE's failure to previously disclose Matthew J. Kalavsky and Jennifer A. Lourie, the corporate representatives who submitted declarations in support of the instant motion attesting to the fact that WDSMP and BVHE's only exploitation of *Toy Story 3* was their theatrical and home video distribution of the movie, respectively. According to Diece-Lisa, it "had no opportunity to test Kalavsky and Lourie's assertions through depositions." Dkt. No. 400 at 15. This argument is disingenuous for at least two independent reasons.

First, the limited role that WDSMP and BVHE played in connection with *Toy Story 3* was disclosed *more than nine years ago* and has already been the subject of comprehensive discovery, including Rule 30(b)(6) depositions of both WDSMP and BVHE. On March 18, 2015, Defendants filed declarations from Ken Caldwell (Senior Vice President and General Sales Manager of WDSMP) and Susan McLain (Senior Vice President of Product Marketing & Distribution of BVHE) attesting to WDSMP and BVHE's theatrical and home video distribution, respectively, of *Toy Story 3*. Dkt. No. 165-8; Dkt. No. 165-12. Diece-Lisa thereafter noticed and took Rule 30(b)(6) depositions of WDSMP and BVHE on, among other topics, "[d]istribution of the Disney movie *Toy Story 3* … to theaters for viewer entertainment," "[d]istribution, marketing, and selling Disney DVD's and Blu-Rays of any Disney movies or other films which make any use of or contain the character 'Lots-o'-Huggin'" … including, but not by way of limitation, Disney's *Toy Story 3* movie," and "gross revenue, income and profits from … use of [*Toy Story 3*'s] Lotso character." Declaration of Robert N. Klieger ("Klieger Decl.") ¶¶ 4-5 & Exs. A, B. Because this case has been pending for more than a decade and Mr. Caldwell and

Ms. McLain are no longer employed by WDSMP and BVHE, respectively, WDSMP and BVHE submitted summary judgment declarations from current employees. *Id.* ¶¶ 2-3. However, the substance of their declarations was long ago disclosed and has already been the subject of extensive discovery.[3]

Second, Diece-Lisa's operative Fifth Amended Complaint itself seeks to hold WDSMP liable *solely* for use of Lots-o'-Huggin' Bear "in the *Toy Story 3* movie, based on theater receipts received therefrom," and to hold BVHE liable *solely* for use of Lots-o'-Huggin' Bear "in the *Toy Story 3* DVDs and Blu-Rays, based upon sales thereof." Dkt. No. 325 at 26. Diece-Lisa's unsupported speculation that WDSMP and BVHE may have used the allegedly infringing Lots-o'-Huggin' Bear name in connection with *more* than their distribution of *Toy Story 3* (and they did not) is therefore irrelevant for purposes of its claims in this action and incapable of creating a triable issue.

In addition to seeking to depose Kalavsky and Lourie, Diece-Lisa also argues that it should be afforded the opportunity to take written and deposition discovery "regarding the symbiotic relationship between toys and movies, particularly *Toy Story 3*." Dkt. No. 400 at 17-18. Diece-Lisa, however, fails to explain *either* why it was unable to take that discovery during the more than ten years this case has been pending or, more importantly, how any facts regarding "the symbiotic relationship

---

[3] Contrary to Diece-Lisa's suggestion, there are no material "inconsistencies" between the Kalavsky and Lourie declarations and that earlier discovery. Dkt. No. 400 at 15-16. The fact that WDSMP created a trailer for the theatrical release of *Toy Story 3* does not conflict with Kalavsky's testimony that WDSMP exploited *Toy Story 3* solely in connection with the movie's theatrical release. Diece-Lisa's challenge to Lourie's statement that BVHE distributed *Toy Story 3* DVDs and Blu-rays but did not sell "consumer products incorporating Los-o'-Huggin' Bear" (*id.* at 16) reflects no more than a semantic dispute over whether DVDs and Blu-rays constitute "consumer products." And there is no conflict whatsoever between Lourie's statement that BVHE does not license characters and the deposition testimony of BVHE's Rule 30(b)(6) designee *solely with respect to BVHE's financial statements* that he was uncertain as to the extent of any licensing by BVHE. *Id.*; Klieger Decl. ¶ 5.

between toys and movies" could possibly create a triable issue as to whether WDSMP and BVHE used the Lots-o'-Huggin' Bear name as a trademark, to identify the source of *Toy Story 3*. It could not, and the Court should therefore deny Diece-Lisa's Rule 56(d) request.

## III. CONCLUSION

For the foregoing reasons, WDSMP and BVHE respectfully request that this Court grant their motion for partial summary judgment and dismiss Plaintiff's claims against them under *Rogers*.

Dated: October 11, 2024                     HUESTON HENNIGAN LLP

By: */s/ Robert N. Klieger*
Robert N. Klieger
Attorneys for Defendants