Robert N. Klieger, State Bar No. 192962
rklieger@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone:  (213) 788-4340
Facsimile:   (888) 775-0898

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIECE-LISA INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>DISNEY ENTERPRISES, INC., et al.,<br><br>Defendants. | Case No. 2:20-cv-09147-TJH-JCx<br><br>**DEFENDANTS WALT DISNEY STUDIOS MOTION PICTURES AND BUENA VISTA HOME ENTERTAINMENT, INC.'S RESPONSE TO PLAINTIFF DIECE-LISA INDUSTRIES, INC.'S SEPARATE STATEMENT OF GENUINE DISPUTES AND ADDITIONAL FACTS**<br><br>Judge:         Hon. Terry J. Hatter Jr.<br>Courtroom: 9C<br>Date:          October 28, 2024<br>Time:          UNDER SUBMISSION |

Pursuant to Local Rule 56-3, Defendants Walt Disney Studios Motion Pictures and Buena Vista Home Entertainment, Inc. (collectively, "Defendants") respectfully submit this response to Plaintiff Diece-Lisa Industries, Inc.'s ("Plaintiff") Separate Statement of Genuine Disputes (Dkt. No. 398-1).

| Undisputed Fact | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. *Toy Story 3* was released theatrically in June 2010 and on home video later that same year.<br><br>*Evidence:* Dkt. No. 332-6 (Deposition of Andrew Stanton) at 12:25-13:3; Dkt. No. 332-23 (*Toy Story 3* DVD). | 1.  Undisputed. |
| 2.  The principal antagonist in *Toy Story 3* is a pink bear named "Lots-o'-Huggin' Bear," or "Lotso" for short.<br><br>*Evidence:* Dkt. No. 332-23 (*Toy Story 3* DVD). | 2.  Undisputed. |
| 3.  Lotso's full name is spoken just once, around the 22-minute mark, in the movie's entire 103-minute run time.<br><br>*Evidence:* Dkt. No. 332-23 (*Toy Story 3* DVD). | 3.  Undisputed. |
| 4.  Walt Disney Studios Motion Pictures ("WDSMP") is a division of non-party ABC, Inc.<br><br>*Evidence:* Declaration of Matthew J. Kalavsky ("Kalavsky Decl.") ¶ 2. | 4.  Undisputed. |

| | |
|---|---|
| 5. WDSMP engaged in the theatrical distribution of *Toy Story 3*.<br><br>*Evidence:* Kalavsky Decl. ¶ 2. | 5. Undisputed. |
| 6. WDSMP did not engage in any exploitation of "Lots-o'-Huggin' Bear" apart from its theatrical distribution of *Toy Story 3*.<br><br>*Evidence:* Kalavsky Decl. ¶ 2. | 6. Disputed.<br><br>WDSMP created the trailers for *Toy Story 3*, at least one of which features Lots-o'-Huggin' Bear.<br><br>*Evidence:*<br>• Ex. F[1] (T. Wilson Dep. Tr.), at 42:2 ("We create the trailers.");<br>• Delgado Decl. ¶ 12 (link to trailer with Lots-o'-Huggin' Bear).<br><br>*See also* Pl.'s Evid. Objs.; Pl.'s Opp'n Section III.B ("Rule 56(d) Request"). |

6. **Defendant's Response**:

As Ms. Wilson testified, WDSMP creates trailers in connection with its theatrical distribution of motion pictures, including *Toy Story 3*. That is not an separate exploitation of the movie or its characters. In any event, the allegedly infringing "Lots-o'-Huggin' Bear" name is not included in the trailer identified by Plaintiff and therefore is not part of the claimed infringement. Indeed, as the operative Fifth Amended Complaint makes clear, Plaintiff seeks to hold WDSMP liable solely in connection with its theatrical distribution of the movie. *See* Dkt. No. 325 at 26.

