1  Robert N. Klieger, State Bar No. 192962
   rklieger@hueston.com
2  HUESTON HENNIGAN LLP
   523 West 6th Street, Suite 400
3  Los Angeles, California 90014
   Telephone:  (213) 788-4340
4  Facsimile:   (888) 775-0898
5
6  Attorneys for Defendants
7
8
9
10
11                    UNITED STATES DISTRICT COURT
12       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
13
14  DIECE-LISA INDUSTRIES, INC.,        Case No. 2:20-CV-09147-TJH-JCx
                                        Hon. Jacqueline Chooljian
15               Plaintiff,
                                        **JOINT STIPULATION ON**
16         v.                           **DEFENDANT BUENA VISTA**
                                        **HOME ENTERTAINMENT, INC.'S**
17                                      **MOTION TO QUASH**
                                        **DEPOSITION SUBPOENA**
18  DISNEY ENTERPRISES, INC., et al.,
19               Defendants.
                                        Date:      August 12, 2025
20                                      Time:      9:30 a.m.
                                        Place:     Courtroom 750
21
22                                      Trial Date:  None Set
23                                      Discovery Cutoff:  August 15, 2025
24
25
26
27
28

JOINT STIPULATION ON DEFENDANT'S MOTION TO QUASH

1

# **TABLE OF CONTENTS**

2

DEFENDANT'S INTRODUCTORY STATEMENT ...................................................3

PLAINTIFF'S INTRODUCTORY STATEMENT ...................................................4

ISSUE IN DISPUTE AND CONTENTIONS..........................................................5

   I.      Deposition Subpoena to Non-Party Lori Elias .............................................5

   II.     Defendant's Contentions ...........................................................6

   III.    Plaintiff's Contentions.............................................................13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Local Rule 37-2.2, Plaintiff Diece-Lisa Industries, Inc. ("Plaintiff") and Defendant Buena Vista Home Entertainment, Inc. ("BVHE" or "Defendant") submit this Joint Statement on Defendant's Motion to Quash Subpoena.

## DEFENDANT'S INTRODUCTORY STATEMENT

Defendant moves to quash a deposition subpoena (the "Subpoena") that Plaintiff has issued to non-party Lori Cohen Elias, a former BVHE employee who Plaintiff has already deposed in this case. The Court should quash the Subpoena for three independent reasons:

*First*, under Rule 30(a)(2)(A)(ii) of the Federal Rules of Civil Procedure, Plaintiff was required to obtain leave of court *before* subpoenaing Ms. Elias for deposition. This is because Plaintiff previously deposed Ms. Elias both as a corporate representative and in her individual capacity. Plaintiff has neither sought nor obtained leave of court to subpoena Ms. Elias for another deposition, and the Subpoena should be quashed for that reason alone.

*Second*, Plaintiff cannot make any showing that Ms. Elias has, or is likely to have, knowledge regarding the relationship between *Toy Story 3* and the sale of Lots-o'-Huggin' Bear merchandise, which is the sole issue on which the Court has authorized additional discovery. Indeed, Jennifer Lourie, Vice President of BVHE and its corporate designee on that topic, testified that BVHE has not performed any analyses regarding whether the release of a movie on DVD or Blu-ray creates consumer demand for other products related to the movie, nor does BVHE possess any such information. Ms. Elias obviously could not have been privy to analyses that BVHE never performed or possessed even with respect to DVD and Blu-ray releases generally, much less with respect to *Toy Story 3* and Lots-o'-Huggin' Bear merchandise in particular.

*Third*, the deposition would unduly burden Ms. Elias and is not proportional to the needs of the case in view of the other discovery that Plaintiff has already

1  taken and will be taking in accordance with the Court's recent ruling on Plaintiff's

2  Motion to Compel (Dkt. No. 422).

3       In the event that the Court nevertheless allows Plaintiff to take another

4  deposition of Ms. Elias, the Court should strictly limit the examination of Ms. Elias

5  to her knowledge regarding the relationship between *Toy Story 3* and the sale of

6  Lots-o'-Huggin' Bear merchandise, consistent with the Court's Order on Plaintiff's

7  Rule 56(d) motion.  *See* Dkt. No. 412 at 7.

8  **PLAINTIFF'S INTRODUCTORY STATEMENT**

9       It is well established that "[a] party cannot seek to quash a Rule 45 subpoena

10  except to the extent that it has a personal right or privilege in the information sought

11  to be disclosed."  *Thao v. Lynch*, 2023 WL 2480860, at *2 (E.D. Cal. Mar. 13, 2023)

12  (cleaned up).  Yet BVHE's motion is conspicuously silent as to BVHE's standing to

13  challenge the subpoena directed to its former employee Lori Elias.  For good reason:

14  BVHE cannot "overcome the presumption that [it] lack[s] standing to quash [the]

15  non-party subpoena."  *See Lineberry v. AddShopper, Inc.*, 2025 WL 274598, at *3

16  (N.D. Cal. Jan. 23, 2025).  As evidenced by the grounds on which BVHE bases its

17  motion, its desire to prevent Elias's deposition is not predicated upon protecting

18  *BVHE's* rights, but ostensibly those of Elias.  Thus, the motion must fail.

