1  Robert N. Klieger, State Bar No. 192962
   rklieger@hueston.com
2  HUESTON HENNIGAN LLP
3  523 West 6th Street, Suite 400
   Los Angeles, California 90014
4  Telephone: (213) 788-4340
   Facsimile: (888) 775-0898
5
6  Attorneys for Defendants

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  DIECE-LISA INDUSTRIES, INC.,          Case No. 2:20-CV-09147-TJH-JCx

12              Plaintiff,                **DEFENDANTS WALT DISNEY
                                          STUDIOS MOTION PICTURES AND
13      vs.                               BUENA VISTA HOME
                                          ENTERTAINMENT, INC.'S NOTICE
14  DISNEY ENTERPRISES, INC., et al.,     OF MOTION AND MOTION FOR
                                          RECONSIDERATION OF THE
15              Defendants.               COURT'S JANUARY 20, 2026
                                          ORDER AND ALTERNATIVE
16                                        REQUEST FOR CERTIFICATION
                                          UNDER 28 U.S.C. § 1292(b)**
17
                                          Judge:      Hon. Terry J. Hatter Jr.
18                                        Courtroom: 9C
19                                        Date:       April 6, 2026
                                          Time:       UNDER SUBMISSION
20

21

22

23

24

25

26

27

28

_____
MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 6, 2026 in Courtroom 9C of the above-entitled Court, or as soon thereafter as the matter may be heard, Defendants Walt Disney Studios Motion Pictures ("WDSMP") and Buena Vista Home Entertainment, Inc. ("BVHE") will and hereby do move the Court for reconsideration of its January 20, 2026 Order (Dkt. 448) denying their motion for partial summary judgment or, in the alternative, for certification of a controlling question of law pursuant to 28 U.S.C. § 1292(b).

WDSMP and BVHE seek reconsideration pursuant to Federal Rule of Civil Procedure 54(b), Local Rule 7-18, and the Court's inherent authority, including based on the Court's manifest failure to consider the material (and dispositive) fact that neither WDSMP nor BVHE used the "Lots-o'-Huggin' Bear" name to identify the source of the *Toy Story 3* movie, which is the only "good" they distributed. Under *Jack Daniel's Props., Inc. v. VIP Products LLC*, 599 U.S. 140 (2023), and *Hara v. Netflix, Inc.*, 146 F.4th 872 (9th Cir. 2025), those facts alone trigger application of *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and compel dismissal of Plaintiff's claims against both WDSMP and BVHE.

If the Court declines to reconsider its ruling, WDSMP and BVHE alternatively request that the Court certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) the question of whether a defendant that makes expressive use of a name in a movie or television show is barred from invoking *Rogers* because its corporate affiliates use the same name to sell merchandise based on the movie or show. Certification is warranted because this is a novel issue of law on which there are substantial grounds for difference of opinion, and immediate resolution of the question will materially advance the ultimate termination of this litigation.

This Motion is based on this notice, the attached memorandum of points and authorities, and all other papers on file in this action.

1          This Motion is made following a conference of counsel pursuant to Local Rule

2    7-3, which took place on January 27, 2026.

3    Dated: February 3, 2026    HUESTON HENNIGAN LLP

4

5    By: */s/ Robert N. Klieger*_____

6    Robert N. Klieger
     Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1

## TABLE OF CONTENTS

2

Page

3  I.     INTRODUCTION ....................................................................................8

4  II.    BACKGROUND ...................................................................................10

5        A.    Plaintiff's Lanham Act Claims ...............................................10

6
        B.    Original Grant of Summary Judgment and Remand
7              Following Jack Daniel's ...........................................................10

8
        C.    Renewed Motion for Summary Judgment............................11
9
        D.    WDSMP and BVHE's Motion for Partial Summary
10             Judgment....................................................................................12

11
        E.    The Court's January 20, 2026 Order ...................................13
12
13  III.   LEGAL STANDARD............................................................................13

14  IV.    ARGUMENT ........................................................................................15

15       A.    The Dispositive Question Under Jack Daniel's and Hara is
               Whether WDSMP and BVHE Used the "Lots-o'-Huggin'
16             Bear" Name to Designate the Source of the Movie...........15

17
        B.    The Court Should Reconsider Its Denial of Partial
18             Summary Judgment ................................................................18

19
        C.    In the Alternative, the Court Should Certify the Ruling for
20             Interlocutory Appeal ..............................................................22

21             1. There Is a Controlling Question of Law ..........................23

22             2. There Are Substantial Ground for Difference of Opinion ...............23

23
               3. Immediate Appeal May Materially Advance Ultimate
24                Termination of the Litigation.........................................25

25  V.     CONCLUSION......................................................................................25

26

27

28

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

4

<u>Cases</u>

5    *Agency for Int'l Dev. & Alliance for Open Soc'y Int'l Inc.*,
6        591 U.S. 430 (2020) ............................................................. 17

7    *Balla v. Idaho State Bd. of Corrections*,
8        869 F.2d 461 (9th Cir. 1989) ................................................. 13

9    *Brown v. Elec. Arts, Inc.*,
10        724 F.3d 1235 (9th Cir. 2013) ............................................... 21

11    *Calise v. Meta Platforms, Inc.*,
12        2026 WL 61483 (N.D. Cal. Jan. 8, 2026) ............................... 25

13    *City of L.A. v. Santa Monica Baykeeper*,
14        254 F.3d 882 (9th Cir. 2001) ................................................. 14

15    *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*,
16        604 U.S. 321 (2025) ........................................................*passim*

17    *Diece-Lisa Indus., Inc. v. Disney Store USA, LLC*,
18        2022 WL 2072727 (9th Cir. June 9, 2022) ............................. 11

19    *Estate of Risher v. City of L.A.*,
20        2023 WL 5506005 (C.D. Cal. Jul. 10, 2023) .......................... 14

