Robert N. Klieger, State Bar No. 192962
rklieger@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone:   (213) 788-4340
Facsimile:    (888) 866-4825

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIECE-LISA INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>DISNEY ENTERPRISES, INC., et al.,<br><br>Defendants. | Case No. 2:20-CV-09147-TJH-AYPx<br><br>**DEFENDANTS WALT DISNEY STUDIOS MOTION PICTURES AND BUENA VISTA HOME ENTERTAINMENT, INC.'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JANUARY 20, 2026 ORDER AND ALTERNATIVE REQUEST FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)**<br><br>Judge:        Hon. Terry J. Hatter Jr.<br>Courtroom: 9C<br>Date:         April 6, 2026<br>Time:         UNDER SUBMISSION |

REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................... 1

II.    ARGUMENT ........................................................................................... 3

    A.    The Court Should Reconsider Its January 20, 2026 Order ................... 3

        1.    Plaintiff Concedes that Law of the Case Does Not Apply 3

        2.    Plaintiff Cannot Point to Any Evidence that *Toy Story 3* Infringed Its Trademark ..................................... 5

        3.    Plaintiff's "Movie as Advertisement" Theory Fails .................... 7

        4.    Plaintiff Has Neither Pled Nor Adduced Evidence of Contributory or Vicarious Infringement …................................ 9

    B.    In the Alternative, the Court Should Certify the Ruling for Interlocutory Appeal .............................................................. 10

        1.    The Question is One of Law, Not Fact ..................................... 10

        2.    There Are Substantial Grounds for Difference of Opinion… .................................................................... 12

        3.    Immediate Appeal Will Materially Advance the Termination of the Litigation .................................................. 13

III.    CONCLUSION ...................................................................................... 13

TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Caserta*,
  46 U.S.P.Q.2d 1088 (T.T.A.B. 1998) ..................................................................5

*Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*,
  604 U.S. 321 (2025)...................................................................2, 9, 10, 12

*Dex Media W., Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012)................................................................8

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
  947 F. Supp. 2d 922 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014) ....................................................................................6

*Fred Segal, LLC v. CormackHill, LP*,
  821 F. App'x 783 (9th Cir. 2020) ........................................................3

*In re GO Assocs., LLC*,
  90 F.4th 1354 (Fed. Cir. 2024)..........................................................11

*Hara v. Netflix, Inc.*,
  146 F.4th 872 (9th Cir. 2025)............................................................2, 6

*Hoffman v. Capital Cities/ABC, Inc.*,
  255 F.3d 1180 (9th Cir. 2001)................................................................8

*Hormel Foods Corp. v. Jim Henson Productions, Inc.*,
  73 F.3d 497 (2d Cir. 1996)................................................................5

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022)......................................................11, 13

*IYO, Inc. v. IO Products, Inc.*,
  2025 WL 3471705 (9th Cir. Dec. 3, 2025) ........................................9

*Jack Daniel's Props., Inc. v. VIP Products LLC*,
  599 U.S. 140 (2023)...............................................................1, 2, 12

*Joseph Burstyn, Inc. v. Wilson*,
  343 U.S. 495 (1952)................................................................7

REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

TABLE OF AUTHORITIES (cont.)

Page(s)

*JTH Tax LLC v. AMC Networks Inc.*,
 694 F. Supp. 3d 315 (S.D.N.Y. 2023)......................................................................6

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
 194 F.3d 980 (9th Cir. 1999)..................................................................................10

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*,
 868 F. Supp. 2d 172 (S.D.N.Y. 2012).....................................................................6

*Mattel, Inc. v. MCA Records, Inc.*,
 296 F.3d 894 (9th Cir. 2002)................................................................................7, 9

*In re Michaels Stores, Inc., Wage & Hour Employment Practices Litig.*,
 2014 WL 12604981 (C.D. Cal. Sept. 15, 2014)....................................................13

*Peralta v. Dillard*,
 744 F.3d 1076 (9th Cir. 2014)..................................................................................3

*Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*,
 494 F.3d 788 (9th Cir. 2007)..................................................................................10