---

[1] Unless otherwise specified, Exhibit references are to the Declaration of William A. Delgado (Dkt. No. 403-3).

| | |
|---|---|
| 7. WDSMP did not sell or have any involvement whatsoever with the conception, design, development, licensing, distribution, or marketing for sale of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Kalavsky Decl. ¶ 3. | 7. Disputed.<br><br>WDSMP licensed the rights to distribute *Toy Story 3* from Disney Enterprises, Inc. ("DEI"). The *Toy Story 3* animated movie is a consumer product and a marketing vehicle for other products incorporating Lots-o'-Huggin' Bear. WDSMP entered into agreements with third parties to sell that product to consumers.<br><br>*Evidence:*<br>• SUF No. 5;<br>• ECF No. 334-6 (B. Wilson Dep. Tr.), at 32:5–8, 32:20–24 (confirming "DEI is . . . the source where all those rights, that have been acquired from PIXAR, become licensed downstream," and agreeing "to the extent that there's other Disney entities that are licensed to use 'Toy Story 3' rights, all of those rights would flow from DEI to that entity");<br>• Ex. C (Gilliam Dep. Tr.), at 40:1–6 (underscoring importance of releasing film and toy products simultaneously);<br>• Ex. E (B. Wilson Dep. Tr.) at 84:17–85:6 (agreeing animated film could increase sales of toys involving related characters);<br>• Ex. F (T. Wilson Dep. Tr.), at 20:3–9 (outlining financial terms of agreements between WDSMP and theatrical exhibitors);<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office and $10 billion in retail sales); |

| | • ECF No. 334-52 ("How Disney Milks Its Hits for Profits Ever After").<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |
|---|---|
| **7. Defendant's Response:**<br><br>*Toy Story 3* is a motion picture, not a consumer product. "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself. *See, e.g., Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *1 (C.D. Cal. June 11, 2020) ("figures, plush, accessories, apparel, and homewares"); *Nat'l Entm't Collectibles Ass'n, Inc. v. MeadWestvaco Corp.*, 2012 WL 6611481, at *1 (S.D. Ohio Dec. 19, 2012) ("stationery and other paper products"); *DC Comics v. Kryptonite Corp.*, 336 F. Supp. 2d 324, 332 (S.D.N.Y. 2004) ("toys, apparel, books, calendars, greeting cards, novelty items, and video games"); *Estate of Presley v. Russen*, 513 F. Supp. 1339, 1355 n.10 (D.N.J. 1981) ("jewelry and t-shirts"). Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product." | |
| 8. WDSMP did not supply any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear for sale to any person or entity.<br><br>*Evidence:* Kalavsky Decl. ¶ 3. | 8. Disputed.<br><br>WDSMP engaged in the theatrical distribution of *Toy Story 3*, which is a consumer product incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:*<br>• SUF No. 5;<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office sales).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

**8.    Defendant's Response:**

*Toy Story 3* is a motion picture, not a consumer product. "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself. *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10. Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product."

| | |
|---|---|
| 9. WDSMP did not exercise ownership or control over any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Kalavsky Decl. ¶ 3. | 9. Disputed.<br><br>WDSMP engaged in the theatrical distribution of *Toy Story 3*, which is a consumer product incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:*<br>• SUF No. 5;<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office sales).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

**9.    Defendant's Response:**

*Toy Story 3* is a motion picture, not a consumer product. "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself. *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10. Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product."

| | |
|---|---|
| 10.  WDSMP did not have a partnership with any person or entity with respect to sales of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Kalavsky Decl. ¶ 3. | 10.  Disputed<br><br>WDSMP engaged in the theatrical distribution of *Toy Story 3*, which is a consumer product incorporating Lots-o'-Huggin' Bear.  WDSMP entered into agreements with third parties to sell that product to consumers.<br><br>*Evidence:*<br>• SUF No. 5;<br>• Ex. F (T. Wilson Dep. Tr.), at 20:3–9 (outlining financial terms of agreements between WDSMP and theatrical exhibitors);<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office sales).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

10.  **Defendant's Response:**

*Toy Story 3* is a motion picture, not a consumer product.  "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself.  *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10.  Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product."