19       Even if BVHE's motion were procedurally proper (which it is not), it should

20  be denied for three straightforward reasons: ***First***, there is no question that Elias has

21  or is likely to have relevant knowledge.  BVHE's latest corporate witness, Jennifer

22  Lourie, repeatedly deferred to Elias as the one who "single-handedly managed every

23  aspect of the *Toy Story 3* release." Declaration of Nicole G. Malick ("Malick

24  Decl."), Ex. 1 (Lourie Tr.) at 87:4–9.  Lourie, designated to testify as to topics

25  within the scope of the District Court's March 12, 2025 order granting limited

26  supplemental discovery, testified she had no "direct involvement" with the film

27  herself.  *Id.* at 33:17–20. Critically, BVHE's renewed motion for partial summary

28

judgment—the impetus for the supplemental discovery in this case[1]—is predicated on an argument raised for the first time in 2024, nearly 10 years after the close of discovery and only after a significant change in law occasioned by the Supreme Court's decision in *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023). Accordingly, returning to Elias (now a former employee) in her individual capacity for a newly relevant line of questioning is proper.

      ***Second***, Elias previously sat for a deposition in 2015 solely in her capacity as BVHE's designated 30(b)(6) witness, and no objection to the contrary was ever previously made. Thus, leave of court for a deposition in her individual capacity is not required. *See infra,* 6:20–22 ("BVHE does not dispute that a person who has been deposed as a corporate representative may also be deposed in his or her individual capacity, without requiring leave of court."); *see also Fabritex, Inc. v. Target Corp.*, 2016 WL 11743231, at *3 (C.D. Cal. Dec. 9, 2016) ("Plaintiff has pointed to no reason why Defendants should not be able to depose her in her individual capacity other than that they already deposed her under Rule 30(b)(6), but as the cases cited above make clear, for a protective order to issue Plaintiff must demonstrate something more than that.").

      ***Third***, a limited, remote deposition concerning the relationship between *Toy Story 3* and Lots-o'-Huggin' Bear merchandise poses minimal burden to Elias.

## ISSUE IN DISPUTE AND CONTENTIONS

### I.  Deposition Subpoena to Non-Party Lori Elias

      On June 25, 2025, Plaintiff served Defendants with a Notice of Deposition of Lori Elias, which attached a Subpoena to Testify at Deposition in a Civil Action that Plaintiff intends to serve on Ms. Elias. A true and correct copy of the Subpoena is

---

[1] A more fulsome summary of the background facts and timeline is included in DLI's Motion to Compel Discovery Responses and Production of Documents. *See* Malick Decl., Ex. 2 at 3–4.

attached hereto as Exhibit 1.  On July 14, 2025, Plaintiff served Defendants with an Amended Notice of Deposition of Lori Elias, which attached an amended Subpoena to Testify at a Deposition in a Civil Action that Plaintiff intended to serve on Ms. Elias.  A true and correct copy of the amended Subpoena is attached hereto as Exhibit 2.

## II.    Defendant's Contentions

### A.    Plaintiff Failed to Seek the Requisite Leave of Court to Depose Ms. Elias for a Second Time

The Court should quash the Subpoena in the first instance because Plaintiff failed to obtain leave of court before issuing the Subpoena, as required by Rule 30 of the Federal Rules of Civil Procedure.  Rule 30(a)(2) specifies the circumstances under which a party must obtain leave of court to depose a person.  One of the circumstances in which leave of court is required is where "the deponent has already been deposed in the case."  Fed. R. Civ. P. 30(a)(2)(A)(ii).