21    *Fred Segal, LLC v. Cormackhill, LP*,
22        821 F. App'x 783 (9th Cir. 2020) .......................................... 19

23    *Hara v. Netflix, Inc.*,
24        146 F.4th 872 (9th Cir. 2025) .........................................*passim*

25    *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
26        22 F.4th 1125 (9th Cir. 2022) ........................................... 14, 23

27    *In re Cement Antitrust Litig. (MDL 296)*,
28        673 F.2d 1020 (9th Cir. 1981) ............................................... 14

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1

## TABLE OF AUTHORITIES (cont.)

2

Page(s)

3 *In re Michaels Stores, Inc., Wage & Hour Employment Practices Litig.,*

4     2014 WL 12604981 (C.D. Cal. Sept. 15, 2014)........................................25

5 *Irritated Residents v. Fred Schakel Dairy,*

6     634 F. Supp. 2d 1081 (E.D. Cal. 2008)..................................................23

7 *Jack Daniel's Props., Inc. v. VIP Products LLC,*

8     599 U.S. 140 (2023) ...............................................................*passim*

9 *Landmark Am. Ins. Co. v. Taisei Constr. Corp.,*

10     2022 WL 17002157 (C.D. Cal. Sept. 30, 2022)....................................20

11 *MGA Entm't Inc. v. Harris,*

12     2025 WL 3691978 (C.D. Cal. Nov. 20, 2025) .....................................24

13 *Peralta v. Dillard,*

14     744 F.3d 1076 (9th Cir. 2014)...............................................................19

15 *Reese v. BP Exploration (Alaska) Inc.,*

16     643 F.3d 681 (9th Cir. 2011).........................................................14, 24

17 *Rocky Mt. Farmers Union v. Corey,*

18     913 F.3d 940 (9th Cir. 2019)................................................................19

19 *Rogers v. Grimaldi,*

20     875 F.2d 994 (2d Cir. 1989)..........................................................*passim*

21 *SEC v. Mercury Interactive, LLC,*

22     2011 WL 1335733 (N.D. Cal. Apr. 7, 2011) .......................................25

23 *Seneca v. Homeaglow, Inc.,*

24     2025 WL 3038592 (C.D. Cal. Sept. 23, 2025)......................................19

25 *Twentieth Century Fox Television v. Empire Distrib., Inc.,*

26     875 F.3d 1192 (9th Cir. 2017)...............................................................16

27 *U.S. v. Woodbury,*

28     263 F.2d 784 (9th Cir. 1959).................................................................23

1

<u>TABLE OF AUTHORITIES (cont.)</u>

2

<u>Page(s)</u>

3

4

*VIP Products LLC v. Jack Daniel's Properties, Inc.*,
   2021 WL 5710730 (D. Ariz. Oct. 8, 2021) ............................................................. 11

5

6

<u>Statutes</u>

7

28 U.S.C. § 1292 ...................................................................................................*passim*

8

<u>Rules</u>

9

Federal Rule of Civil Procedure 54................................................................2, 13, 22

10

L.R. 7-18.........................................................................................................2, 13, 14, 22

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

## I.    **<u>INTRODUCTION</u>**

On January 20, 2026, the Court denied WDSMP and BVHE's motion for partial summary judgment, holding that the Court's May 1, 2024 Order "remains law of the case" and bars the application of *Rogers*.  Dkt. 448 at 10.  The May 1, 2024 Order, however, made no finding as to whether either WDSMP or BVHE used the "Lots-o'-Huggin' Bear" name to identify the source of the *Toy Story 3* movie.  Under *Jack Daniel's* and *Hara*, the answer to *that* question is dispositive of whether *Rogers* applies.  By improperly invoking law of the case, the Court altogether failed to consider WDSMP and BVHE's uncontroverted showings that they merely distributed a movie in which the allegedly infringing name was spoken once as the name of a character, and that they had no role in the distribution or sale of merchandise based on the movie.

In deciding whether *Rogers* applies, the Supreme Court's ruling in *Jack Daniel's* requires the Court to consider whether "the accused infringer has used a trademark to designate the source of its own goods."  *Jack Daniel's*, 599 U.S. at 145.  The only "good" that either WDSMP or BVHE distributed is the *Toy Story 3* movie.  In *Hara*, the Ninth Circuit applied *Jack Daniel's* in the context of an expressive work—in that case, a television show—and held that *Rogers* governs absent a showing that the defendant used the allegedly infringing mark to designate the source of *the expressive work itself*.  Plaintiff cannot make that showing here.

The Court nonetheless declined to apply *Rogers* to Plaintiff's claims against WDSMP and BVHE based on its earlier finding that the Disney Defendants collectively had used the "Lots-o'-Huggin' Bear" name, at least in part, to designate the source of *the character* for the purpose of selling merchandise, and that WDSMP and BVHE's distribution of the movie contributed to the alleged reverse confusion.  With respect to WDSMP and BVHE, however, the only pertinent question was whether they used the name to designate the source of *the movie.*  The Court improperly failed to consider the evidence establishing that they did not.

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1    Importantly, under *Jack Daniel's* and *Hara*, the *Rogers* test applies to the use
2  of an allegedly infringing mark in the title or content of an expressive work *even if*
3  that use contributes to alleged consumer confusion.  The entire purpose of the *Rogers*
4  test is to exempt expressive works from the typical likelihood of confusion inquiry
5  absent a showing that the defendant's use of the mark was *explicitly misleading* or
6  had no artistic relevance to the underlying work.  The Court has already correctly
7  determined that Plaintiff cannot make either of those showings.  *See* Dkt. 357 at 5-6.