*Reese v. BP Exploration (Alaska) Inc.*,
 643 F.3d 681 (9th Cir. 2011)..................................................................................12

*Rieve v. Coventry Health Care, Inc.*,
 870 F. Supp. 2d 856 (C.D. Cal. 2012)....................................................................11

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
 487 U.S. 781 (1988) .................................................................................................8

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
 875 F.3d 1192 (9th Cir. 2017)..................................................................................6

**Statutes**

15 U.S.C. § 1114 ..........................................................................................................5

28 U.S.C. § 1292 ..................................................................................................10, 13

**Other Authorities**

Trademark Manual of Examining Procedure (2025) ...................................................5

REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

## I.    INTRODUCTION

This is not a case in which WDSMP and BVHE are taking repeated bites at the apple, hoping for a different result on the same factual record and the same law. Rather, it is a case in which the legal landscape governing the intersection of the Lanham Act and the First Amendment has evolved—and continues to evolve—in the wake of the Supreme Court's decision in *Jack Daniel's Props., Inc. v. VIP Products LLC*, 599 U.S. 140 (2023).[1]  The Court itself recognized this when it acknowledged that "this is a complicated case with evolving issues" and invited WDSMP and BVHE to file a targeted partial summary judgment motion "limited to whether the *Rogers* test is applicable to their use of Lots-o'-Huggin' Bear," rather than the collective conduct of all 14 Disney Defendants.  Dkt. 393 at 6.  The Court then granted Plaintiff's Rule 56(d) request and permitted five months of additional discovery into the very question it had invited the parties to brief.

The problem is that the Court, after inviting that motion and authorizing that discovery, fell back on its prior collective ruling under the doctrine of law of the case without considering the additional facts adduced during discovery and without full appreciation for the intervening changes in the law.  Under binding Ninth Circuit precedent, the denial of a summary judgment motion is never law of the case.  Even Plaintiff concedes that law of the case does not apply, seeking to excuse the Court's reliance on that doctrine by stating that "[i]t is not clear … that the Court used that phrase to indicate anything other than the fact that the 5/1/24 Order would remain undisturbed."  Dkt. 473 at 8 n.5.  But that is precisely the problem: If the May 1, 2024 Order had already resolved whether the *Rogers* test was applicable to WDSMP's and BVHE's use of the Lots-o'-Huggin' Bear name, there would have been no reason for the Court to invite a further motion on exactly that issue.

---

[1] Indeed, Defendants *prevailed* on what Plaintiff identifies as their first two bites at the apple, successfully moving for summary judgment in this Court and obtaining an affirmance at the Ninth Circuit before the Supreme Court decided *Jack Daniel's*.

- 1 -
REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

The May 1, 2024 Order did not, in fact, address whether WDSMP or BVHE individually used the Lots-o'-Huggin' Bear name as a source identifier. That order addressed "the Disney Defendants" collectively and found that their collective use of a modified version of Plaintiff's word mark designated, "at least in part, the source of the Disney Defendants' Lots-o'-Huggin' Bear" for the purpose of selling merchandise. Dkt. 386 at 11. Under *Jack Daniel's* and the Ninth Circuit's follow-on decision in *Hara v. Netflix, Inc.*, 146 F.4th 872 (9th Cir. 2025), however, the critical inquiry is whether the *specific defendant* at issue—here, WDSMP and BVHE—used the mark to designate the source of the *particular good* it distributed—here, the *Toy Story 3* movie itself.

Far from undermining WDSMP's and BVHE's position, Plaintiff's opposition helps to crystallize the issues in a way that highlights why dismissal of WDSMP and BVHE is appropriate. Plaintiff effectively concedes that the *Toy Story 3* movie itself does not infringe Plaintiff's word mark. The character's name is spoken once in the 103-minute movie, and no reasonable person would perceive it as identifying the movie's source. Plaintiff therefore pivots to the theory that the movie "serves, in part, as an advertisement for related merchandise." Dkt. 473 at 2. That theory is foreclosed by decades of First Amendment jurisprudence holding that an expressive work, even one with overtly commercial aspects, does not lose its protected status because it may drive sales of other products. The only legal theories under which WDSMP or BVHE could conceivably be held liable for the merchandising activities of the other Disney Defendants—alter ego, contributory infringement, or vicarious infringement—have never been pled, much less proven. After the Supreme Court's recent ruling in *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 604 U.S. 321 (2025), there is no other path to liability. Reconsideration is plainly warranted.