RESPONSE TO SEPARATE STATEMENT OF GENUINE DISPUTES

| 11. WDSMP did not have the authority to bind any person or entity in transactions with third parties involving any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Kalavsky Decl. ¶ 3. | 11. Disputed<br><br>WDSMP engaged in the theatrical distribution of *Toy Story 3*, which is a consumer product incorporating Lots-o'-Huggin' Bear. WDSMP entered into agreements with third parties to sell that product to consumers.<br><br>*Evidence:*<br>• SUF No. 5;<br>• Ex. F (T. Wilson Dep. Tr.), at 20:3–9 (outlining financial terms of agreements between WDSMP and exhibitors);<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office sales).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

11. **Defendant's Response:**

*Toy Story 3* is a motion picture, not a consumer product. "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself. *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10. Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product."

| 12.  WDSMP did not derive any revenues from sales of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Kalavsky Decl. ¶ 4. | 12.  Disputed.<br><br>WDSMP engaged in the theatrical distribution of *Toy Story 3*, which is itself a consumer product.  Furthermore, WDSMP likely benefitted financially from sales of Lots-o'-Huggin' Bear merchandise, which boosted ticket sales.<br><br>*Evidence:*<br>• SUF No. 5;<br>• ECF No. 334-55 (Online Disney Store listings for Lots-o'-Huggin' Bear identifying *Toy Story 3*);<br>• Ex. C (Gilliam Dep. Tr.), at 40:1–6 (underscoring importance of releasing film and toy products simultaneously);<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office sales).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

RESPONSE TO SEPARATE STATEMENT OF GENUINE DISPUTES

12.  **Defendant's Response:**

*Toy Story 3* is a motion picture, not a consumer product. "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself. *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10. Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product."

Plaintiff's assertion that "WDSMP likely benefitted financially from sales of Lots-o'-Huggin' Bear merchandise" is speculation and is not supported by any of the cited evidence. Moreover, even if sales of books, video games, toys, and other consumer products based on *Toy Story 3* by the consumer products defendants helped generate interest in the movie, that would not mean that WDSMP derived revenues from those sales; it is undisputed that it did not.

| | |
|---|---|
| 13.  Buena Vista Home Entertainment, Inc. ("BVHE") engaged in the home video distribution of *Toy Story 3* on DVD and Blu-ray. *Evidence:* Declaration of Jennifer A. Lourie ("Lourie Decl.") ¶ 2. | 13.  Undisputed. |

| 14.  BVHE did not engage in any exploitation of "Lots-o'-Huggin' Bear" apart from its home entertainment distribution of *Toy Story 3*.<br><br>*Evidence:* Lourie Decl. ¶ 2. | 14.  Disputed.<br><br>BVHE marketed *Toy Story 3* DVDs and Blu-rays.  BVHE's corporate representative was unsure whether BVHE licenses others to use Disney characters.<br><br>*Evidence:*<br>• Ex. B (Elias Dep. Tr.), at 24:5–14 (confirming BVHE marketed Toy Story 3 DVDs and Blu-rays);<br>• Ex. D (McCollum Dep. Tr.), at 18:12–15 (Q. "Do you know whether or not Buena Vista Home Entertainment licenses others to use Disney characters and trademarks?" A. "I don't know.").<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

14.    **Defendant's Response:**

Plaintiff has not cited any evidence that BVHE utilized the "Lots-o'-Huggin' Bear" character, much less his allegedly infringing name, in connection with the marketing of *Toy Story 3* DVDs and Blu-rays.

The "corporate representative" whose testimony Plaintiff cites was designated as BVHE's corporate representative exclusively with respect to BVHE's revenue, income, and profits from BVHE's distribution of *Toy Story 3*, and it is therefore hardly surprising that he was unable to answer questions about licensing third parties to use Disney characters and trademarks.  *See* Declaration of Robert N. Klieger ("Klieger Decl.") ¶ 5 & Ex. B.