Plaintiff has already deposed Ms. Elias in this case.  Specifically, Ms. Elias appeared for deposition on August 21, 2015.  Declaration of Robert N. Klieger ("Klieger Decl.) ¶ 8.  Plaintiff does not dispute that it has already deposed Ms. Elias.  However, Plaintiff has taken the position that its counsel deposed Ms. Elias *solely* as a corporate representative of BVHE, and that Plaintiff is therefore entitled to depose her again in her individual capacity without leave of court.  BVHE does not dispute that a person who has been deposed as a corporate representative may also be deposed in his or her individual capacity, without requiring leave of court.  *See Fabritex, Inc. v. Target Corp.*, 2016 WL 11743231, at *3 (C.D. Cal. Dec. 9, 2016); *Stoba v. Saveology.com, LLC*, 2015 WL 13828736, at *2 (S.D. Cal. July 6, 2015).  Here, however, Plaintiff previously deposed Ms. Elias *both* as a corporate representative and in her individual capacity.  Plaintiff is now seeking to depose Ms. Elias for a second time in her individual capacity.  That is why leave of court is required.

On January 13, 2015, Plaintiff noticed the deposition of BVHE on a series of topics. Klieger Decl., Ex. E. BVHE designated Ms. Elias as its corporate designee with respect to the following four topics:

- Distribution, marketing, and selling Disney DVDs and Blu-Rays of any Disney movies or other films which make any use of or contain the character "Lots-O'-Huggin'" or "Lotso" (hereinafter "Lotso"), including, but not by way of limitation, Disney's *Toy Story 3* movie ("TS3"); and including TS3's distribution and sales to Texas retailers, such as Defendant Disney Store USA, LLC and others, as well as sales on BVHE's interactive website, http://movies.disney.com/watch-at-home;

- What investigations, including without limitation trademark searches, were made by BVHE as to any prior third party use of "LOTS OF HUGS" before distributing, marketing, or selling Disney's or BVHE's DVD's and Blu-Rays of Disney movies or other films which make any use of or contain the character Lotso, including, but not by way of limitation, TS3;

- Whether BVHE was aware of Plaintiff, or Plaintiff's bears, or puppet-like toys, at any time before or during which BVHE distributed, marketed, or sold Disney's or BVHE's DVD's and Blu-Rays of Disney movies or other films which make any use of or contain the character Lotso, including, but not by way of limitation, TS3; and

- Document custodian(s) with knowledge of all documents produced by BVHE.

Klieger Decl. ¶ 8 & Ex. E. Plaintiff's counsel examined Ms. Elias concerning the above topics. Plaintiff's counsel *also* examined Ms. Elias about various matters that fell outside the scope of those topics, including with respect to certain documents for which Ms. Elias explicitly had *not* been designated as BVHE's corporate

representative.  *See, e.g.*, *id.*, Ex. F (Elias Tr.) at 21:2-24:4 (questions and answers concerning the manufacturing process for DVD and Blu-ray discs and packaging); *id.* at 30:22-34:15 (questions and answers concerning a document with respect to which BVHE had designated Ryan McCollum as its corporate designee); *id.* at 34:17-40:7 (questions and answers concerning BVHE's marketing and distribution of titles other than *Toy Story 3*).

BVHE's counsel was not entitled to limit Plaintiff's counsel's examination of Ms. Elias to just the topics on which she had been designated.  *See, e.g., Loop AI Labs Inc. v. Gatti*, 2016 WL 4474584, at *3 (N.D. Cal. Aug. 25, 2016); *Mahe v. Continental Tire the Americas, LLC*, 2012 WL 13014612, at *5 (C.D. Cal. Apr. 23, 2012).[2]  However, if the examining counsel chooses to explore matters outside the scope of the Rule 30(b)(6) topics, the witness is testifying in his or her *individual capacity* and no longer as a corporate representative.  *See, e.g.*, *Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 73 (E.D. La. 2024) ("[T]estimony in response to questions beyond the scope of the notice constitutes the testimony of the designee *in an individual capacity* and not on behalf of the entity ….") (emphasis in original); *Badger v. Wal-Mart Stores, Inc.*, 2013 WL 3297084, at *6 (D. Nev. June 28, 2013) ("[I]f [the corporate representative] is asked to testify to facts outside the scope of the Rule 30(b)(6) notice, he will do so as an individual, not as a Rule 30(b)(6) representative."); *Falchenberg v. N.Y. State Dept. of Educ.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008) ("Questions and answers

[2] In *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362 (N.D. Cal. 2000), the court explained the rationale for allowing a witness who is appearing as a corporate designee to also be examined in his or her individual capacity: "The option to adjourn the 30(b)(6) deposition and demand that the deposition be re-noticed, for the witness to appear on his or her own behalf seems artificial and wasteful of both the parties' resources and the witness's time.  Presumably, if the witness is capable of testifying on behalf of the designated entity, the witness is also capable of testifying as an individual, at the same deposition."  *Id.* at 367.