8    The Court appears to have determined the applicability of *Rogers* at an
9  enterprise level, taking into consideration the activities not only of WDSMP and
10  BVHE, but also those of *other* subsidiaries of The Walt Disney Company.  However,
11  absent a basis for veil-piercing or vicarious or contributory liability—*none* of which
12  Plaintiff has even alleged, much less undertaken to prove—the Court is required to
13  analyze each defendant standing alone.  Six months *after* WDSMP and BVHE filed
14  their partial summary judgment motion, the Supreme Court held in *Dewberry Grp.,*
15  *Inc. v. Dewberry Eng'rs Inc.*, 604 U.S. 321 (2025), that the Lanham Act respects
16  bedrock principles of corporate separateness, regardless of corporate affiliations.
17  Common ownership is insufficient to justify disregarding corporate separateness for
18  purposes of the *Rogers* analysis.

19    A failure by the Court to reconsider its January 20, 2026 Order will have
20  profoundly adverse implications for the motion picture and television industry.  That
21  ruling precludes application of *Rogers* with respect to a defendant's wholly
22  expressive use of a mark in a movie or television show if the defendant's corporate
23  affiliates used the same mark for merchandising based on the movie or show.
24  Because merchandising is exceedingly common across all media, this effectively
25  eviscerates *Rogers* and subjects movies, television shows, and other expressive
26  works to expensive and protracted litigation, thereby chilling the exercise of the very
27  First Amendment rights that *Rogers* is designed to protect.

28

1    If the Court declines to reconsider its ruling, and in view of the critical

2  importance of this issue, WDSMP and BVHE respectfully request that the Court

3  certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) the question of

4  whether a defendant that makes expressive use of a name in a movie or television

5  show is barred from invoking *Rogers* because its corporate affiliates use the same

6  name to sell merchandise based on the movie or show.  This is a novel issue of law

7  on which fair-minded jurists may disagree.  If the Ninth Circuit holds that *Rogers*

8  does apply to Plaintiff's claims against WDSMP and BVHE, they will be dismissed

9  from the case, nearly two-thirds of Plaintiff's claimed damages will fall away, and a

10  settlement with respect to the remaining defendants is likely.  Interlocutory appeal is

11  appropriate under these circumstances.

12  **II.    BACKGROUND**

13     **A.    Plaintiff's Lanham Act Claims**

14     Plaintiff owns a U.S. trademark registration for LOTS OF HUGS in

15  International Class 28, for use on "toys, namely, puppets."  USPTO Reg. No.

16  3,361,849 (the "Mark").  In 2012, Plaintiff filed this action in the Eastern District of

17  Texas, alleging that the Disney Defendants infringed that trademark in connection

18  with the distribution of a movie, *Toy Story 3*, which included a character named

19  "Lots-o'-Huggin' Bear," and through sales of character-related merchandise.  The

20  case was eventually transferred to this Court in October 2020, and Plaintiff thereafter

21  filed its Fifth Amended Complaint, alleging claims for trademark infringement and

22  unfair competition.  Dkt. 325.

23     **B.    Original Grant of Summary Judgment and Remand Following *Jack**

24          ***Daniel's***

25     The Disney Defendants moved for summary judgment or, in the alternative,

26  summary adjudication on various grounds, including that Plaintiff's claims were

27  barred under the Ninth Circuit's *Rogers* case law.  Dkt. 332.  On July 7, 2021, this

28  Court granted summary judgment under *Rogers* and therefore did not reach the

alternative grounds for the motion.  Dkt. 357.  The Ninth Circuit affirmed.  *See Diece-Lisa Indus., Inc. v. Disney Store USA, LLC*, 2022 WL 2072727 (9th Cir. June 9, 2022).

Plaintiff filed a petition for a writ of certiorari to the Supreme Court.  Also pending before the Supreme Court at that time was an appeal from the Ninth Circuit's summary affirmance of the decision in *VIP Products LLC v. Jack Daniel's Properties, Inc.*, 2021 WL 5710730 (D. Ariz. Oct. 8, 2021), in which the district court had extended *Rogers* to an infringement claim in connection with an ordinary consumer product (a dog toy).  On June 8, 2023, the Supreme Court reversed that ruling in a narrow decision that precludes application of *Rogers* where the defendant uses the allegedly infringing mark to identify the source of its own goods.  *See Jack Daniel's*, 599 U.S. at 159-60.  The Supreme Court then granted Plaintiff's cert petition and remanded this case for further consideration in light of *Jack Daniel's*.

### C.   Renewed Motion for Summary Judgment

The Disney Defendants renewed their motion for summary judgment.  Dkt. 382-1 at 8-12.  In its May 1, 2024 Order denying that motion[1], the Court explained that the *Rogers* test *does* apply where a defendant uses a mark "only as expressive content," but that it *does not* apply where a defendant uses a mark, "at least in part, to designate the source of goods."  Dkt. 386 at 10-11.  Addressing the Disney Defendants collectively, the Court held that because their "use of a modified version of Mark designated, at least in part, the source of the Disney Defendants' Lots-o'-Huggin' Bear, and because that use was done, at least in part, to sell, *inter alia*, books, video[ ] games and toys," *Rogers* did not apply to bar liability.  *Id.* at 11.

---

[1] The Court granted the motion only with respect to Disney Consumer Products, Inc. and Disney Enterprises, Inc.'s contention that the claims against them were time barred as to alleged infringements that occurred before February 12, 2017.  Dkt. 386 at 24.

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1    WDSMP and BVHE filed a motion for reconsideration of that ruling, arguing

2    that the Court had failed to consider the material fact that their only nexus to  "Lots-

3    o'-Huggin' Bear" was distribution of *Toy Story 3* theatrically and on home video.