Should the Court decline to reconsider, it should certify for interlocutory appeal the question of whether a defendant who makes expressive use of a name in a movie can be stripped of *Rogers* protection based on the merchandising activities of

- 2 -

REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

its corporate affiliates. This is not an idle question at this juncture. More than two-thirds of Plaintiff's claimed damages are predicated on disgorgement of profits from WDSMP's and BVHE's distribution of the *Toy Story 3* movie itself. If WDSMP and BVHE are dismissed, the case is substantially narrowed. Certification would materially advance the termination of this fourteen-year-old litigation while at the same time providing much-needed guidance in an evolving area of law that impacts the entire motion picture and television industry.

## II.    ARGUMENT

### A.    The Court Should Reconsider Its January 20, 2026 Order

#### 1.    Plaintiff Concedes that Law of the Case Does Not Apply

WDSMP and BVHE moved for reconsideration based on the failure of the Court's January 20, 2026 Order to consider the material facts and legal arguments that the Court itself invited WDSMP and BVHE to present. The Court declined to consider those facts and arguments based on "law of the case"—specifically, that the Court had already determined in its May 1, 2024 Order denying summary judgment that the Disney Defendants' *collective* "use of a modified version of the Mark designated, at least in part, the source of the Disney Defendants' Lots-o'-Huggin' Bear," and "that use was done, at least in part, to sell, *inter alia*, books, video games and toys." Dkt. 448 at 5-7, 10. However, the Ninth Circuit's rule is clear: "[T]he denial of a summary judgment motion is never law of the case." *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014). This is true even where the district court "clearly intended to decide the issues at hand." *Fred Segal, LLC v. CormackHill, LP*, 821 F. App'x 783, 786 (9th Cir. 2020).

Plaintiff's opposition concedes this point. Rather than defend the Court's invocation of "law of the case," Plaintiff argues that "[i]t is not clear … that the Court used that phrase to indicate anything other than the fact that the 5/1/24 Order would remain undisturbed." Dkt. 473 at 8 n.5. But that is the very problem WDSMP and BVHE have identified. The May 1, 2024 Order addressed the Disney

Defendants collectively and made no finding as to whether WDSMP or BVHE individually used the Lots-o'-Huggin' Bear name to designate the source of the *Toy Story 3* movie. It was precisely because the May 1, 2024 Order did not address that question that the Court invited WDSMP and BVHE to file a targeted motion for partial summary judgment "limited to whether the *Rogers* test is applicable to their use of Lots-o'-Huggin' Bear." Dkt. 393 at 6.

After WDSMP and BVHE filed that targeted motion, the Court granted Plaintiff's Rule 56(d) request for additional discovery. Over the next five months, Plaintiff deposed WDSMP's and BVHE's corporate representatives, deposed a former BVHE executive, and propounded extensive written discovery. The post-Rule 56(d) discovery record showed, without contradiction, that WDSMP's and BVHE's conduct was limited to distribution of the movie itself, and that they had no role in, and derived no revenues from, the distribution or sale of Lots-o'-Huggin' Bear merchandise. The partial summary judgment motion demonstrated for the first time, on a defendant-specific record built through five months of discovery ordered by the Court itself, that WDSMP and BVHE had no involvement whatsoever in merchandise sales.

The Court's January 20, 2026 Order declined to consider any of that evidence, instead treating its May 1, 2024 collective ruling as dispositive of the defendant-specific *Rogers* question that the Court had previously recognized remained open. Having invited a motion directed at WDSMP's and BVHE's own use, and having authorized months of targeted discovery into that issue, the Court should have resolved the motion on that defendant-specific record rather than treat the earlier collective ruling as law of the case. A party's right to move for reconsideration based on a court's failure to consider material facts is precisely the vehicle available for this kind of situation. *See* C.D. Cal. L.R. 7-18.