| | |
|---|---|
| 15.  BVHE did not sell or have any involvement whatsoever with the conception, design, development, licensing, distribution, or marketing for sale of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Lourie Decl. ¶ 3. | 15.  Disputed.<br><br>BVHE licensed the rights to distribute *Toy Story 3* from Disney Enterprises, Inc. ("DEI").  *Toy Story 3* DVDs and Blu-rays are consumer products and a marketing vehicle for other consumer products incorporating Lots-o'-Huggin' Bear.  BVHE distributed those products to retailers to sell to consumers.<br><br>*Evidence:*<br>• SUF No. 13;<br>• Ex. B (Elias Dep. Tr.), at 65:8–14 ("Also, oftentimes these titles are used to drive traffic into the store . . . in the hopes that consumers will put more items in their market basket.");<br>• Ex. C (Gilliam Dep. Tr.), at 40:1–6 (underscoring importance of releasing film and toy products simultaneously);<br>• Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores);<br>• Ex. E (B. Wilson Dep. Tr.), at 45:3–5 (Q. "And how does Buena Vista Home Entertainment get those rights to license downstream?" A. "I believe from DEI.");<br>• *id.* at 84:17–85:6 (agreeing animated film could increase sales of toys involving related characters);<br>• Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office and $10 billion in retail sales); |

RESPONSE TO SEPARATE STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| | • ECF No. 334-52 ("How Disney Milks Its Hits for Profits Ever After").<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |
| 15. **Defendant's Response:**<br><br>*Toy Story 3* is a motion picture, not a consumer product. "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself. *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10. Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product." | |
| 16. BVHE did not supply any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear for sale to any person or entity.<br><br>*Evidence:* Lourie Decl. ¶ 3. | 16. Disputed.<br><br>BVHE engaged in the distribution of *Toy Story 3* on DVD and Blu-ray, which are consumer products.<br><br>*Evidence:*<br>• SUF No. 13;<br>• Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

16.    **Defendant's Response**:

*Toy Story 3* is a motion picture, not a consumer product. "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself. *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10. Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product."

| 17. BVHE did not exercise ownership or control over any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear. *Evidence:* Lourie Decl. ¶ 3. | 17. Disputed.<br><br>BVHE engaged in the distribution of *Toy Story 3* on DVD and Blu-ray, which are consumer products.<br><br>*Evidence:*<br>• SUF No. 13;<br>• Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

17.    **Defendant's Response**:

*Toy Story 3* is a motion picture, not a consumer product. "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself. *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10. Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product."

| | |
|---|---|
| 18.  BVHE did not have a partnership with any person or entity with respect to sales of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Lourie Decl. ¶ 3. | 18.  Disputed.<br><br>BVHE licensed the rights to distribute *Toy Story 3* from Disney Enterprises, Inc. ("DEI").  *Toy Story 3* DVDs and Blu-rays are consumer products and a marketing vehicle for other consumer products incorporating Lots-o'-Huggin' Bear.  BVHE distributed those products to retailers to sell to consumers.<br><br>*Evidence:*<br>• SUF No. 13;<br>• Ex. B (Elias Dep. Tr.), at 65:8–14 ("Also, oftentimes these titles are used to drive traffic into the store . . . in the hopes that consumers will put more items in their market basket.");<br>• *id.* at 20:1–7 (explaining online retailers account to BVHE for each download);<br>• Ex. C (Gilliam Dep. Tr.), at 40:1–6 (underscoring importance of releasing film and toy products simultaneously);<br>• Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores);<br>• Ex. E (B. Wilson Dep. Tr.), at 45:3–5 (Q. "And how does Buena Vista Home Entertainment get those rights to license downstream?" A. "I believe from DEI.");<br>• *id.* at 84:17–85:6 (agreeing animated film could increase sales of toys involving related characters);<br>*S* |

RESPONSE TO SEPARATE STATEMENT OF GENUINE DISPUTES

|  |  | • Ex. H (Disney Earnings Tr.), at 4 (noting $1 billion in box office and $10 billion in retail sales);<br>• ECF No. 334-52 ("How Disney Milks Its Hits for Profits Ever After").<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |
|---|---|---|
| 18. | **Defendant's Response:** | |

*Toy Story 3* is a motion picture, not a consumer product. "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself. *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10. Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product." And Plaintiff cites no evidence of any partnership with respect to DVD and Blu-ray sales in any event.