JOINT STIPULATION ON DEFENDANT'S MOTION TO QUASH

1  exceeding the scope of the 30(b)(6) notice will not bind the corporation, but are

2  merely treated as the answers of the individual deponent.").  Because Plaintiff's

3  counsel elected to depose Ms. Elias both as a corporate representative and in her

4  individual capacity, Rule 30(a)(2)(A)(ii) requires Plaintiff to obtain leave of court if

5  it wishes to depose her yet again.

6      In each of the cases upon which Plaintiff relied during the meet and confer

7  process, the individual whose deposition was noticed had previously been deposed

8  *solely* as a corporate representative.  *See Fabritex,* 2016 WL 11743231, at *3; *Stoba*,

9  2015 WL 13828736, at *2; *Pecover v. Electronic Arts, Inc.*, 2012 WL 951255, at *3

10  (N.D. Cal. Mar. 20, 2012).  Those cases do not authorize a subsequent deposition of

11  a witness who has already been deposed both as a corporate representative and in his

12  or her individual capacity without first obtaining leave of court.  Because Plaintiff

13  has neither sought nor obtained leave of court to take another deposition of Ms.

14  Elias, the Subpoena should be quashed.

15      **B.    Plaintiff Cannot Make Any Showing that Ms. Elias Has, or is**

16          **Likely to Have, Knowledge Regarding the Relationship Between**

17          ***Toy Story 3* and the Sale of Lots-o'-Huggin' Bear Merchandise**

18      Ms. Elias stopped working for BVHE in 2022.  Klieger Decl., Ex. G (Lourie

19  Tr.) at 34:4-9.  For the past three years, Ms. Elias has been an executive at Amazon

20  Prime Video and Amazon Studios.  Klieger Decl., Ex. H.  She is not a party, nor is

21  she employed by BVHE or any of the other defendants.

22      "[T]he Ninth Circuit has long held that nonparties subject to discovery

23  requests deserve extra protection from the courts."  *High Tech Med.*

24  *Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995).

25  In the usual case, where fact discovery is ongoing, this means that a court will

26  "require a stronger showing of relevance than for simple party discovery."  *FTC v.*

27  *AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013).  In the instant case, fact

28  discovery has long been closed, and the Court has authorized Plaintiff to conduct

only limited additional discovery, "limited to the relationship between Toy Story 3 and the sale of Lots-o-Huggin' Bear merchandise." Dkt. No. 412 at 7. Accordingly, Plaintiff should be required to make a strong showing that Ms. Elias has, or is likely to have, knowledge *on that specific topic* before it may compel her to sit for another deposition.

Plaintiff cannot make *any* showing, much less a strong one, that Ms. Elias has, or is likely to have, knowledge concerning the relationship between *Toy Story 3* and the sale of Lots-o'-Huggin' Bear merchandise. Jennifer Lourie, who recently testified as BVHE's corporate representative on precisely that topic, testified that BVHE has not performed any analyses regarding whether the release of a movie on DVD or Blu-ray creates consumer demand for other products related to the movie, nor does BVHE possess any such information. Klieger Decl., Ex. G (Lourie Tr.) at 69:24-70:12, 74:14-75:7. Ms. Elias obviously could not have been privy to analyses that BVHE never performed or possessed even with respect to DVD and Blu-ray releases generally, much less with respect to *Toy Story 3* and Lots-o'-Huggin' Bear merchandise in particular.

Plaintiff asserted during the meet and confer process that a further deposition of Ms. Elias is justified because Ms. Lourie was unable to answer various questions about BVHE's marketing of *Toy Story 3* DVDs and Blu-rays and explained that Ms. Elias would be more knowledgeable about those topics. Klieger Decl., Ex. A; *see, e.g., id.*, Ex. G (Lourie Tr.) at 62:22-63:4, 133:20-134:3; 135:9-138:7. That is hardly surprising given that BVHE's marketing of *Toy Story 3* was a topic in Plaintiff's Rule 30(b)(6) notice *in 2015*, and Ms. Elias testified at length on that topic at her deposition in August 2015. *See* Klieger Decl., Ex. E; *id.*, Ex. F (Elias Tr.) at 51:1-74:21. The fact that Ms. Lourie is not as knowledgeable as Ms. Elias on a topic from Plaintiff's 2015 deposition notice, and as to which Ms. Elias has already testified, in no way suggests that Ms. Elias would have knowledge related to sales of Lots-o'-Huggin' Bear merchandise by the consumer products defendants.

1    Indeed, given that BVHE never analyzed or obtained any information regarding the

2    impact of DVD or Blu-ray releases on demand for other products, it is highly

3    unlikely that Ms. Elias would possess any such knowledge.