4    Dkt. 387.  The Court denied that motion on the grounds that, in the renewed motion

5    for summary judgment, "the Disney Defendants referred to themselves collectively"

6    and "did not set forth a separate argument as to the use of Lots-o'-Huggin' Bear by

7    [BVHE] and [WDSMP]."  Dkt. 393 at 6.  The Court recognized, however, that "this

8    is a complicated case with evolving issues" and that "the Disney Defendants might

9    not have foreseen the issue raised in the instant motion before it received the Court's

10    May 1, 2024, order."  *Id.*  The Court therefore stated that it would "entertain a

11    motion for partial summary judgment by [BVHE] and [WDSMP] limited to whether

12    the Rogers test is applicable to their use of Lots-o'-Huggin' Bear."  *Id.*

13    **D.    WDSMP and BVHE's Motion for Partial Summary Judgment**

14    WDSMP and BVHE promptly filed the invited motion for partial summary

15    judgment.  Dkt. 398.  WDSMP and BVHE argued that *Rogers* applied to Plaintiff's

16    claims against them, which were based solely on their distribution of a movie in

17    which "Lots-o'-Huggin' Bear" is spoken just once, as a character name.  Dkt. 398.

18    Plaintiff sought leave under Rule 56(d) to take additional discovery that it argued

19    would show that WDSMP and BVHE were involved in and derived revenues from

20    sales of character-based merchandise.  Dkt. 400 at 15-18; Dkt. 400-3 at 3-6.  The

21    Court granted that request.  Dkt. 412.

22    Over the next five months, Plaintiff propounded requests for production,

23    requests for admission, and interrogatories to WDSMP and BVHE; deposed

24    WDSMP's Matthew Kalavsky and BVHE's Jennifer Lourie, both individually and as

25    corporate representatives; deposed a former BVHE executive, Lori Elias, regarding

26    the marketing and distribution of *Toy Story 3* on DVD and Blu-ray; and propounded

27    additional written discovery to the non-moving defendants.  Dkt. 446-1 at 2-4.  That

28    discovery confirmed that WDSMP and BVHE's involvement in *Toy Story 3* was

- 12 -
MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1  limited to their distribution of *the movie*, and that they made no use whatsoever of

2  the "Lots-o'-Huggin' Bear" name to identify its source.

3     In its opposition to the motion for partial summary judgment, Plaintiff

4  *conceded* that WDSMP and BVHE "merely distributed the *Toy Story 3* film to

5  theaters and [home video] retailers and did not distribute or sell any infringing

6  merchandise." Dkt. 435 at 5.  Plaintiff therefore pivoted to a new argument, which

7  was that "*Toy Story 3* served, in part, as an advertisement for related merchandise."

8  *Id.*  As WDSMP and BVHE explained in their reply in support of the motion, that

9  argument finds no support in the Supreme Court and Ninth Circuit's First

10  Amendment jurisprudence.  Dkt. 446 at 18-20.

11     **E.    The Court's January 20, 2026 Order**

12     The Court's January 20, 2026 Order denying WDSMP and BVHE's motion

13  for partial summary judgment did not consider the evidence that had been adduced

14  over five months of discovery following its grant of Plaintiff's Rule 56(d) request.

15  Instead, the Court stated that it had already determined in its May 1, 2024 Order that

16  "the Disney Defendants' use of a modified version of the Mark designated, at least in

17  part, the source of the Disney Defendants' Lots-o'-Huggin' Bear, and because that

18  was done, at least in part, to sell, *inter alia*, books, video[ ] games and toys, the

19  *Rogers* test is no longer applicable, here, to bar liability." Dkt. 448 at 10.  The Court

20  stated "[t]hat holding applied to all of the Disney Defendants – which are all

21  subsidiaries of the Walt Disney Company," and constituted law of the case.  *Id.*

22  Because "[e]ach of the Disney Defendants, including [BVHE] and [WDSMP] had a

23  role in the production and distribution of Toy Story 3 and the resulting alleged

24  reverse confusion," the Court declined to revisit its earlier ruling.  *Id.*

25  **III.  <u>LEGAL STANDARD</u>**

26     Federal Rule of Civil Procedure 54(b) "explicitly grant[s] courts the authority

27  to modify their interlocutory orders."  *Balla v. Idaho State Bd. of Corrections*, 869

28  F.2d 461, 465 (9th Cir. 1989).  Similarly, Local Rule 7-18, provides that a party may

move for reconsideration on any of three bases: (1) the existence of a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known at the time of the Court's original decision; (2) the emergence of new material facts or a change of law; or (3) a manifest showing of a failure to consider material facts.  L.R. 7-18.  "But Local Rule 7-18 is not a limit on this Court's otherwise broad discretion to reconsider its prior rulings," and the Court may "exercise its inherent authority to rescind a prior order for a reason it deems sufficient."  *Estate of Risher v. City of L.A.*, 2023 WL 5506005, at *4 (C.D. Cal. Jul. 10, 2023).  "As long as a district court has jurisdiction over the case, then it possesses inherent procedural power to reconsider, rescind or modify an interlocutory order for cause seen by it to be sufficient."  *City of L.A. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) (cleaned up).

To certify a ruling for interlocutory appeal, the district court "must determine that the order meets the three certification requirements outlined in § 1292(b): '(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion [as to that question], and (3) that an immediate [resolution of that question] may materially advance the ultimate termination of the litigation."  *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *In re Cement Antitrust Litig. (MDL 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981)).  "The 'substantial grounds' prong is satisfied when 'novel legal issues are presented, on which fair-minded jurists might reach contrary conclusions.'"  *Id.* (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)).  "[T]he 'materially advance' prong is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings."  *Id.* (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1027)).

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1    **IV.    ARGUMENT**

2         **A.    The Dispositive Question Under *Jack Daniel's* and *Hara* is Whether**

3              **WDSMP or BVHE Used the "Lots-o'-Huggin' Bear" Name to**

4              **Designate the Source *of the Movie***

5         WDSMP and BVHE's partial summary judgment motion presented a single,

6    dispositive question: Did either WDSMP or BVHE use the "Lots-o'-Huggin' Bear"

7    name to identify the source of the *Toy Story 3* movie that they distributed theatrically

8    and on home video?  If WDSMP and BVHE *did* use the name to identify the source

9    of the movie, Plaintiff's claims against them could proceed to trial under a traditional

10   likelihood of confusion analysis.  Conversely, if WDSMP and BVHE *did not* use the

11   name to identify the source of the movie, *Rogers* applies and altogether bars liability.