### 2. Plaintiff Cannot Point to Any Evidence that *Toy Story 3* Infringed Its Trademark

The Lanham Act defines trademark infringement as the "use in commerce [of] any … colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. Plaintiff concedes that the only "good" that WDSMP and BVHE sold or distributed is the *Toy Story 3* movie itself. *See* Dkt. 435 at 1 (acknowledging that WDSMP and BVHE "merely distributed the *Toy Story 3* film to theaters and [home video] retailers and did not distribute or sell any infringing merchandise"). The threshold inquiry, therefore, is whether the *Toy Story 3* movie infringed Plaintiff's word mark.

The answer is obvious: The *Toy Story 3* movie did *not* infringe Plaintiff's "LOTS OF HUGS" word mark. The allegedly infringing Lots-o'-Huggin' Bear name is spoken just once in the movie's 103-minute runtime. Dkt. 332-23 (*Toy Story 3* DVD). No reasonable person would regard a secondary character's name spoken for the first time more than 20 minutes into a movie as identifying the source of the movie. *See* Trademark Manual of Examining Procedure (2025) § 1202.10 ("[m]arks that merely identify a character in a creative work" do not function as trademarks); *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 506 (2d Cir. 1996) (holding that "Spa'am" in *Muppet Treasure Island* was not used as a trademark, but was instead "a character in products branded with Henson's own trademark 'Muppet Treasure Island'"); *In re Caserta*, 46 U.S.P.Q.2d 1088, 1090-91 (T.T.A.B. 1998) (holding character name did not function as trademark despite appearing on the cover and every page of a children's book). Instead, the source of *Toy Story 3* was explicitly identified in the very first minute of the movie as Walt Disney Pictures and Pixar Animation Studios. Dkt. 332-23. Nothing in Plaintiff's

REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

opposition comes anywhere close to creating a triable issue as to whether the Lots-o'-Huggin' Bear name identified the source of the movie.  It plainly did not.

Plaintiff observes that WDSMP and BVHE "also developed and distributed *advertisements* for *Toy Story 3* prominently featuring Lots-o'-Huggin' Bear," including theatrical trailers and other marketing materials.  Dkt. 473 at 4 (emphasis in original).  This does nothing to alter the direct infringement analysis, for two independent reasons.  First, Plaintiff does not own a trademark in a pink teddy bear.  It owns a trademark in the words "LOTS OF HUGS," and nothing more.  Plaintiff identified various trailers and marketing materials that included an image of the pink bear antagonist, typically alongside other characters from the movie, without any use of his allegedly infringing name.  *See* Dkt. 435-16 (theater banners); Dkt. 435-17 (bus shelter poster); Dkt. 435-19 (online character rollout); Dkt. 435-26 (in-store retail displays); Dkt. 435-28 (television advertisement); Dkt. 435-29 (television advertisement).  But an image of *Toy Story 3*'s pink bear antagonist, without use of his name, cannot possibly infringe Plaintiff's word mark.

Second, as the Ninth Circuit held in *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017), and reaffirmed just last year in *Hara*, *Rogers* protects a defendant's use of a name, mark, or likeness not only in a movie or television show, but also in trailers, posters, and other promotional activities for the movie or show.  *See Hara*, 146 F.4th at 882; *Empire*, 875 F.3d at 1196.  The fact that Plaintiff identified a single promotion that used the Lots-o'-Huggin' Bear name does not take even that promotion, much less the *Toy Story 3* movie, outside of *Rogers*.  *See, e.g., JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 330 n.2 (S.D.N.Y. 2023) (use of allegedly infringing mark in social media post and promotional trailer for television show protected by *Rogers*); *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 930 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014) (applying *Rogers* to use of mark in movie and "on the promotional websites [for the movie]"); *Louis Vuitton Malletier S.A. v.*

REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

*Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 175 (S.D.N.Y. 2012) (applying *Rogers* and granting motion to dismiss where plaintiff's mark had been used "in commercials and advertisements" for the film).