RESPONSE TO SEPARATE STATEMENT OF GENUINE DISPUTES

| 19.  BVHE did not have the authority to bind any person or entity in transactions with third parties involving any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Lourie Decl. ¶ 3. | 19.  Disputed.<br><br>BVHE engaged in the distribution of *Toy Story 3* on DVD and Blu-ray, which are consumer products.  BVHE contracted with a third party to physically create those products.  BVHE distributed those products to retailers to sell to consumers.<br><br>*Evidence:*<br>• SUF No. 13;<br>• Ex. B (Elias Dep. Tr.), at 20:1–7 (explaining online retailers account to BVHE for each download);<br>• *id.* at 20:14-25 (explaining contractor replicates DVDs and Blu-rays for BVHE);<br>• Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

| 19.  **Defendant's Response:**<br><br>*Toy Story 3* is a motion picture, not a consumer product.  "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself.  *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10.  Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product." |

RESPONSE TO SEPARATE STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| 20.  BVHE did not derive any revenues from sales of any books, video games, toys, or other consumer products incorporating Lots-o'-Huggin' Bear.<br><br>*Evidence:* Lourie Decl. ¶ 4. | 20.  Disputed.<br><br>BVHE engaged in the home video distribution of *Toy Story 3* on DVD and Blu-ray, which are consumer products. BVHE likely benefitted financially from sales of Lots-o'-Huggin' Bear merchandise, which boosted ticket sales.<br><br>*Evidence:*<br>• SUF No. 13;<br>• ECF No. 334-55 (Online Disney Store listings for Lots-o'-Huggin' Bear identifying *Toy Story 3*);<br>• Ex. C (Gilliam Dep. Tr.), at 40:1–6 (underscoring importance of releasing film and toy products simultaneously);<br>• Ex. D (McCollum Dep. Tr.), at 20:4–10 (agreeing BVHE provides "goods for sale" through Disney stores).<br><br>*See also* Pl.'s Evid. Objs.; Rule 56(d) Request. |

20.    **Defendant's Response:**

*Toy Story 3* is a motion picture, not a consumer product. "Consumer products" consist of goods based on a motion picture or other expressive work as opposed to the motion picture itself. *See, e.g., Ferreira*, 2020 WL 3246328, at *1; *Nat'l Entm't Collectibles Ass'n*, 2012 WL 6611481, at *1; *DC Comics*, 336 F. Supp. 2d at 332; *Estate of Presley*, 513 F. Supp. at 1355 n.10. Moreover, *Toy Story 3* is a quintessential expressive work entitled to the full protections of the First Amendment even if the theatrical or home entertainment distribution of the movie could properly be described as a "consumer product."

Plaintiff's assertion that "BVHE likely benefitted financially from sales of Lots-o'-Huggin' Bear merchandise" is speculation and is not supported by any of the cited evidence. Moreover, even if sales of books, video games, toys, and other consumer products based on *Toy Story 3* by the consumer products defendants helped generate interest in the movie, that would not mean that BVHE derived revenues from those sales; it is undisputed that it did not.

## PLAINTIFF'S ADDITIONAL FACTS

Defendants object to Plaintiff's "Additional Facts" on the ground that the Local Rules do not provide for a party opposing a motion for summary judgment to identify any such "additional facts." Plaintiff's "Additional Facts" are therefore invalid and should be disregarded in their entirety. Defendants nevertheless respond to each alleged "Additional Fact" below.