### C.    The Deposition Would Unduly Burden Ms. Elias and Seeks Discovery That is Not Proportional to the Needs of the Case

6    Under Rule 26 of the Federal Rules of Civil Procedure, discovery must be

7    "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "In addition to the

8    discovery standards under Rule 26 that are incorporated by Rule 45, Rule 45 itself

9    provides that 'on timely motion, the court for the district where compliance is

10   required must quash or modify a subpoena that ... subjects a person to undue

11   burden.'"  *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014)

12   (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)).  In determining whether a subpoena poses

13   an undue burden, courts "'weigh the burden to the subpoenaed party against the

14   value of the information to the serving party.'"  *Moon v. SCP Pool Corp.*, 232

15   F.R.D. 633, 637 (C.D. Cal. 2005) (quoting *Travelers Indem. Co. v. Metropolitan

16   Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005)).

17   Here, both proportionality and undue burden must be analyzed not in the

18   context of discovery generally, but instead in connection with the extremely limited

19   discovery that the Court has authorized Plaintiff to take pursuant to Rule 56(d)—

20   namely, "the relationship between Toy Story 3 and the sale of Lots-o-Huggin' Bear

21   merchandise."  Dkt. No. 412 at 7.  Pursuant to that authorization, Plaintiff has

22   already served requests for production, requests for admission, and interrogatories

23   on WDSMP and BVHE, to which WDSMP and BVHE have responded; taken

24   depositions of Matthew Kavalsky and Jennifer Lourie, both in their individual

25   capacities and as corporate representatives of WDSMP and BVHE, respectively;

26   and served requests for admission, interrogatories, and requests for production on

27   Disney Enterprises, Inc., Disney Consumer Products, Inc., Disney Shopping, Inc.,

28   and Disney Store USA, Inc., as to which Plaintiff's Motion to Compel was granted

in part (*see* Dkt. No. 422).  Plaintiff has not made any showing as to why still more discovery is essential to its summary judgment opposition or proportional to the needs of the case.

More importantly, Plaintiff has not made any showing as to why Ms. Elias, a *former* employee who has been working for a competitor for the past three years, should bear the burden of having to sit for another deposition in a case in which she has already been deposed, and in which fact discovery has long been closed.  We know from the deposition of BVHE's corporate representative that BVHE has not performed any analyses regarding whether the release of a movie on DVD or Blu-ray creates consumer demand for other products related to the movie and does not possess any such information.  Klieger Decl., Ex. G (Lourie Tr.) at 69:24-70:12, 74:14-75:7.  There is no reason to believe that Ms. Elias, who worked for BVHE, would have information that was not available to BVHE itself, and Plaintiff's unsubstantiated belief that she might is not enough to require her to sit for yet another deposition.

**D.    In the Event the Court Allows Ms. Elias's Deposition to Proceed, the Examination Should be Strictly Limited to Her Knowledge Regarding the Relationship Between *Toy Story 3* and the Sale of Lots-o'-Huggin' Bear Merchandise**

In the event that the Court finds that Plaintiff was not required to obtain leave of court before subpoenaing Ms. Elias for another deposition, and also that Plaintiff has made a sufficient showing that Ms. Elias is likely to have knowledge regarding the relationship between *Toy Story 3* and the sale of Lots-o'-Huggin' Bear merchandise, the Court should strictly limit Plaintiff's further deposition of Ms. Elias to that topic.  As discussed above, the Court afforded Plaintiff the right to "conduct limited discovery, limited to the relationship between Toy Story 3 and the sale of Lots-o-Huggin' Bear merchandise."  Dkt. No. 412 at 7.  Plaintiff's counsel

1  should not be permitted to examine Ms. Elias with respect to any other topic,

2  whether or not already covered in her 2015 deposition.

3  **III.    Plaintiff's Contentions**

4         **A.    BVHE Does Not Have Standing to Move to Quash the Subpoena to**

5                **Lori Elias.**

6         "As the movant[], [BVHE] ha[s] the burden of persuasion to overcome the

7  presumption that [it] lack[s] standing to quash a non-party subpoena. *Lineberry*,

8  2025 WL 274598, at *3 (citing *In re Uber Techs., Inc., Passenger Sexual Assault*

9  *Litig.*, 2024 WL 3416644, at *2 (N.D. Cal. July 14, 2024)).  BVHE has not, and

10  cannot, meet this burden.  BVHE's "objections and arguments against the deposition

11  subpoena do not demonstrate that [BVHE] ha[s] a personal right or privilege with

12  respect to the [proposed Elias] deposition." *Id.*  That alone warrants denial of

13  BVHE's motion to quash.[3]  *See Vera v. O'Keefe*, 2012 WL 909316, at *1 (S.D. Cal.

14  Mar. 16, 2012) ("Courts have consistently provided that, as a general rule, a party

15  has no standing to quash a subpoena served upon a third party, except as to

16  privilege.") (cleaned up).