12        This straightforward inquiry derives directly from *Jack Daniel's* and *Hara*.

13   Under *Jack Daniel's*, the critical question is whether "the accused infringer has used

14   a trademark to designate the source of its own goods."  *Jack Daniel's*, 599 U.S. at

15   144.  The Supreme Court provided the following hypothetical:

16        Suppose a filmmaker uses a Louis Vuitton suitcase to convey
          something about a character (he is the kind of person who wants to be
17        seen with the product but doesn't know how to pronounce its name).
          Now think about a different scenario: A luggage manufacturer uses an
18        ever-so-slightly modified LV logo to make inroads in the suitcase
19        market.

20   *Id.* at 157 (internal citation omitted).  Because the filmmaker did not use the Louis

21   Vuitton mark to designate the source of the movie, the claim against the filmmaker is

22   governed, and barred, by *Rogers*.  *Id.*  But the luggage manufacturer, which used a

23   modified version of the mark to designate the source of its suitcases, may not invoke

24   *Rogers* and must instead proceed under the traditional likelihood of confusion

25   inquiry.  *Id.*  The availability of *Rogers* thus depends on the particular good or

26   service that the defendant distributes or sells.

27        In *Hara*, the defendant, Netflix, distributed an animated television show

28   entitled *Q-Force*.  *Hara*, 146 F.4th at 874.  The plaintiff, a well-known drag queen,

1    claimed infringement based on the use of her likeness in the show.  *Id.*  The case

2    presented "a straightforward, but nonetheless novel, question of law: In light of the

3    Supreme Court's narrow decision in *Jack Daniel's*, does the *Rogers* test apply to a

4    trademark claim involving an animated television series where the allegedly

5    infringing mark was not used to designate the source or origin of the show?"  *Id.*

6    (internal citation omitted).  The Ninth Circuit answered that question in the

7    affirmative.  Because the particular "good" that Netflix distributed was the television

8    show, and Netflix did not use the plaintiff's mark to identify the source of the show,

9    *Rogers* applied and barred liability.  *Id.* at 882.[2]

10        Because *Jack Daniel's* and *Hara* were single-defendant cases, neither involved

11   a situation in which one defendant used a mark in a television show or other

12   expressive work and a different defendant used the same mark in connection with

13   sales of consumer products.  However, as the Supreme Court held just last year in

14   *Dewberry*, the Lanham Act respects "bedrock" principles of corporate law that

15   require even affiliated companies be treated as separate legal units.  *Dewberry*, 604

16   U.S. at 327.  The plaintiff in *Dewberry* sued a commercial real estate company,

17   Dewberry Group, that provided services to nearly 30 separately-incorporated

18   affiliates.  *Id.* at 324.  The district court found that the Dewberry Group's

19   infringement of the plaintiff's trademark generated nearly $43 million in profits for

20   its affiliates.  *Id.* at 325.  Dewberry Group argued that the district court could

21   consider only Dewberry Group's own profits, and not those of its affiliates, in

22

23   _____

     [2] The Ninth Circuit held that *Rogers* applied not only to Netflix's distribution of the

24   show itself, but also to its use of the plaintiff's likeness in connection with
     promotional activities for the show, including in teasers and still images used to

25   advertise the show.  *Id.* at 882.  The Ninth Circuit further reaffirmed its holding in
     *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir.

26   2017), that the *Rogers* test also applies to promotional sales of consumer goods.
     *Hara*, 146 F.4th at 882 (citing *Empire*, 875 F.3d at 1196).  Because neither WDSMP

27   nor BVHE sold any consumer goods, they do not rely on that portion of the *Hara*

28   decision.

1  fashioning an award.  *Id.*  The district court disagreed, finding that treating the

2  companies separately would allow the "entire Dewberry Group enterprise" to evade

3  the consequences of infringement.  *Id.*  A divided Court of Appeals panel affirmed,

4  finding that the "economic reality" of Dewberry Group's relationship with its

5  affiliates supported treating them as single enterprise.  *Id.* at 325-26.

6      The Supreme Court reversed, holding that the Lanham Act requires courts to

7  treat "separately incorporated organizations [as] separate legal units with distinct

8  legal rights and obligations."  *Id.* at 327 (*quoting Agency for Int'l Dev. & Alliance for*

9  *Open Soc'y Int'l Inc.*, 591 U.S. 430, 435 (2020)).  "And that is so even if the entities

10  are affiliated—as they are here by virtue of having a common owner."  *Id.*  The

11  Supreme Court acknowledged that the success of the "overall business" of Dewberry

12  Group and its affiliates derived, at least in part, from Dewberry Group's infringement

13  of the plaintiff's mark.  *Id.* at 324.  However, that economic reality "cannot justify

14  ignoring the distinction between a corporate defendant (*i.e.*, Dewberry Group) and its

15  separately incorporated affiliates."  *Id.* at 329.  Absent a basis for veil-piercing,

16  Dewberry Group could be liable only for its *own* profits attributable to the

17  infringement (of which there were none) and not those of its affiliates.  *Id.* at 328-29.