In short, WDSMP's and BVHE's use of the Lots-o'-Huggin' Bear name in the *Toy Story 3* movie and a single promotion for the movie was expressive. No one could reasonably have viewed the name as identifying the source of the movie, and Plaintiff's infringement claim therefore fails insofar as the movie is the "good" at issue. Plaintiff has no actionable claim against the *Toy Story 3* movie, and there is no theory under which it can disgorge WDSMP's or BVHE's profits from their distribution of the movie.

### 3.   Plaintiff's "Movie as Advertisement" Theory Fails

Because Plaintiff cannot establish that the *Toy Story 3* movie itself infringes Plaintiff's word mark, Plaintiff pivots to a different argument—that WDSMP and BVHE are liable not because the movie is infringing, but instead because the movie "serves as an advertisement for related merchandise" sold by *other* Disney Defendants. Dkt. 473 at 2. Setting aside the fact that Plaintiff's argument would not support disgorgement of profits *from the movie itself*, which are the only profits either WDSMP or BVHE received, this "movie as advertisement" theory of liability is foreclosed by longstanding First Amendment jurisprudence.

The Supreme Court held nearly 75 years ago that movies are protected expression notwithstanding the fact that they are distributed for profit. *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952). The fact that a movie or other expressive work may help drive sales of other consumer products does not transform it into commercial speech or lessen its First Amendment protection. "If speech is not 'purely commercial'—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002). Indeed, even the inclusion of

explicitly commercial material in an expressive work has no impact on its protected status. *See Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 963 (9th Cir. 2012).

The Ninth Circuit's decision in *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001), is instructive. In that case, a magazine published an article featuring digitally recreated images from certain films that were modified so that the actors appeared to be wearing designers' spring fashions. *Id.* at 1183. For example, a still of Dustin Hoffman from the movie *Tootsie* was altered to make it look like he was wearing a Richard Tyler evening gown and Ralph Lauren heels. *Id.* The district court ruled in favor of Hoffman on his Lanham Act and related claims, rejecting the magazine's defense that its use of the photograph was protected by the First Amendment. *Id.*

The Ninth Circuit reversed the district court's decision, holding that the First Amendment barred Hoffman's claims. In so ruling, the Ninth Circuit recognized that the magazine and article contained many "commercial aspects." *Id.* at 1185. For example, the Hoffman image "was identified as wearing Ralph Lauren shoes" and a Ralph Lauren advertisement appeared elsewhere in the magazine. *Id.* The magazine also included a "Shopper's Guide," "which provided stores and prices for the shoes and gown" featured in the Hoffman image. *Id.* However, the Ninth Circuit held that even overtly commercial aspects like those did not make the work "commercial speech" for purposes of the First Amendment. *Id.* Rather, the article contained various "expressive elements," including "fashion photography, humor, and visual and verbal editorial content," that were "inextricably intertwined" with the commercial aspects and therefore rendered it "fully protected" under the First Amendment. *Id.*; *see Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988) (speech is fully protected under the First Amendment where expressive and commercial aspects "are inextricably intertwined").

*Hoffman* and its progeny foreclose Plaintiff's "movie as advertisement" theory of liability. *Toy Story 3* is an Academy Award-winning animated movie. It plainly

- 8 -
REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

does "more than propose a commercial transaction," and it unquestionably "includes protected expression." *MCA Records*, 296 F.3d at 906.  Indeed, were Plaintiff's argument correct, most every motion picture and television show would lose First Amendment protection as a result of sales of posters, t-shirts, toys, and other consumer products based thereon.

Plaintiff cites *IYO, Inc. v. IO Products, Inc.*, 2025 WL 3471705 (9th Cir. Dec. 3, 2025), for the proposition that a movie can constitute an "infringing advertisement" under the Lanham Act.  Dkt. 473 at 12.  However, the "movie" in *IYO* was a video announcement for a forthcoming consumer product.  *IYO*, 2025 WL 3471705, at *1.  In other words, it *was* purely commercial.  *Toy Story 3* is not a product announcement video.  It is a paradigmatic expressive work.