| Plaintiff's Additional Fact & Supporting Evidence | Defendants' Response to Cited Facts & Supporting Evidence |
|---|---|
| 21.  Diece-Lisa Industries, Inc. ("DLI") is a corporation solely owned by Randice-Lisa Altschul.<br><br>*Evidence:*  Ex. A (Altschul Dep. Tr.), at 13:14–14:3; ECF No. 334-9 (DLI Certificate of Incorporation). | Undisputed, but not material. |

| | |
|---|---|
| 22.  DLI is a toy and game company that principally licenses unique and innovative concepts to third parties who, in turn, manufacture and sell licensed products to the ultimate consumer.<br><br>*Evidence:*  ECF No. 333-2 (Altschul Decl.) ¶ 2. | Undisputed, but not material. |
| 23. In the early-to-mid 1990's, DLI conceived of a novel idea for a wearable stuffed animal having sleeve-like openings in which the user could place their arms.<br><br>*Evidence:*  Ex. A (Altschul Dep. Tr.), at 227:18–228:10; ECF No. 334-35 (SNUGGLER'S concept). | Undisputed, but not material. |
| 24.  DLI obtained a federally registered trademark for LOTS OF HUGS first in 1997 and then again in 2008.<br><br>*Evidence:*  ECF No. 325-3 (Trademark Principal Register, 1997); ECF No. 325-2 (2008). | Undisputed, but not material. |

RESPONSE TO SEPARATE STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| 25.  Disney's character and character-related products have cost DLI opportunities to license its LOTS OF HUGS mark because of fear of consumer confusion.<br><br>*Evidence:*  Ex. A (Altschul Dep. Tr.), at 126:20-127:1, 270:6–272:5; ECF No. 334-8 (Sutton Dep. Tr.), at 24:17–25:16. | Disputed, but not material.<br><br>Plaintiff mischaracterizes Alan Sutton's testimony.  Sutton did not opine as to any "fear of consumer confusion" and was emphatic that the primary reason he wanted to change the name of Plaintiff's product from "Lots of Hugs" to "Hugsalot" was because prospective international licensees had trouble saying "Lots of Hugs," and because he wanted a unique name for the products that would be marketed by his company.  Dkt. No. 332-4 (Sutton Dep. Tr.), at 22:4-23, 31:10-20. |
| 26.  The characters in Toy Story 3 are "inherently distinctive and serve to identify DEI and its licensees as the source of products bearing [those] Characters."<br><br>*Evidence:*  Request for Judicial Notice ("RJN"), Ex. I (*DEI v. Lancaster* Compl.) ¶ 5(d); RJN, Ex. J (Reed Decl.) ¶ 2. | Disputed, but not material.<br><br>The complaint in *Disney Enterprises, Inc., et al. v. Lancaster, et al.* and Declaration of Marsha Reed filed in that action identified a single character from the *Toy Story* motion pictures (Buzz Lightyear) that is used as a source-identifier, and only in connection with licensed or merchandised products as opposed to the motion pictures themselves. |
| 27.  Pixar Talking Pictures obtained licenses on behalf of itself and its affiliates to feature trademarked characters and toys, including Barbie, Slinky-Dog, Mr. and Mrs. Potato Head, in *Toy Story 3*.<br><br>*Evidence*:  Ex. G. | Disputed in part, but not material.<br><br>The cited agreements are not licenses, but instead consents to use certain third-party products in connection with the motion picture. |

RESPONSE TO SEPARATE STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| 28.  The licenses refer to characters in *Toy Story 3* as "'living toy[s]" or "'living' characters." *Evidence:* Ex. G, at PIX 154, PIX 157. | Disputed in part, but not material.<br><br>The cited agreements are not licenses, but instead consents to use certain third-party products in connection with the motion picture. |
| 29.  Disney entities have obtained trademarks for other characters, including Tinker Bell, Miss Piggy, and Lighting McQueen. *Evidence:* RJN, Ex. K. | Disputed in part, but not material.<br><br>The trademarks are for use of those famous character's names in connection with specific categories of consumer products ("bath linen," "bed blankets," "children's blankets," "curtains," "throws," "dolls," "collectible toy figures," "plush toys," "stuffed toys," "jackets," "pants," "t-shirts," "tank tops," and "sandals") and not in connection with the motion pictures or other expressive works in which the characters appear. |

Dated:  October 11, 2024                    HUESTON HENNIGAN LLP


                                            By:  */s/ Robert N. Klieger*
                                                 Robert N. Klieger
                                                 Attorneys for Defendants

RESPONSE TO SEPARATE STATEMENT OF GENUINE DISPUTES