17         DLI nevertheless addresses each of BVHE's arguments, each of which

18  similarly must fail.

19         **B.    As Repeatedly Emphasized by Lourie, Elias Indisputably Has**

20                **Relevant Knowledge.**

21         BVHE's contention that DLI cannot establish Elias has, or is likely to have,

22  knowledge regarding the relationship between *Toy Story 3* and the sale of Lots-o'-

23  Huggin' Bear Merchandise is inexplicable.  BVHE's more recent corporate witness,

24

25  _____

     [3] Before serving Elias, DLI first inquired if Counsel for BVHE planned to represent

26  Elias in connection with the subpoena.  Malick Decl., ¶¶ 7–9; Klieger Decl., Ex. A
     at 2; *id.*, Ex. C at 2.  Mr. Klieger declined.  Klieger Decl., Ex. D at 2 ("I have not

27  spoken with Elias in many years and therefore am not authorized at this point to
     accept service of a subpoena on her behalf.").

28

1  Jennifer Lourie, repeatedly and emphatically testified about Elias's vast—and in

2  some instances, *exclusive*—knowledge.

3       Lourie and Elias were contemporaries in 2010 when *Toy Story 3* came out,

4  each assuming responsibility for distinct films.  *See* Malick Decl., Ex. 1 (Lourie

5  Tr.), at 34:22–35:1 ("Q. So there were two executive directors of brand marketing

6  and product management at the time of *Toy Story 3*?  A. We were the queens.  She

7  was Lori Cohen and I was Jennifer Lourie.").[4]  Lourie described Elias as "the lead

8  marketing person who was overseeing the development, the strategy and the

9  execution of [*Toy Story 3*]," *id.* at 20:17–20, while Lourie herself did not have any

10  involvement in the distribution of the film, *id.* at 33:17–20 ("Q. Now, earlier in the

11  testimony you said that you did not play a role with respect to the *Toy Story 3*

12  property?  A. No.").  Lourie emphasized, repeatedly, that "***Lori Cohen Elias . . .***

13  ***single-handedly ran [the] title.***"  *Id.* at 86:11–12 (emphasis added); *see also id.* at

14  35:10–12 (describing Elias as "the Pixar expert," meaning "she took on all Pixar

15  films usually, included *Toy Story 3*"); *id.* at 35:16 (explaining Lourie "never led any

16  Pixar films at the time.").  Lourie did ***not*** consult Elias in advance of the 30(b)(6)

17  deposition.  *Id.* at 17:15–18 ("Q. What did you do to prepare for today's deposition?

18  A. I just met with my two attorneys and I reviewed the documents that we just

19  discussed."); *see also id.* at 34:8–11 ("[Q.] Do you know when [Elias] left Disney?

20  A. It's about three years ago this summer. Q. Do you know where she is? A. No. We

21  don't keep in touch.").

22       As a result, perhaps unsurprisingly, Lourie denied having specific knowledge

23  about marketing and strategic planning related to *Toy Story 3* on several occasions,

24  deferring instead to Elias.  *See, e.g., id.* at 62:17–21 ("I didn't work on the franchise.

25  So I don't know if we established that [marketing strategy] with Toy 3, Toy 2.  But I

26  know that Lori Cohen, who worked directly on this title at the time, definitely used

27  _____

28  [4] Lourie alternatively referred to Elias as "Lori Cohen" and "Lori Cohen Elias."

that marketing tactic many times."); *id.* at 87:4–9 ("To clarify, as I stated at the beginning of the record, ***Lori Cohen single-handedly managed every aspect of the Toy Story 3 release.*** I'm speaking just on behalf of my knowledge of home entertainment. Not my direct involvement with this title." (emphasis added)). Lourie's testimony about a marketing study was particularly illustrative of Elias's exclusive knowledge of certain aspects of BVHE's distribution of *Toy Story 3*:

> Q. Do you know who at BVHE would have reviewed this particular study before –
> A. Lori Cohen.
> . . .
> Q. Anyone else other than her?
> A. No. ***She hoarded the information***.
> Q. I'm sorry?
> A. ***She tended to hold the information tight to herself***.

*Id*. at 137:17–138:2 (emphasis added).