18      Although *Dewberry* arose in the context of a disgorgement remedy, the

19  Supreme Court's reasoning applies equally to liability determinations under the

20  Lanham Act.  Unless the plaintiff "make[s] the showing needed for veil-piercing,"

21  the liability of each defendant must be determined based on that defendant's *own*

22  conduct, and not that of its corporate affiliates.  *Id.* at 327.  In the instant case, this

23  means that the Court could properly consider *only* WDSMP and BVHE's use of the

24  "Lots-o'-Huggin' Bear" name, and not the conduct of the other Disney Defendants,

25  in deciding whether *Rogers* applies.  Plaintiff has never argued veil-piercing, or even

26  contributory or vicarious liability.  Instead, the Fifth Amended Complaint explicitly

27  seeks to hold WDSMP liable solely for "use of Lots-o'-Huggin' Bear in the *Toy*

28  *Story 3* movie," and to hold BVHE liable solely for "use of Lots-o'-Huggin' Bear in

- 17 -

the *Toy Story 3* DVDs and Blu-Rays." Dkt. 325 at 26. There has been no allegation or showing that WDSMP or BVHE sold toys, or derived revenue from anything other than the movie itself. The dispositive question, therefore, is whether WDSMP or BVHE used the "Lots-o'-Huggin' Bear" name to identify the source of the movie—the only thing they distributed, and the core of the First Amendment protections of *Rogers*. That distinguishes WDSMP and BVHE from the other Disney Defendants, to whom this motion does not apply.

**B.    The Court Should Reconsider Its Denial of Partial Summary Judgment**

In view of that straightforward inquiry, there can be little doubt that the Court should have considered the fact that neither WDSMP nor BVHE used the "Lots-o'-Huggin' Bear" name to identify the source of the *Toy Story 3* movie, which is the only "good" they distributed. Plaintiff *conceded* that WDSMP and BVHE "merely distributed the *Toy Story 3* film to theaters and [home video] retailers and did not distribute or sell any infringing merchandise." Dkt. 435 at 5. And Plaintiff adduced no evidence whatsoever that the character's name, spoken just once during the movie's 103-minute run time, was used by WDSMP or BVHE to identify the source of the movie.[3] Under *Jack Daniel's* and *Hara*, these facts trigger *Rogers* and are dispositive of Plaintiff's claims.

The Court, however, declined to consider these facts in view of its May 1, 2024 Order denying the Disney Defendants' renewed motion for summary judgment, in which the Court held that "the Disney Defendants' use of a modified version of the Mark designated, at least in part, the source of the Disney Defendants' Lots-o'-

---

[3] To the contrary, the source of *Toy Story 3* is explicitly identified in the very first minute of the movie as Walt Disney Pictures and Pixar Animation Studios. Dkt. 332-23 (*Toy Story 3* DVD). It is wholly implausible that audiences would perceive the name of a secondary character, spoken for the first and only time more than 20 minutes into *Toy Story 3*, to designate the movie's source.

1  Huggin' Bear, and because that use was done, at least in part, to sell, *inter alia*,
2  books, video[ ] games and toys, the *Rogers* test is no longer applicable, here, to bar
3  liability." Dkt. 448 at 10. The Court regarded that finding as law of the case and
4  declined to reconsider it. *Id.* There are three fundamental problems with that
5  analysis:

6      *First*, "the denial of a summary judgment motion is never law of the case."
7  *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014). This is true even where the
8  district court "clearly intended to decide the issues at hand." *Fred Segal, LLC v.*
9  *Cormackhill, LP*, 821 F. App'x 783, 786 (9th Cir. 2020). The Court's May 1, 2024
10 Order denying the Disney Defendants' motion for summary judgment under *Rogers*
11 cannot be law of the case for this reason alone.

12      *Second*, neither the quoted language nor any other portion of the Court's May
13 1, 2024 Order made a finding that the Disney Defendants, or any of them, used the
14 "Lots-o'-Huggin' Bear" name to identify the source of the *Toy Story 3* movie. It is
15 well established that law of the case applies only to issues that were actually
16 considered and decided by the Court in its prior decision. *See Rocky Mt. Farmers*
17 *Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019); *see Seneca v. Homeaglow, Inc.*,
18 2025 WL 3038592, at *3-5 (C.D. Cal. Sept. 23, 2025). The Court's May 1, 2024
19 Order found that the Disney Defendants' use of the "Lots-o'-Huggin' Bear" name
20 designated, at least in part, the source of Lots-o'-Huggin' Bear—*i.e.*, *the character*.
21 However, the Court made no finding, express or implied, that either WDSMP or
22 BVHE used the name, even in part, to designate the source of *the movie*.

23      Indeed, it was the absence of a finding regarding WDSMP and BVHE's use of
24 the "Lots-o'-Huggin' Bear" name that prompted their motion for reconsideration of
25 the May 1, 2024 Order. Dkt. 387. In denying that motion, the Court explained that
26 "the Disney Defendants [had] referred to themselves collectively" in their renewed
27 motion for summary judgment, and had "not set forth a separate argument as to the
28 use of Lots-o'-Huggin' Bear by [BVHE] and [WDSMP]." Dkt. 393 at 6. The Court

1    recognized, however, that "this is a complicated case with evolving issues" that

2    WDSMP and BVHE "might not have foreseen … before [they] received the Court's

3    May 1, 2024, order," and the Court therefore invited WDSMP and BVHE to file "a

4    motion for partial summary judgment … limited to whether the Rogers test is

5    applicable to **their** use of Lots-o'-Huggin' Bear." *Id.* (emphasis added).  That

6    invitation is incompatible with the Court's subsequent invocation of law of the case.

7    *See Landmark Am. Ins. Co. v. Taisei Constr. Corp.*, 2022 WL 17002157, at *6 (C.D.

8    Cal. Sept. 30, 2022) ("That a party could have raised an argument [in the earlier

9    motion] does not create an implicit ruling against that party's argument that then

10    becomes law of the case.").  Had the Court already considered and determined that

11    WDSMP and BVHE used the "Lots-o'-Huggin' Bear" name to designate the source

12    of the movie, there would have been no reason to entertain a further motion on

13    precisely that issue.