### 4.   Plaintiff Has Neither Pled Nor Adduced Evidence of Contributory or Vicarious Infringement

In a final attempt to circumvent the First Amendment protections that attach to WDSMP's and BVHE's distribution of *Toy Story 3*, Plaintiff argues that WDSMP and BVHE may be held liable based on their alleged participation in a "joint commercial enterprise" alongside the other Disney Defendants.  Dkt. 473 at 10.  This argument, too, fails.

There is no "joint enterprise" theory of liability under the Lanham Act. Absent a basis for veil piercing, the Lanham Act requires courts to treat "separately incorporated organizations [as] separate legal units with distinct legal rights and obligations." *Dewberry*, 604 U.S. at 327.  "And that is so even if the entities are affiliated … by virtue of having a common owner." *Id.*  Plaintiff's attempt to distinguish *Dewberry* as limited to disgorgement (Dkt. 473 at 9-10) ignores the breadth of the Supreme Court's reasoning.  The Supreme Court's holding rests on "bedrock" principles of corporate law that apply across the Lanham Act—not merely to remedies.  *Dewberry*, 604 U.S. at 327.  Unless a plaintiff "make[s] the showing

REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

needed for veil-piercing," the liability of each defendant must be determined based on that defendant's own conduct. *Id*.

The only exceptions to this rule are the doctrines of contributory and vicarious liability. "Contributory infringement occurs when the defendant either intentionally induces a third party to infringe the plaintiff's mark or supplies a product to a third party with actual or constructive knowledge that the product is being used to infringe the … mark." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983 (9th Cir. 1999). "Vicarious liability for trademark infringement requires 'a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)).

Plaintiff has never even alleged, much less adduced any evidence to establish, contributory or vicarious liability against either WDSMP or BVHE.  The Fifth Amended Complaint alleges contributory and vicarious liability *only* against Disney Enterprises, Inc.  Dkt. 325 at 14 (¶¶ 53-55); *id.* at 23-24 (¶¶ 88-89).  And the Fifth Amended Complaint explicitly limits WDSMP's alleged liability to "use of Lots-o'-Huggin' Bear in the *Toy Story 3* movie" and BVHE's to "use of Lots-o'-Huggin' Bear in the *Toy Story 3* DVDs and Blu-Rays." *Id.* at 26.  That is precisely the theory of liability that is foreclosed by *Rogers*.

**B.      In the Alternative, the Court Should Certify the Ruling for Interlocutory Appeal**

If the Court declines to reconsider its January 20, 2026 Order, all three requirements for certification under 28 U.S.C. § 1292(b) are satisfied.

**1.      The Question is One of Law, Not Fact**

Plaintiff argues that the question WDSMP and BVHE seek to certify is a question of fact, not law.  This fundamentally mischaracterizes the issue.  The

- 10 -
REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

question here is not whether WDSMP or BVHE used the Lots-o'-Huggin' Bear name as a source identifier for the *Toy Story 3* movie; Plaintiff adduced no evidence, even after five months of additional discovery, to support that contention.  The question for certification is a pure question of law—namely, whether a defendant that makes expressive use of a name in a movie is barred from invoking *Rogers* because its corporate affiliates use the same name to sell merchandise based on the movie.  That question does not require the Ninth Circuit to "wade into the record" or resolve any factual dispute.  Dkt. 473 at 17.  It requires the Ninth Circuit to determine the legal framework for applying *Rogers* in a multi-defendant case where defendants have different roles.  That is precisely the type of novel legal issue that is appropriate for interlocutory review.  *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130-32 (9th Cir. 2022).