The Court permitted DLI to seek supplemental discovery about "the relationship between *Toy Story 3* and the sale of Lots-o-Huggin' Bear merchandise." Malick Decl., Ex. 3 (3/12/2025 Order) (the "Order") at 7:22–23. Elias's knowledge as to all aspects of BVHE's involvement with *Toy Story 3* necessarily includes knowledge of BVHE's understanding of the relationship between *Toy Story 3* and Lots-o'-Huggin' Bear merchandise during the relevant time period. It is therefore indisputable that Elias has, or is likely to have, relevant knowledge.

**C.    A Deposition in Elias's Individual Capacity Is Proper Because She Was Previously Deposed as BVHE's Corporate Designee Only, and Discovery Has Been Re-Opened for Supplemental Discovery.**

As BVHE concedes, "Rule 30(a)(2)(A)(ii) is inapplicable" to a noticed individual deposition when that individual "has not been deposed yet in [her] individual capacity." *Pecover v. Elec. Arts, Inc.*, 2012 WL 951255, at *3 (N.D. Cal. Mar. 20, 2012). To avoid the plain fact that DLI's noticed deposition of Elias is permissible without leave of court, BVHE advances two arguments in favor of

*retroactively* converting the 30(b)(6) deposition of Elias into an individual deposition: BVHE argues (1) asking a designated corporate witness *any* question even *conceivably* beyond the scope of the noticed deposition topics transforms a 30(b)(6) deposition into a deposition of that witness in her individual capacity, and (2) counsel has no recourse to object to *any* testimony considered to be outside the appropriate scope.  Both positions belie common sense and misconstrue BVHE's own cited authorities.

As the cases cited by BVHE instruct, a "30(b)(6) notice establishes the minimum about which the witness must be prepared to testify, not the maximum." *Loop AI Labs Inc. v. Gatti*, 2016 WL 4474584, at *3 (N.D. Cal. Aug. 25, 2016) (citation omitted); *see also Mahe v. Cont'l Tire The Americas, LLC*, 2012 WL 13014612, at *5 (C.D. Cal. Apr. 23, 2012), *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 366 (N.D. Cal. 2000), *Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 72–73 (E.D. La. 2024), *review denied sub nom. Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore Pte Ltd*, 2024 WL 5086077 (E.D. La. Dec. 12, 2024).  BVHE cites no authority for the proposition that merely asking questions beyond the expressly noticed topics converts the entire deposition into one in the witness's individual capacity.

Rather, the cases relied upon by BVHE support the general rule that counsel for a corporate entity may object to lines of questioning to preserve any such objections—which counsel for BVHE did not do.[5]  *See Detoy*, 196 F.R.D. at 367 ("Counsel **may note on the record** that answers to questions beyond the scope of the

---

[5] Although during the 2015 30(b)(6) deposition of Elias, Mr. Klieger indicated, as to a specific exhibit only, that a different witness would be designated to testify about the document, he permitted counsel for DLI to question the witness about it.  He conceded that although Elias was not prepared by counsel to discuss the document, "there may be parts of the distribution issues" about which she would nevertheless be qualified to talk about.  Klieger Decl., Ex. F at 30:18–31:11.

1    Rule 30(b)(6) designation are not intended as the answers of the designating party

2    and do not bind the designating party.  Prior to trial, counsel *may request* from the

3    trial judge jury instructions that such answers were merely the answers or opinions

4    of individual fact witnesses, not admissions of the party.") (emphases added); *Loop*

5    *AI*, 2016 WL 4474584, at *3 (advising that "[g]enerally, evidence objected to shall

6    be taken *subject to objections*," but admonishing attorney's obstructionist speaking

7    objections in violation of court order) (emphasis added); *Goodyear Tire*, 348 F.R.D.

8    at 73 ("[T]estimony in response to questions beyond the scope of the notice

9    constitutes the testimony of the designee *in an individual capacity* . . . and counsel

10    *may note this distinction on the record*." (second emphasis added)).

11         Moreover, BVHE's cited cases merely explain the common-sense principle

12    that responses to questions beyond the scope of the 30(b)(6) deposition notice, upon

13    proper objection on the record, may not bind the corporation.  *See Goodyear Tire*,

14    348 F.R.D. at 73–74; *Badger v. Wal-Mart Stores, Inc.*, 2013 WL 3297084, at *6 (D.

15    Nev. June 28, 2013); *Falchenberg v. N.Y. State Dept. of Educ.*, 642 F. Supp. 2d 156,

16    164 (S.D.N.Y. 2008); *Mahe*, 2012 WL 13014612, at *5.  They do ***not*** hold that any

17    single line of questioning outside the scope of the 30(b)(6) notice—let alone without

18    objections from counsel—is sufficient to thereafter preclude a deposition of the

19    same witness in their individual capacity without leave of court.