14          WDSMP and BVHE filed the partial summary judgment motion invited by the

15    Court, and each made an uncontroverted showing that it simply distributed a movie

16    in which "Lots-o'-Huggin' Bear" was spoken once as the name of a secondary

17    character introduced for the first time in *Toy Story 3*.  Even after the Court granted

18    Plaintiff's Rule 56(d) request for additional discovery, Plaintiff failed to adduce *any*

19    evidence that moviegoers perceived the character's name as identifying the source of

20    the movie.  The Court altogether failed to consider these facts in its January 20, 2026

21    Order and instead reverted to the May 1, 2024 collective analysis—precisely what

22    the Court had earlier recognized needed to be revisited on a defendant-specific basis

23    when it invited WDSMP and BVHE's targeted motion for partial summary

24    judgment.  The facts that the Court failed to consider are not only material but

25    dispositive, and they compel dismissal of Plaintiff's claims against WDSMP and

26    BVHE under *Rogers*.

27          *Third*, the Court also did not find in its May 1, 2024 Order that WDSMP and

28    BVHE sold "*inter alia*, books, video[ ] games and toys."  Dkt. 386 at 11.  Instead, the

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1    Court found that the use of "Lots-o'-Huggin' Bear" in a movie distributed by
2    WDSMP and BVHE may have contributed to the alleged reverse confusion.  *Id.*
3    However, that is not the relevant inquiry under *Jack Daniel's* and *Hara*.  The
4    dispositive question is whether WDSMP and BVHE used the "Lots-o'-Huggin'
5    Bear" name to designate the source or origin of the goods *they* distributed.  *Jack*
6    *Daniel's*, 599 U.S. at 144; *Hara*, 146 F.4th at 874.  The evidence was
7    uncontroverted, and Plaintiff in fact conceded, that WDSMP and BVHE distributed
8    *only* the *Toy Story 3* movie, and that they "did not distribute or sell any infringing
9    merchandise."  Dkt. 435 at 5.  *Rogers* therefore controls and requires dismissal of the
10   claims against WDSMP and BVHE.  *See Hara*, 146 F.4th at 877 ("When the alleged
11   infringement involves the title or some other aspect of an expressive work … we
12   employ the *Rogers* test to determine whether the Lanham Act applies.").

13           The Court's statement that "[e]ach of the Disney Defendants, including Buena
14   Vista and Walt Disney Studios, had a role in the production and distribution of *Toy*
15   *Story* 3 and the resulting alleged consumer confusion," Dkt. 448 at 10, highlights
16   both the Court's misunderstanding of the controlling law and its failure to consider
17   dispositive evidence.  None of the 14 Disney Defendants had any role in the
18   production of *Toy Story 3*.  WDSMP and BVHE distributed only the movie, a
19   paradigmatic expressive work, which means *Rogers* bars liability *even if* the movie
20   contributed to the alleged reverse confusion.  *See Brown v. Elec. Arts, Inc.*, 724 F.3d
21   1235, 1245-46 (9th Cir. 2013) (explaining that *Rogers* test requires tolerance of
22   confusion in the context of expressive work, as long as the plaintiff's use of a mark
23   was not explicitly misleading).  The other 12 Disney Defendants did *not* distribute
24   the movie, but instead only books, video games, toys, and other consumer products.

25           The Court ignored these distinctions and, because all 14 Disney Defendants
26   are direct or indirect subsidiaries of The Walt Disney Company, effectively treated
27   them as a single enterprise for purposes of the *Rogers* analysis.  That approach finds
28   no support in either the Lanham Act or controlling case law.  Rather, as the Supreme

- 21 -
MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1  Court explained in *Dewberry*—a cases decided six months *after* WDSMP and BVHE

2  filed their partial summary judgment motion—the Lanham Act respects bedrock

3  principles of corporate law, including that "separately incorporated organizations are

4  separate legal units with distinct legal rights and obligations." *Dewberry*, 604 U.S. at

5  327.  Unless a plaintiff makes the showing required for veil-piercing, which Plaintiff

6  has not even attempted here, "the demand to respect corporate formalities remains."

7  *Id.*  Mere affiliation or common ownership is insufficient to justify disregarding

8  corporate separateness for purposes of the *Rogers* analysis.

9      The ramifications of a contrary rule cannot be overstated.  The Court's ruling

10  precludes application of *Rogers* with respect to a defendant's wholly expressive use

11  of a mark in a movie or television show if the defendant's corporate affiliates use the

12  same mark in connection with merchandising based on the movie or show.  Because

13  merchandising is exceedingly common across all media, this effectively eviscerates

14  *Rogers* and subjects movies, television shows, and other expressive works to

15  expensive and protracted Lanham Act litigation, thereby chilling the exercise of the

16  very First Amendment rights that *Rogers* is designed to protect.

17      Accordingly, the Court should reconsider its January 20, 2026 ruling under

18  Rule 54(b), Local Rule 7-18, and the Court's inherent authority based on the

19  uncontroverted fact that neither WDSMP nor BVHE used the "Lots-o'-Huggin'

20  Bear" name to identify the source of the *Toy Story 3* movie, which is the *only* "good"

21  either of them distributed.  Under *Jack Daniel's* and *Hara*, this means that *Rogers* is

22  applicable to Plaintiff's claims against WDSMP and BVHE, and the claims must

23  therefore be dismissed.

24      **C.    In the Alternative, the Court Should Certify the Ruling  for**

25              **Interlocutory Appeal**

26      If the Court denies WDSMP and BVHE's motion for reconsideration, it should

27  nonetheless certify for interlocutory appeal the question of whether a defendant that

28  makes expressive use of a name in a movie or television show is barred from

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1  invoking *Rogers* because its corporate affiliates used the same name to sell
2  merchandise based on the movie or show.  All three requirements set forth in section
3  1292(b) are satisfied, rendering this an appropriate case for interlocutory appeal.