Plaintiff's reliance on *In re GO Assocs., LLC*, 90 F.4th 1354 (Fed. Cir. 2024), for the proposition that source identification is a "question of fact" misses the point.  The factual question of whether a mark functions as a source identifier is not what WDSMP and BVHE seek to certify.  The legal question is whether the *Rogers* analysis must be conducted on a defendant-by-defendant basis, or whether the conduct of corporate affiliates can be imputed to a defendant whose own use was expressive.  That is the question the Ninth Circuit "could decide quickly and cleanly without having to study the record."  *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 879 (C.D. Cal. 2012).

The question is also "controlling" because its resolution would "materially affect the outcome of litigation in the district court."  *ICTSI*, 22 F.4th at 1130.  If the Ninth Circuit holds that *Rogers* applies, WDSMP and BVHE will be dismissed from the case.  This Court has already correctly determined that Plaintiff cannot satisfy the *Rogers* test.  Dkt. 357 at 5-6.

REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

**2.      There Are Substantial Grounds for Difference of Opinion**

Plaintiff argues that there are no substantial grounds for difference of opinion because WDSMP and BVHE have not identified conflicting case law.  This is hardly surprising given the rapidly evolving *Rogers* landscape in the aftermath of *Jack Daniel's*.  But the "substantial grounds" prong does not require an existing conflict; it is satisfied "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Id.*  Courts need not "await[] development of contradictory precedent" before concluding that a question presents substantial grounds for difference of opinion. *Id.*

The question here is undisputedly novel.  *Jack Daniel's* did not involve multiple defendants with different roles and therefore did not address whether the *Rogers* analysis must be conducted on a defendant-by-defendant basis.  That is precisely why the Court invited WDSMP and BVHE to file their partial summary judgment motion.  The Supreme Court's recent decision in *Dewberry*, which held that the Lanham Act respects bedrock principles of corporate separateness, adds a further dimension to the question that no court has yet addressed in the *Rogers* context.

Plaintiff's inability to identify a single case that supports the Court's approach of analyzing *Rogers* at the enterprise level, rather than on a defendant-by-defendant basis, only underscores the novelty of the question.  Contrary to Plaintiff's suggestion, the absence of controlling authority does not defeat certification; it confirms that the question is one of first impression on which fair-minded jurists could disagree.

- 12 -
REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

### 3.  Immediate Appeal Will Materially Advance the Termination of the Litigation

Plaintiff argues that interlocutory appeal would not materially advance the termination of the litigation because the case will proceed to trial against the remaining 12 Disney Defendants regardless.  This argument ignores the practical realities of the case.  WDSMP and BVHE account for more than two-thirds of Plaintiff's claimed damages.  An appeal that may remove defendants and eliminate the majority of claimed damages "may appreciably shorten the time, effort, or expense of conducting" the district court proceedings.  *ICTSI*, 22 F.4th at 1131.  Courts therefore routinely certify interlocutory appeals where the resolution of a legal question may dismiss some but not all defendants.  *See In re Michaels Stores, Inc., Wage & Hour Employment Practices Litig.*, 2014 WL 12604981, at *3 (C.D. Cal. Sept. 15, 2014).  Here, closing the door on Plaintiff's unprecedented attempt to disgorge tens of millions of dollars of profits from the movie itself will dramatically narrow the scope of any trial.

## III.  CONCLUSION

For the foregoing reasons, WDSMP and BVHE respectfully request that the Court reconsider its January 20, 2026 Order and grant their motion for partial summary judgment.  In the alternative, WDSMP and BVHE request that the Court certify its January 20, 2026 Order for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated:  March 23, 2026                    HUESTON HENNIGAN LLP


By:  */s/ Robert N. Klieger*
     Robert N. Klieger
     Attorneys for Defendants

- 13 -
REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

## <u>L.R. 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,186 words (excluding the caption, table of contents, table of authorities, signature block, and this certification), which complies with the word limit of L.R. 11-6.1.

Dated:  March 23, 2026                    HUESTON HENNIGAN LLP


By: */s/ Robert N. Klieger*
Robert N. Klieger
Attorneys for Defendants

REPLY ISO MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION

MOTION FOR RECONSIDERATION AND ALTERNATIVE REQUEST FOR CERTIFICATION