20         Even if the Court were to find Elias had been deposed in her individual

21    capacity on the three limited topics cited by BVHE, *see supra* 7:26–8:6,[6] such a

22

23    ────────────────────

   [6] DLI disputes that these three topics went beyond the scope of the deposition notice

24    in any event.  The "manufacturing process for DVD and Blu-ray discs and

   packaging," for instance, is encompassed by Topic No. 1.  *See* Klieger Decl., Ex. E

25    at 5 of 6.  Counsel expressly permitted limited questioning about the late-produced

   Exhibit 278.  *See id.*, Ex. F at 30:18–31:11.  Finally, BVHE's "marketing and

26    distribution of titles other than *Toy Story 3*" is an appropriate foundational question

27    for a designated corporate witness.  *See, e.g., La Jolla Spa MD, Inc. v. Avidas*

   *Pharms., LLC*, 2019 WL 4141237, at *7 (S.D. Cal. Aug. 30, 2019) ("[D]eposition

28

finding would not bar a further deposition specifically concerning the relationship between *Toy Story 3* and Lots-o'-Huggin' Bear merchandise. *Stoba v. Saveology.com, LLC* addressed a similar situation. *See* 2015 WL 13828736, at \*2–\*3 (S.D. Cal. July 6, 2015). There, the court rejected defendants' arguments that questions posed outside the scope of the noticed 30(b)(6) deposition topics "show[ed] that Plaintiffs had proceeded with deposing him in his individual capacity" because there was no evidence of "an agreement—express or implied—to depose [the witness] in his individual capacity at that time." *Id.* at \*2. The court permitted a second deposition of the witness in his individual capacity, limited to topics not previously addressed in the 30(b)(6) deposition or instances where other 30(b)(6) designees had deferred to the witness on a given topic. *Id.* at \*3.

Here, because the relationship between *Toy Story 3* and Lots-o'-Huggin' Bear merchandise was not previously covered in Elias's 2015 30(b)(6) deposition, an individual deposition on that topic would not be duplicative of prior 30(b)(6) testimony and is therefore permissible. *See also Pecover*, 2012 WL 951255, at \*3 (finding deposition of prior 30(b)(6) witness in his individual capacity "would not be unreasonably duplicative" in part because "the topics that plaintiffs intend[ed] to cover during the deposition were not covered during [his] deposition as [the] [30](b)(6) witness").

**D.    A Limited Remote Deposition Is Neither Disproportional to the Needs of the Case Nor Unduly Burdensome to Elias or BVHE.**

To the extent the Court even considers them, BVHE's baseless undue burden and proportionality arguments should be rejected. A deposition of no more than

---

notice categories are simply the basic informational categories that a corporate representative should familiarize herself with to competently answer questions on behalf of the entity—they do not serve as handcuffs to limit the examiner from asking, for example, basic foundational questions about the deponent or the entity itself.").

four hours taken by remote means imposes no undue burden on Elias.  But, more importantly, "[BVHE's] arguments about any burden to [Elias] are not [BVHE's] to make."  *H.I.S.C, Inc. v. Franmar Int'l Importers, Ltd.*, 2018 WL 2095738, at *3 (S.D. Cal. May 7, 2018).

As to proportionality, as part of the supplemental discovery process ordered by the Court, DLI has served only 11 and 12 supplemental discovery requests on BVHE and Defendant Walt Disney Studios Motion Pictures ("WDSMP"), respectively, and has taken two four-hour depositions, one of each defendant's corporate designee.  DLI narrowed its other supplemental discovery requests to just four requests directed to each of four Defendants.  Malick Decl., Ex. 4 (correspondence from DLI to Defendants) at 2–3.

To say that a limited deposition of a witness with exclusive knowledge is not "proportional to the needs of the case" strains credulity.  Through their belated motion for partial summary judgment, BVHE and WDSMP seek to eliminate tens of millions of dollars in potential liability from this lawsuit.  A deposition of a witness uniquely qualified to testify about how BVHE's distribution of *Toy Story 3* DVDs bolstered and/or benefited from sales of Lots-o'-Huggin' Bear merchandise can thus hardly be considered "disproportional" to needs of the case. Rather, such a deposition is squarely within the bounds of the supplemental discovery permitted by the Order.

Dated:  July 16, 2025

HUESTON HENNIGAN LLP

By: */s/ Robert N. Klieger*
Robert N. Klieger
Attorneys for Defendants

Dated:  July 16, 2025                    DTO LAW


                                    By:  _/s/ William A. Delgado_
                                         William A. Delgado
                                         Attorneys for Plaintiff
                                         DIECE-LISA INDUSTRIES, INC.

JOINT STIPULATION ON DEFENDANT'S MOTION TO QUASH