**1.    There Is a Controlling Question of Law**

5      The first section 1292(b) requirement is that the question presented be one of
6  law.  *See ICTSI*, 22 F.4th at 1130; *see Assn'n of Irritated Residents v. Fred Schakel*
7  *Dairy*, 634 F. Supp. 2d 1081, 1092 (E.D. Cal. 2008) ("[T]he appeal must present a
8  clear-cut question of law against a background of established facts.").  That is plainly
9  the case here.  It is uncontroverted that WDSMP and BVHE did not use the "Lots-o'-
10  Huggin' Bear" name to identify the source of the *Toy Story 3* movie, which is the
11  only "good" they distributed.  The only question is whether the use of that same
12  name by WDSMP and BVHE's corporate affiliates to sell merchandise renders the
13  *Rogers* test inapplicable even as to WDSMP and BVHE.  If the Ninth Circuit holds
14  that *Rogers* applies, WDSMP and BVHE will be dismissed from the case.  That
15  renders the question of law "controlling" for purposes of section 1292(b).  *See U.S. v.*
16  *Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959) ("[W]e do not hold that a question
17  brought here on interlocutory appeal must be dispositive of the [entire] lawsuit in
18  order to be regarded as controlling.").

**2.    There Are Substantial Ground for Difference of Opinion**

20      The second section 1292(b) requirement is that there exists a substantial
21  ground for difference of opinion on the question of law for which certification is
22  sought.  The question here is a novel one of first impression.  Defendants are not
23  aware of any case that has addressed whether the *Rogers* analysis must be conducted
24  on a defendant-by-defendant basis in cases involving multiple defendants, where one
25  defendant produces or distributes a movie, television show, or other expressive work
26  and another defendant sells merchandise based on the work.  *Hara* involved a single
27  defendant (Netflix) that distributed an expressive work (the *Q-Force* show).  *Jack*
28  *Daniel's* involved a single defendant (VIP Products) that sold a single consumer

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

1  product (a dog toy).  Neither case addressed how to apply *Rogers* when one

2  defendant simply distributes an expressive work but other defendants within the

3  same corporate family sell consumer products.  The answer to that question has

4  profound implications for the motion picture and television industry.

5        Courts traditionally find substantial ground for difference of opinion exists

6  where novel questions of first impression are presented, particularly when they

7  implicate fundamental constitutional rights.  "A substantial ground for difference of

8  opinion exists where reasonable jurists might disagree on an issue's resolution, not

9  merely where they have already disagreed."  *Reese*, 643 F.3d at 688.  "Stated another

10 way, when novel legal issues are presented, on which fair-minded jurists might reach

11 contradictory conclusions, a novel issue may be certified for interlocutory appeal

12 without first awaiting development of contradictory precedent."  *Id.*; *see MGA*

13 *Entm't Inc. v. Harris*, 2025 WL 3691978, at *3 (C.D. Cal. Nov. 20, 2025) ("[N]o law

14 suggests that a circuit split is required to justify this uncertainty as a substantial

15 ground for difference in opinion.").

16        Whether or not a defendant that makes expressive use of a name in a movie or

17 television show is barred from invoking *Rogers* because its corporate affiliates used

18 the same name to sell merchandise based on the movie or show is one on which fair-

19 minded jurists could reach different conclusions.  That is presumably why the Court

20 invited WDSMP and BVHE to file a partial summary judgment motion focused on

21 their conduct alone.  Although the Court ultimately may not agree with WDSMP and

22 BVHE's position that *Rogers* applies to their use of the "Lots-o'-Huggin' Bear"

23 name in connection with the distribution of the *Toy Story 3* movie, regardless of

24 whether their corporate affiliates used the same name as a source-identifier for

25 merchandise, that is hardly a frivolous position.  As discussed above, WDSMP and

26 BVHE's position finds support in both *Jack Daniel's* and *Hara*, as well as in the

27 bedrock principles of corporate separateness recognized in *Dewberry*.

28

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

### 3.    Immediate Appeal May Materially Advance Ultimate Termination of the Litigation

The final section 1292(b) requirement is that an immediate appeal may materially advance the ultimate termination of the litigation.  An appeal that may remove one or more defendants from a case satisfies this requirement.  *See In re Michaels Stores, Inc., Wage & Hour Employment Practices Litig.*, 2014 WL 12604981, at *3 (C.D. Cal. Sept. 15, 2014).  This is especially true if the dismissal of some but not all defendants may advance the parties' efforts to reach settlement, and thereby accelerate resolution of the entire case.  *See Calise v. Meta Platforms, Inc.*, 2026 WL 61483, at *2 (N.D. Cal. Jan. 8, 2026); *SEC v. Mercury Interactive, LLC*, 2011 WL 1335733, at *3 (N.D. Cal. Apr. 7, 2011).

Both factors are satisfied here.  If the Ninth Circuit rules that *Rogers* applies, WDSMP and BVHE will be dismissed from the case, thereby substantially narrowing the scope of the trial.  Moreover, because WDSMP and BVHE account for more than two-thirds of Plaintiff's claimed damages, their dismissal will likely facilitate settlement with the remaining defendants and result in the termination of the entire case without the time and expense of a trial.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should reconsider its January 20, 2026 Order in light of *Jack Daniel's*, *Hara*, and *Dewberry*, which together establish that the *Rogers* analysis must be conducted on a defendant-by-defendant basis with respect to the particular good or service each defendant distributed, rather than collectively across all corporate affiliates.  Under that framework, WDSMP and BVHE are entitled to summary judgment because they did not use the "Lots-o'-Huggin' Bear" name to identify the source of the *Toy Story 3* movie, which is the only thing they distributed.

In the alternative, the Court should certify the ruling for interlocutory appeal under 28 U.S.C. § 1292(b) because the Order presents a novel and controlling

question of law on which there is substantial ground for difference of opinion and immediate appeal will materially advance the ultimate termination of the litigation.

Dated:  February 3, 2026                    HUESTON HENNIGAN LLP


                                            By:  /s/ Robert N. Klieger
                                                 Robert N. Klieger
                                                 Attorneys for Defendants